IN THE UNITED STATES COURT
OF FEDERAL CLAIMS

INFORMATION SYSTEMS AND NETWORKS CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

COPY

CASE NO: 98-178C
JUDGE: James T. Turner

**DEPOSITION OF DENISE JONES**

The deposition of **DENISE JONES**, taken at the instance of the Plaintiff, pursuant to stipulations contained herein; the reading and signing of the deposition reserved, before Certified Court Reporter, Allison Garrison, at 10:30 a.m., October 22, 1999, at 1201 West Peachtree Street, Suite 5050, Atlanta, Georgia.

**SOUTHERN PEACH REPORTING SERVICE, LLC**
**Certified Court Reporters**
**383 Wesley Park Drive**
**Jonesboro, Georgia 30238**
**(770) 477-0336**

000082

PLAINTIFF'S EXHIBIT 12

I sent to ISN.
Q You sent this document around August 8th 1997; is that correct?
A Yes.
Q Is that your signature on this document?
A Yes.
Q I want to refer your attention to the sentence that says (reading), This letter is to advise you that I have determined that the gross settlement for this termination will be four million, forty-nine thousand, five hundred and thirty-two dollars.
How did you come up with that figure?
A Based on the information that was provided to me.
Q What information was provided to you?
A Audit report.
Q And what did the audit report say?
A Evidently it misadvised me or somewhere pointed out this for me -- I'm mean, that's just one tool that we use to come up with the figure.
Q Do you know if that's the figure that ISN received under the contract?
A I'm not really sure.

Q Do you know how you came up with this figure of four million, forty-nine thousand, five hundred and thirty-two dollars?

A If I look back at my file I probably could tell you.

Q Do you have your file here?

A No.

Q Is it at your office?

A Yes.

Q Do you have a file on this ISN termination?

A Yes.

Q Do you know what documents that would help you in determining how this figure was set forth?

A Probably the settlement proposal, the audit, the MOCAS system.

Q The next paragraph says (reading), However, the issuance of this unilateral decision does not preclude the submittal of additional support which you feel that could impact this decision.

What does that mean?

A That means that if they have information that they want to provide at this

Q If it was after the settlement offer had been made, why would he get back with you?

A I don't know.

Q Did you have any conversations with Bobby Melvin with respect to ISN?

A I can't recall.

(Whereupon, Plaintiff's Exhibit Number 10 was marked for identification)

BY MR. CRAIG (resuming):

Q (Presenting) Ms. Jones, I want to draw your attention to a document marked Plaintiff's Exhibit Number 10. Have you seen that document before?

A Yes.

Q When do you recall first seeing this document?

A Sometime in September of '97.

Q Prior to receiving this letter identified as Exhibit Number 10, do you recall having any conversations with Robert M. Cozzie? He was identified on the last page of Exhibit Number 10.

A I spoke with someone from ISN, but I cannot be exact as to who.

Q Do you recall when you spoke with

Q This information that's set forth in the September 1997 letter, did you confirm the information at all?

A Meaning?

Q Did you look at documents to make sure that what is stated in this letter is correct?

A No.

Q What did you do? Did you ask somebody to confirm this information?

A Yes.

Q Who did you ask to confirm the information set forth in this letter?

A The PCO office.

Q You recall asking the PCO office to confirm this information for you that's set forth in the September 5th 1997 letter?

A It may not have said confirm, but I know I asked them to look at it for me.

Q The purpose of you having them look at it is to confirm the accuracy of the information?

A Yes.

Q Do you know whether they took a look at this information for you?

A I didn't get a response back.

Q Do you know why you didn't get a

Exhibit Number 11. Is this the request that you sent to the PCO with regard to ISN's settlement position?

A It was in regard to the letter.

Q The September 5th 1997 letter?

A Yes.

Q Describe this October 9, 1997 letter for me.

A It's a letter to Roscoe Crawford asking that he provide information on the attachment, which was the September 5th letter.

Q Did you send this letter to Mr. Crawford on or about October 9th 1997?

A Yes, if that's the date on here.

Q Did you sign this letter?

A Yes.

Q Did you review this letter with anyone prior to sending it to Mr. Crawford?

A No.

Q Did you receive any response to your October 9th 1997 letter to Mr. Crawford?

A I can't recall if he phoned me or not.

