ISN

PLAINTIFF'S EXHIBIT 14

September 5, 1997

Denise M. Jones
Termination Contracting Officer
Defense Contract Management Command Atlanta
805 Walker Street
Marietta, GA 30060-2789

Pl'fs' Exhibit 34 for identification Sandra D Warren Oct. 29 1995 Jeffrey Bergdahl (6 pages)

Dear Ms. Jones:

This letter responds to DCAA Audit Report No. 6311-97B17100001, and your August 8, 1997 letter wherein you determined that the gross settlement for terminated contract N00600-94-C-0389 will be $4,049,532.00. Your determination resulted in the net amount of $0 due to ISN. There are several issues which the DCAA audit report failed to address, and which were not considered in your unilateral determination. ISN submits this letter response to assist you in the final and expeditious resolution of the ATC contract termination settlement proposal, without either party having to resort to legal action.

ISN disputes that it incurred costs in excess of the contract limitations because the settlement proposal was submitted on a total cost basis. The total costs incurred included the costs for an engineering change proposal (ECP) which was approved and ratified by the contracting officer (CO), after technical approval from the contracting officer's representative (COR). At a minimum, the Government encouraged the performance of the tasks contained in the ECP; in fact, the Government directed ISN to perform the work knowing that it did not have the requisite funding to issue a formal modification to incorporate the approved ECP into the contract.

The DCAA questioned the entire amount of profit ($443,396) claimed by ISN because: (1) ISN did not provide an estimate to complete (ETC) or percentage of completion; (2) ISN [allegedly] underbid this contract by approximately $900,000[1]; and (3) DCAA audit report 6221-96G17500001 disclosed that ISN was in a loss position. The DCAA further reduced the termination settlement proposal costs claimed by ISN in the amount of $460,708 on the basis that these costs are in excess of the contract limitations.

It is our contention that the audit report is incomplete, inadequate and inconsistent with the actual events that transpired during the performance of Contract No. N00600-94-C-0389 ("ATC contract"). ISN further asserts that the Government had actual knowledge of the scope of work performed by ISN under the ATC contract and failed to disclose this information to the

[1] The DCAA auditor fails to disclose the source of this information, or from what documents this unsubstantiated assessment was derived.

DCAA auditor during the preparation of the audit report. Accordingly, we will address each of these issues below, and we will show that ISN is entitled to recover the questioned costs for the reasons stated herein.

The crucial document that ISN relies upon in its claim for increased costs under the termination settlement proposal is the June 20, 1995 letter ECP submitted by ISN to Jeff Bergdahl, (COR, SPAWAR). Despite the Government's failure to incorporate the ECP by contract modification, the work described therein, and directed by the Government, was necessary and inherent to the continuing performance of the contractual work at NTCC Hampton Roads. Moreover, ISN proceeded with the installation and cut-over at NTCC Hampton Roads, including the installation of the 12-pair cabling and DIM-414-E upgrades, relying on the statements of the contract specialist, Lisa C. Murtha[2], and the COR (Mr. Bergdahl)[3], that the ECP was approved and would be incorporated into the ATC contract by modification.

As a TCO, you are fully aware that a contract specialist prepares correspondence, contract modifications, funding documents, etc., only at the direction and by the authority, or with the tacit approval, of the CO. In the present instance, Ms. Murtha's June 26, 1995 letter to ISN was evidently prepared at the direction of the CO, Mr. Roscoe Crawford, and with his full knowledge and approval. Ms. Murtha specifically identifies Mr. Crawford as the FISC Detachment CO, and the only point of contact if she is unavailable.[4] Moreover, Mr. Crawford attended every meeting wherein the ECP proposals (the subsequent revisions, the performance and status thereof) were regularly and repeatedly discussed, to include the June 21-22, 1995 meetings referenced in Ms. Murtha's letter.[5]