Q After you sent this October 9, 1997 letter, what happened next with respect to this ISN contract?

A I can't recall if I tried to contact him again or I issued -- I can't remember.

(Whereupon, Plaintiff's Exhibit Number 12 was marked for identification)

BY MR. CRAIG (resuming):

Q (Presenting) Ms. Jones, I want to draw your attention to the document marked Plaintiff's Exhibit 12. What is that document?

A Another letter to Mr. Roscoe Crawford.

Q Why did you send this letter to Roscoe Crawford?

A Because I had not gotten any information from his office.

Q He had not responded to your October 9, 1997 letter; is that correct?

A No.

Q Let me ask you another way just so we're clear on the record.

Is it true that he did not respond to your October 9, 1997 letter? Your no response, I think I know what it meant, but I just wanted to clarify it. I'll ask it again.

MR. CRAIG: It's ambiguous. I just want to make sure we're clear on this so down the road her no answer --

MR. AUSTIN: Ambiguous as to form in terms of --

MR. CRAIG: That's why I'm trying to clarify it.

MR. AUSTIN: Okay.

BY MR. CRAIG (resuming):

Q Is it correct that Mr. Crawford did not respond to your October 9, 1997 letter?

MR. AUSTIN: Objection as to form in terms of when.

BY MR. CRAIG (resuming):

Q After October 9, 1997, before November 5th 1997.

A I can't recall because he and I talked and I can't remember the date that we actually talked.

Q Your letter starts out (reading), Several attempts have been made to get your office to provide information on subject termination.

Were those attempts by telephone?

A Yes, more than likely, where I may have phoned.

Q And this October 9, 1997, do you consider that an attempt?

A Yes.

Q The next sentence states (reading), A certified letter was sent to you on October 9, 1997, requesting you provided information on subject termination.

That's Plaintiff's Exhibit 11, correct?

A Yes.

Q (Reading), After getting no response from you, I phoned you on October 29, 1997.

Is that correct?

A Yes.

Q (Reading), We discussed the matter once again, and at that time you informed me that you would set up a conference call for Friday, October 31, 1997, with you, Jeff Bergdahl and myself.

Is that correct?

A Yes.

Q (Reading), Once again, I did not hear from your office.

Is that correct?

A Yes.

Q (Reading), On Monday, November 23 -- Should that read October 23, 1997?

A It probably should. It probably

should.

Q -- I phoned and got your voice mail. I left a message for you to call me, no response.

Is that correct?

A Yes.

Q (Reading), I also left a message on Jeff Bergdahl's voice mail and there was no response from his office.

Is that correct?

A Yes.

Q Who is Jeff Bergdahl?

A Contracting office technical rep.

Q Why did you call Mr. Bergdahl?

A Because he was the technical rep on the contract.

Q Why would you contact a technical rep on the contract?

A Some of the information provided listed his name.

Q Do you know what agency or division within the Department of Navy that Mr. Bergdahl was assigned to?

A No.

Q Do you know whether Mr. Bergdahl was with Space and Naval Warfare Systems Command?

What material was provided to you that you're referring to?

A The audit report and the letter from ISN.

Q The September 5th 1997 letter we already went over?

A Yes.

Q The next sentence says (reading), The TCO is ready to make an offer to ISN for the settlement of the termination settlement proposal and the ECP in the amount of four million, nine hundred forty thousand, seven hundred twenty-five dollars.

My question is: How did you come up with that dollar figure?

A Basically, I relied heavily on the audit report.

Q Let's go quickly back to your -- let's go back to Plaintiff's Exhibit 9. It's an August 8th 1997 letter from you to Bobby Melvin.

I want you to look at that figure of four million, forty-nine thousand, five hundred and thirty-two dollars. And I want you to look at this figure of four million, nine hundred forty thousand, seven hundred twenty-five

if you made a settlement offer to ISN?

A Yes. At some point I did make a settlement offer.

Q And that point would have been after November 5th 1997?

A I'm not really sure when it was made.

Q This letter says (reading), If no response is received from your office by this date then TCO will proceed with settlement.

So I'm going to ask my question again: Did you proceed with settlement after November 5th 1997?

A Yes.