As noted in the June 20, 1995 letter ECP, the revised delivery schedule reflected a completion date of August 9, 1996 for the NTCC Hampton Roads site configuration. Accordingly, the Government is and has been aware of the estimated date of completion pursuant to the letter ECP. In addition, the Government was briefed on the progress of the ATC contract on or about February 2, 1996[6]. At that time, the projected completion date for the Hampton Roads NTCC site installation was July 7, 1996. The CO, Roscoe Crawford, thereafter issued a "Stop Work Order" on February 20, 1996. ISN was refused access to the site (and thus unable to assess the percentage of completion), and the Government took possession of all

---

[2] FISC letter dated 26 June 1995 wherein Ms. Murtha acknowledges that the DIM-414 cards have been upgraded. Ms. Murtha identifies herself as the "first line point of contact within this activity (FISC Detachment)." Ms. Murtha further states that "A modification will be issued for the combination of both the formal acceptance of an ECP for implementation of all sites in Lot I and the revised delivery schedule for all sites in Lot I." Ms. Murtha also states that the ECP submitted [on or about June 20, 1995] will be reviewed by SPAWAR with comments to be provided on . . . June 26th or 27th."

[3] Memorandum dated 31 August 1995 from Jeff Bergdahl to Bill Robertson, which states, in part: "[SPAWAR has] technically approved the [June 20, 1995] ECP and proposed schedule extension via letter to FISC. I am not aware of any other administrative items we owe FISC other than changing the wording on the funding document at FISC."

[4] A copy of this letter was provided to the ACO, Ms. Letitia (Tish) Proctor, as well.

[5] See, ISN Progress, Status and Management Report (CDRL A0004) dated July 15, 1995; letter dated January 26, 1996, from Donald J. Tabasco (ISN Manager of Contracts) to Roscoe Crawford (CO).

[6] Briefing Charts: ATC Installation Status for Hampton Roads NTCC (as of January 31, 1996).

material and equipment at the Hampton Roads site and at ISN headquarters, Bethesda, Maryland.[7]

The DCAA audit report is qualified because the auditor never received an updated/current technical report with an estimate to complete/estimate at completion (ETC/EAC), nor did the Government provide the auditor with the inventory verification report (SF 1423). As demonstrated above, however, the Government was in possession of this information and unilaterally elected not to furnish this information to the DCAA auditor. ISN did not have access to the NTCC Hampton Roads location effective February 20, 1996, the date of the "Stop Work Order." Both the COR and the TCO are aware that ISN could not have commenced installation of the ATCS without performing the tasks enumerated in the June 20, 1995 letter ECP. Moreover, the Government advised the DCAA auditor that "ISN [is] due some form of equitable adjustment on this contract due to various changes to the statement of work."[8] Because ISN's termination settlement proposal was submitted on a total cost basis – and because the Government refused to provide the DCAA auditor with the requested information, which was and still is, in its possession – the auditor merely questioned the costs in excess of the stated contract price.

The next question to be addressed is the cost impact of the changed work. Based on the contract specialist's June 26, 1995 letter, and the COR's August 31, 1995 memorandum, the proposed costs for the June 20, 1995 letter ECP were acceptable and reasonable to the Government. The labor costs contained therein included the ECP preparation costs (**$9,000**) and the program management and engineering costs (**$135,000**). These costs should have been allowed in their entirety in the termination settlement proposal; however, the auditor's findings failed to include these costs as allowable contract labor costs.

The most significant portion of the ECP labor costs relate to the installation, cut-over and 12-pair cable. The total labor costs proposed for this work is $623,563. As of January 31, 1996, ISN had completed 98% of the installation of the ATC equipment at NTCC Hampton Roads. The cable fabrication and cut-over/demonstration was at 25% completion. At the time of the February 2, 1996 briefing, ISN anticipated completion of the NTCC Hampton Roads site by August 9, 1996, or 28 weeks after the status brief. By extrapolating the work completed prior to the "Stop Work Order" (3 weeks/28 weeks) from the percentage of work to be completed (75%), it is possible to derive a Percentage of Completion, <u>relative to the work required by the ECP</u>, as of February 20, 1996. The computation is as follows:

3 (weeks of work performed)/ (divided by) 28 (weeks of work to completion) = 10.7%
10.7% (% of work completed) * (multiplied by) 75% (% of work remaining) = 8%
8% (% of work performed from 2/1/96 – 2/20/96) + 25% (% of work completed as of 1/31/96) = **33%**

Accordingly, ISN is entitled to one-third of the ECP costs proposed for installation, cut-over and 12 pair cable. This sum is 33% x $623,563 = $205,776.