(Whereupon, Plaintiff's Exhibit Number 13 was marked for identification)

BY MR. CRAIG (resuming):

Q (Presenting) Ms. Jones, I want to draw your attention to a document marked Plaintiff's Exhibit Number 13. Can you tell me what that document is?

A This is the offer that I made to ISN.

Q You made this offer to ISN on or about November 13th 1997; is that correct?

A Yes.

Q Did you fax this offer to ISN?

A Correct.

Q And that review by the PCO with respect to ECP is in the context of funding for the settlement; is that correct?

A Repeat that.

Q This review of the ECP that we're talking about by the PCO -- strike that. I going to try to get this clear so we can just move on. That's okay. I'm going to just move on here.

A The next sentence says (reading), If you are not in agreement, you have fifteen days from the date of this letter to substantiate the cost proposed.

Do you know whether ISN agreed with this information or disagreed with this information?

A They agreed.

(Whereupon, Plaintiff's Exhibit Number 14 was marked for identification)

BY MR. CRAIG (resuming):

Q (Presenting) Ms. Jones, I'm showing you what's been marked as Plaintiff's Exhibit 14. What is that document?

A The letter that I sent to ISN making the offer.

000094

Q I want to draw your attention to the lower left-hand corner of the document. What is that (indicating)?

A That's acceptance signed by the president of ISN.

Q Acceptance of what?

A The offer.

Q The offer you made in Exhibit Number 13?

A Yes.

Q I'm going to refer you to page two. It has a date of November 14th 1997. Do you know if you received this document on or about that date by fax from ISN?

A I'm not sure, but I probably have it in my file.

Q Sitting here today, do you have any reason to doubt that you didn't receive this acceptance by ISN on or about November 14th 1997?

A I know I received the letter.

Q Okay. Sitting here today, do you have any reason to doubt that you did not receive this acceptance on or about November 14th 1997?

A I don't have any doubt that I received the letter.

Q My question is: Sitting here today, do you have any reason that you know of right here today to doubt that you did not receive this letter on or about November 14th 1997?
A No.
Q After you received this acceptance by ISN, then what happened?
A I'm not really sure. This has been a long time.
Q Let me ask you this: Is that your signature?
A Yes.
Q After receiving this letter, did you request funding from the PCO?
A I'm not going to guess. I'm not really sure.
Q Okay.
(Whereupon, Plaintiff's Exhibit Number 15 was marked for identification)
BY MR. CRAIG (resuming):
Q (Presenting) Ms. Jones, I want to draw your attention to the document marked Plaintiff's Exhibit Number 15. What is that document?
A A letter to Mr. Roscoe Crawford advising that we did make ISN the offer and

requesting additional funding.

Q Is that your signature on this document?

A Yes.

Q Did you send this document to Mr. Crawford on or about November 18th 1997?

A Yes.

Q It says (reading), Reference our letter dated November 5, 1997 sent via facsimile.

Is that the document marked as Jones Exhibit Number 12 that you're referring to?

A Yes.

Q Do you know whether funding was provided?

A No.

Q How do you know that?

A I never received the modification for the funding.

Q You would have received that modification from Fleet and Industrial Supply Center Norfolk?

A From Mr. Roscoe Crawford.

Q The next sentence says (reading), If funding is not provided within a ninety day period, I will then issue my decision and return

authority back to your office for completion of the termination.

What does that mean?

A That basically I would write up my decision and send it back to him to issue the final settlement.

Q Did you write up a final decision, or issue a decision?

A I can't recall.

Q If Mr. Crawford's department didn't provide funding for this contract, are there other ways to fund the settlement you entered into?

A Not that I know of.

Q Do you know whether -- strike that.

You don't know what agency within the Department of the Navy would provide funding to Mr. Crawford do you?

A No.

Q You didn't ask Mr. Crawford what agency he would have received funding from did you?

A No.

Q Why not?

A Because basically we deal with the contracting officers, and what they do in their

16. Do you know what that document is?

A It looks like something from the PCO office.

Q Do you know what this document is though?

A It looks like a document where they're putting money on the contract.

Q Have you seen this document before?

A No.

Q In the course of your duties as a termination contracting officer, did you see documents like this?

A No.

Q Do you know whether this document is a funding document?

A It looks like where they try to put money on the contract. I'm not really sure because I've never seen it.

Q Have you ever heard of the term funding document?

A I've heard of the term.