---

[7] ISN letter dated February 23, 1996; handwritten inventory schedules dated February 21, 22, and 23, 1996 (signed by Jeff Bergdahl and E. Basnight for the Government).

[8] These changes are discussed more fully in the related correspondence between SPAWAR and ISN, and specified in the site survey reports prepared by ISN. Of note is the facsimile transmission dated February 13, 1996, from Mr. Bergdahl to Mr. Robertson, wherein SPAWAR confirmed the new circuit count for NTCC Hampton Roads at 1129, versus the contractual specification of 672 circuits.

In addition, ISN incurred the additional material and equipment costs to effect the ECP and perform the installation under the Government specified site configuration changes:

DIM-414-E (digital interface module upgrades approved by Contract Specialist)
976 x $48 each = **$46,848**
Novell SFT-III upgrade (25 users to 50 users) = **$3,226**
Upgrade 1 RMSA 100 (X) to 1 RMSA 200 (X) = **$18,537**
12 pair cable connectors = **$23,000**

The total costs thus incurred by ISN in excess of the ATC contract price for the changed and additional work are as follows:

Labor costs: $9,000 + $135,000 + $205,776 = **$ 349,776** + **$47,884** (13.69% G&A per DCAA audit) = **$397,660** + $ 39,766 (10% profit) = $ **437,426.00**.

Material/Equipment: $46,848 + $3,226 + $18,537 + $23,000 = **$ 91,611** + **$ 12,542** (G&A) = **$ 104,153** + **$10,415** (profit) = **$ 114,568.00**[9]

**Labor + Material/Equipment** = **$ 437,426** + **$ 114,568** = **$ 541,994.00**.

The next item to be addressed is the questioned profit in the amount of $443,396. The DCAA auditor questioned this amount, in part, because ISN allegedly underbid the ATC contract by approximately $900,000. This information is incorrect and misleading.[10] ISN did not underbid the ATC contract nor did it have any intention to forego profit. Based on the statement of work contained in the RFP/Solicitation, ISN submitted a bid which included profit. The changed site conditions, and the numerous Government requested changes, resulted in increased costs for labor, travel, and ODCs which could not have been contemplated at the time ISN submitted its BAFO.

The DCAA auditor further questioned costs in the amount of $460,708 as costs in excess of the contract limitations. ISN disputes this calculation on the basis that the auditor used an incorrect and/or incomplete total contract price for purposes of the termination settlement proposal.

When computing the contract "ceiling price" for a termination settlement proposal, the TCO has the authority, and the obligation, to adjust the contract price upward or downward if there are outstanding claims by or against the Government, for changed, additional or deleted work, or for other equitable adjustments not previously incorporated into the contract by

---

[9] ISN notes that these material/equipment costs were included in the total cost settlement proposal and were approved by the TCO. These costs were previously submitted during the contract performance period as routine progress payment requests and were approved, confirming the CO's approval of the June 20, 1995 ECP.

[10] Based upon our investigation, the DCAA auditor is apparently referring to comments made by a former ISN employee, Mr. Robert Chapman. Mr. Chapman's statements related to the fact that ISN could not perform the ATC contract, given the changing conditions and circumstances at NTCC Hampton Roads, for the contract bid price. Mr. Chapman estimated that ISN would need another "$900,000 or so" to complete the job. This does not mean that ISN underbid the ATC contract, as it was described in the solicitation/RFP; what Mr. Chapman and Mr. William Robertson have repeatedly advised the Government, however, is that the requirements of the site, as determined by multiple site visits, constituted a dramatic change in the scope of work to perform the ATC contract.

modification. See, *Richerson Construction v. GSA*, GSBCA No. 11161, et al., 93-1 BCA ¶ 25,239; *Systems & Computer Information, Inc.*, ASBCA No. 18458, 78-1 BCA ¶ 12,946; *Valor Electronics, Inc.*, 67-1 BCA ¶ 6,320. Accordingly, the contract ceiling price should reflect the total of costs incurred (plus reasonable profit) up to the stated contract price, plus costs and profit for all changed/additional work, plus the incurred settlement expenses allowed under FAR 52.249-2.