Q Do you know what a funding document is?

A No.

Q So you don't know one way or the other whether this is a funding document; this being

A Based on what the DFAS has in the issuance of modifications.

Q DFAS. Tell me what that is?

A Defense Finance Accounting.

Q This signature down at the bottom of this document, Authorizing Official, Richard J. Lucey. Do you know who that is?

A No.

(Whereupon, Plaintiff's Exhibit Number 17 was marked for identification)

BY MR. CRAIG (resuming):

Q (Presenting) Ms. Jones, I want to draw your attention to a document marked Plaintiff's Exhibit Number 17. Have you seen that document before?

A No.

Q Again, I'm going to ask you: Do you know whether that document is a funding document?

A No.

Q Do you know what this document is?

A Well, from you telling me previously, I assume this is something --

Q But you don't know sitting here today what it is?

A No.

Do you know if that statement's correct or not?

A I don't know.

Q Do you recall speaking with anybody about funding for the ANCC/ATC program for fiscal year 1996?

A No, I did not.

Q Is it correct that you don't know how much money was in the ANCC/ATC procurement program for fiscal year 1996?

A No.

Q Do you know how much money was in the ANCC/ATC procurement program for fiscal year 1997?

A No.

(Whereupon, Plaintiff's Exhibit Number 26 was marked for identification)

BY MR. CRAIG (resuming):

Q (Presenting) Ms. Jones, I want to show you a document that's been marked Jones Exhibit Number 26. I'll preface my question by saying it reflects that eleven pages were sent to you, but there is only four pages that comprises this exhibit. We're just going to ask about these four pages in this exhibit, okay?

Q Did you send this document to ISN on or about December 9th 1997?

A Yes.

Q Why did you send this document to ISN?

A This was after I had received the information from Mr. Crawford, to advise them of the offer.

Q And what was that offer?

A You mean the offer now or?

Q That's a good point. Do you differentiate between different offers?

A Well, there's the offer previous and the offer that we're making now.

Q And the previous offer was set forth in your letter of November 13th 1997 to ISN; is that correct?

A Yes.

Q And that's the offer that ISN previously accepted, correct?

A Yes.

Q What's the second offer?

A The second offer was after the information was provided by Mr. Crawford's office.

Q And what is that second offer?

A Zero.
Q You base that amount of zero upon information you received from Mr. Crawford's office, correct?
A Yes.
Q Did you base that upon any other information aside from the information you received from Mr. Crawford's office?
A The information -- Well, basically, at this time, no.
Q You didn't receive any information from Jeff Bergdahl did you?
A No.
Q You didn't confirm what Mr. Crawford told you was true or not did you?
A No.
Q You assumed that what he told you was correct, right?
A Correct.
Q Aside from you dealing with Mr. Crawford on the funding issue, you didn't speak with anybody else with regard to funding, correct?
A No.
Q You didn't make any independent

A It supports both, but it asks for additional information.

Q How does it support the $4.9 million dollar claim?

A Because the auditor also needed more information on the ECP.

Q And you made the $4.9 million dollar offer based upon additional information that you had that the auditor didn't have?

A Yes.

Q When you made this four million dollar offer on December 9, 1997, you had the additional information that the auditor didn't have, correct?

A Yes.

Q Then why did you go from $4.9 million dollars to four million dollars?

A Because then I had additional information from Mr. Crawford.

Q Okay.

So your switch from $4.9 million to four million was based upon the information you received from Mr. Crawford, correct?

A Yes.

Q Assuming ISN received four million

dollars and the CPIT was $4.4 million -- strike that.

Assuming that ISN received this, let's call it four million, fifty thousand dollars, and the CPIT was $4.4 million dollars, that would have provided for an additional three hundred and fifty thousand dollars remaining on the contract, correct?

A Yes.

Q And you didn't award that three hundred and fifty thousand dollars to ISN based upon what Mr. Crawford told you, correct?

A And the audit report, correct.

Q Are you aware of any documentation that you gave to ISN at or around November 13th 1997, and informed ISN that they would not receive the funding based upon a future review of the ECP work?

A No, I don't recall.

Q Do you recall telling them orally that that review would occur, and that would make the funding issue contingent?

A I don't recall.

Q Did you review a draft of this document with anybody before you sent it to ISN?