As discussed supra, the contract price in this instance should have been adjusted upward to reflect the approved and ratified ECP. The Government directed, and the site conditions required, that ISN perform the tasks described in the June 20, 1995 letter ECP. The Government's subsequent determination to renege on modifying the contract to incorporate the ECP (instead, terminating the contract for the convenience of the government) does not change the fact that ISN performed the additional/changed work. The contract price of $4,416,646 therefore does not accurately reflect the contract "ceiling price" for determination of the settlement amount. Based on our calculations, and premised on the accepted ECP, the total cost settlement proposal and the specific audit findings, the new contract ceiling price should be calculated as follows:

| | | |
|---|---|---|
| a) ATC contract price: | | $4,416,646 |
| b) ECP cost proposal (equitable adjustment): | + | $ 930,527 |
| c) Stop Work Order costs (plus profit):[11] | + | $ 31,856 |
| Calculated Contract Ceiling Price: | | **$5,379,029** |

As you can see, the actual computed contract ceiling price ($5,379,029) exceeds the total proposed costs and profit ($4,877,355) submitted by ISN under the termination settlement proposal. Therefore, ISN did not propose costs and profit in excess of the contract limitations. ISN recognizes that it did not complete one hundred percent (100%) of the contract work and the ECP work prior to termination, and our total proposed costs reflect this.

The next step is to determine the final amount due to ISN based on the foregoing calculations. Just as the TCO must adjust the contract price upward for changed or additional work, reductions may be assessed for deleted or uncompleted work. We have computed the claimed contract costs to reflect the actual costs incurred, and for all previous payments.

[11] The DCAA auditor reclassified these costs from settlement expenses to direct labor, in the amount of $28,960, but did not adjust the contract price to reflect the additional/changed, work caused by the CO's "stop work" order. See, DCAA Audit Report No. 6311-97B17100001 at p. 6, ¶ 6.a.(1). In addition, the DCAA auditor did not allow profit on these costs. ISN claims profit in the amount of 10 percent ($2,896), for total stop work costs of $31,856.

| | |
|---|---|
| Actual Costs and Profit:[12] | $4,877,355 |
| Total Previous Payments to ISN: | - $4,049,532 |
| Settlement Expenses:[13] | + $ 31,685 |
| Stop Work Order Costs:[14] | + $ 31,856 |
| Net Balance/Amount Due to ISN: | **$ 891,364** |

As you are aware, the costs proposed by ISN, and identified herein, have been audited by the DCAA and deemed to be incurred. ISN therefore claims that it is entitled to payment under the termination settlement proposal in the supplemental amount of $891,364.00, plus applicable interest. If the Government does not intend to make payment to ISN in the claimed amount of $891,364.00 plus interest, ISN hereby requests that the TCO issue a final decision under the provisions of FAR 52.249-2. Any questions or comments may be directed to the undersigned at (301) 469-0400, ext. 301, or Mr. Bobby Melvin, ISN General Counsel, at (301) 469-0400, ext. 862.

Very truly yours,

Robert M. Cozzie
Corporate Counsel
Information Systems & Networks
Corporation

[12] The DCAA has audited these costs and expenses and found that ISN incurred these costs, subject to the qualifications stated therein. This letter has addressed the cited qualifications and provided the factual basis for the claimed entitlement.

[13] For purposes of this letter response only, ISN accepts the DCAA auditor's determination of the unquestioned settlement expenses. However, ISN has incurred additional settlement costs subsequent to the final audit report. These expenses are estimated to be less than or equal to $15,000. We will provide the necessary documentation to support these claimed expenses, if the TCO should so request.

[14] The "stop work" order expenses were reclassified from the settlement expense category to the direct labor category. ISN did not include these costs in the original proposed costs and profit, so we are entitled to an upward equitable adjustment for these costs, plus reasonable profit at 10 percent ($28,960 + $2.896 = $31,856).



34.6