**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | : |
| | : |
| **Plaintiff** | : |
| | : |
| **v.** | : **Case No. 02-796C** |
| | : **(Judge Allegra)** |
| **UNITED STATES OF AMERICA** | : |
| | : |
| **Defendant** | : |

**PLAINTIFF INFORMATION SYSTEMS AND NETWORKS CORPORATION'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Information Systems and Networks Corporation ("ISN") hereby submits its Proposed Findings of Uncontroverted Fact. These proposed findings are in support of ISN's Motion for Partial Summary Judgment.[1]

**A. The Contract**

1. The Navy awarded ISN a competitively bid contract (the "Contract") in 1994 to provide turnkey Automated Technical Control Systems ("ATCS") at designated Navy sites. (Crawford[2] Dep. Tr. at 23-24); (Bergdahl[3] Dep. Tr. at 13).

2. The Contract was performed for the benefit of the Space and Naval Warfare Systems Command ("SPAWAR"). (Bergdahl Dep. Tr. at 115).

[1] References to attached exhibits refer to the corresponding exhibit attached to the Memorandum of Points and Authorities in Support of ISN's Motion for Partial Summary Judgment.

[2] The deposition transcript of Roscoe W. Crawford taken on October 18, 1999. Excerpts from Mr. Crawford's deposition transcript are attached as Exhibit 1.

[3] The deposition transcript of Jeffrey Bergdahl taken on October 29, 1999. Excerpts from Mr. Bergdahl's deposition transcript are attached as Exhibit 2.

3. SPAWAR is responsible for all Naval data communications at both ship and shore facilities, as well as the Navy's echelon command. (Bergdahl Dep. Tr. at 20).

4. The firm fixed-price Contract required ISN to provide all material, labor and services necessary to engineer, install, test, and provide operational assistance and training and maintenance services for three ATCS turnkey facilities located at Naval Telecommunications Center ("NTCC") Hampton Roads, NTCC Camp H.M. Smith and NTCC Makalapa (Pearl Harbor). (Crawford Dep. Tr. at 24, 29).

5. The Contract consisted of two lots: Lot I consisted of Hampton Roads, Camp Smith and Makalapa. Lot II consisted of Puerto Rico and Japan. (Crawford Dep. Tr. at 24).

6. The Contract was separated into two lots to make Lot II an option to the Contract. (Crawford Dep. Tr. at 26-27).

7. Funding for the ATC Contract from fiscal year 1994 through September 30, 1996 totaled $7.14 million. (Bergdahl Dep. Tr. at 95).

8. Initial funding for Lot I of the Contract was $4,416,646. (Bergdahl Dep. Tr. at 91-92); (Crawford Dep. Tr. at 110). Attached as Exhibit 3 is a true and correct copy of the SPAWAR funding document allocating $4,416,646 to Lot I of the Contract.

9. SPAWAR also was appropriated another $7 million in the ANCC/ATC[4] procurement program for fiscal year 1996. (Bergdahl Dep. Tr. at 100, 101); (Exh. 3).

10. As of October 1995, SPAWAR had received at least $2.5 million of the fiscal year 1996 ATC program appropriation. (Bergdahl Dep. Tr. at 101); (See Paragraph 4 of the SPAWAR funding document attached as Exhibit 4).

---

[4] "ANCC" refers to a related contract for three automated control network centers.

11. The Navy Contracting Officer ("CO") on the ISN ATCS Contract was Roscoe Crawford. (Bergdahl Dep. Tr. at 15).

12. As a Navy CO, Mr. Crawford is responsible for negotiating contracts for supplies and services with full authority to bind the Government. (Crawford Dep. Tr. at 12).

13. Mr. Crawford also provides administration services on the contracts he awards, i.e., taking care of any problems that may arise after a contract is awarded, implementing contract change orders, modifications, changes in delivery, and changes in the period of contract performance. (Crawford Dep. Tr. at 12).

14. The CO's technical representative ("COTR") on the ISN ATC Contract was Jeffrey Bergdahl. (Bergdahl Dep. Tr. at 14, 20).

15. As a Navy COTR, Mr. Bergdahl was responsible for monitoring contractor's performance, and any problems that the contractor encounters when performing a contract are reported by the COTR to the CO. (Crawford Dep. Tr. at 13).

16. Mr. Bergdahl was selected as the COTR on the ISN ATC Contract because he was the SPAWAR employee that possessed the necessary technical background for the ATC Contract. (Bergdahl Dep. Tr. at 18-19).

17. Lisa Murtha was the contract specialist assigned to the ISN ATC Contract. (Crawford Dep. Tr. at 64-65.)

18. A contract specialist reports to a CO, and a CO normally assigns only one contract specialist to a government contract. (Crawford Dep. Tr. at 17).

19. The contract specialist negotiates and administers contracts. (Crawford Dep. Tr. at 9).

20. Changes to the terms and conditions of a contract came through the contract specialist and the CO. (Crawford Dep. Tr. at 13-14.)

21. Ms. Murtha was the CO's representative to ISN "regarding any contractual matter that pertained to the case." (Crawford Dep. Tr. at 65).

**B. <u>The Engineering Change Proposal ("ECP")</u>**

22. Due to numerous revisions by the Government to the specification requirements and the ATCS site/facility and equipment configurations, the Navy requested that ISN submit an engineering change proposal ("ECP") to incorporate the directed changes into the Contract. (Bergdahl Dep. Tr. at 32, 35, 36, 47).

23. The ECP principally involved equipment modifications at the Navy's Hampton Roads facility because the site configuration at Hampton Roads had changed. (Bergdahl Dep. Tr. at 47, 80).

24. ISN submitted a final ECP in a letter to Bergdahl dated June 20, 1995. Attached to the ECP was (1) a cost breakdown differntiated by total cost, contract cost and ECP cost; (2) an equipment list for NTCC Hampton Roads; and (3) a revised schedule with a set of specific de livery dates for NTCC Hampton Roads. A true and correct copy of the ECP, with attachments, is attached as Exhibit 5.

25. The Navy subsequently approved the ECP submitted by ISN, both verbally and in writing. (Bergdahl Dep. Tr. at 32, 34, 45, 81, 82, 83).

26. In a letter to ISN dated June 26, 1995, the Navy's contract specialist working with Roscoe Crawford indicated her receipt of the ECP and that "[a] modification to the contract will be issued for the combination of both the formal

acceptance of an ECP of all sites in Lot I and the revised delivery schedule for all sites in Lot I." A true and correct copy of the June 26, 1995 letter is attached as Exhibit 6.

27. Ms. Murtha further explained in her letter to ISN, "I am your first line point of contact within this activity" and that all questions regarding the contract should be directed to her. (Exh. 6).

28. SPAWAR confirmed its acceptance of ISN's ECP in writing by letter dated July 21, 1995. (Bergdahl Dep. Tr. at 81). A true and correct copy of a facsimile cover sheet from Jeffrey Bergdahl to Roscoe Crawford dated July 21, 1995, with an attached letter from the SPAWAR Commander to the Officer in Charge at the Navy Fleet Industrial Supply Center ("FISC") dated July 20, 1995, is attached as Exhibit 7.

29. ISN was also verbally informed that the ECP had been approved on or around July 21, 1995. (Bergdahl Dep. Tr. at 82).

30. On or about August 31, 1995, ISN was again informed in writing that the ECP had been approved, and that SPAWAR had submitted all of the documentation to FISC, i.e., the contracting office. (Bergdahl Dep. Tr. at 83). A true and correct copy of a memorandum from Jeffrey Bergdahl to Bill Robertson dated August 31, 1995 is attached as Exhibit 8.

31. SPAWAR further informed ISN that only the wording on the Contract funding document had to be changed, i.e., the funding document for the Lot II Puerto Rico ATC project would be changed to provide funding for ISN's ECP at Hampton Roads. (Bergdahl Dep. Tr. at 83-84).

32. In August, 1995, the funding document for the Lot II Puerto Rico ATC project was amended to transfer the funds to the ISN ATC Contract to exercise the Hampton Roads ATC ECP. (Bergdahl Dep. Tr. at 87).

33. The total funds transferred from the Lot II Puerto Rico ATC project to the Hampton Roads ATC project to fund the ECP was $789,319. (Bergdahl Dep. Tr. 88). A true and correct copy of the SPAWAR funding document received at NRCC on August 29, 1995 which transferred funds from the Puerto Rico project to the ISN ATC contract at Hampton Roads to exercise the ECP is attached as Exhibit 9.

34. Based upon SPAWAR's approval of the ECP, and the necessity of implementing the ECP configuration to perform the contractual requirements, ISN proceeded to perform the required and directed changes. (Bergdahl Dep. Tr. at 34-35, 36, 38, 58, 104).

35. SPAWAR provided assistance to ISN with regard to ISN's ECP work. (Bergdahl Dep. Tr. at 58-60).

36. Both SPAWAR and ISN assumed that the ECP would be formally approved by FISC. (Bergdahl Dep. Tr. at 105).

37. FISC never issued a "formal" approval of the ECP by way of a signed, Standard Form 30 ("SF-30"). (Bergdahl Dep. Tr. at 42-43); (Crawford Dep. Tr. at 43).

38. It is undisputed that upon receiving agreement to the ECP, ISN could commence work on the ECP prior to the issuance of an SF-30. (Bergdahl Dep. Tr. at 46).

39. ISN was never told that it should not commence work pursuant to the ECP until the SF-30 was issued. (Bergdahl Dep. Tr. at 46).

40. The CO, Crawford, later explained at deposition that the only reason an SF-30 was not issued was that the ECP did not contain a revised schedule for the contract for Lot I. (Crawford Dep. Tr. at 66.)

41. However, a revised schedule was clearly referenced in and attached to the ECP. (Exh. 5).

42. Murtha, the CO's representative, acknowledged receipt of the ECP, and had communicated in writing to ISN that a modification of the contract woul be issued for "the formal acceptance of an ECP for implementation of all sites in Lot I <u>and the revised delivery schedule</u> for all sites in Lot I." (Exh. 6) (emphasis added).

43. Crawford oversees over 50 government contracts at a time. (Crawford Dep. Tr. at 18).

44. On October 19, 1995, Mr. Bergdahl submitted a written evaluation regarding the ISN ATC project, and stated that "ISN is slightly behind the proposed schedule in their ECP, but still performing satisfactorily compared against that schedule." (Bergdahl Dep. Tr. at 102). A copy of Evaluation of Progress Payment No. 1319-03 submitted by Jeffrey Bergdahl on October 19, 1995 is attached as Exhibit 10.

45. The total validated cost estimate for the ECP was $930,527.00. (Exh. 5).

**C. <u>Termination of the Contract For Convenience</u>**

46. On or about December 6, 1995, SPAWAR and FISC held a meeting where the termination of SPAWAR's ATC Contract with ISN was discussed. (Bergdahl Dep. Tr. at 113, 114).

47. SPAWAR did not want to terminate the Contract with ISN "that we worked so hard to get." (Bergdahl Dep. Tr. at 114, 116).

48. During this meeting, it was discussed that SPAWAR could not continue to state that ISN was performing satisfactorily on ISN's progress payments paperwork so that progress payments could be withheld from ISN. (Bergdahl Dep. Tr. at 116). A true and correct copy of notes taken at the December 6, 1995 meeting that are contained in the FISC file regarding the ISN ATC Contract is attached as Exhibit 11.

49. The Navy terminated the Contract for the convenience of the Government effective March 15, 1996. (Complaint ¶ 11); (Answer ¶ 11).

50. ISN submitted its certified, total cost basis, termination settlement proposal in the amount of $5,060,758 to the Government on June 6,1996 in accordance with FAR Part 49. (Complaint ¶ 11); (Answer ¶ 11).

51. The settlement proposal costs included the costs incurred to perform the work described in the approved ECP, and, while the costs were segregated by item/job number in the accounting system, ISN did not identify the ECP costs as a separate claim within the termination settlement proposal. (Complaint ¶ 11); (Answer ¶ 11).

52. The Defense Contract Audit Agency ("DCAA") conducted a cost audit of ISN's termination settlement proposal and questioned the allowability of $1,011,047.00 of the proposed termination costs, the majority of which constituted costs in excess of the Contract price and profit. (Complaint ¶ 12); (Answer ¶ 12).

53. Based upon the audit, ISN received total payments of $4,049,532 on the ATC Contract. (Exh. 13).

54. By letter dated August 8, 1997, Denise Jones, the termination contracting officer (TCO), then issued a unilateral determination which found that ISN was entitled

to $4,049,532 under its termination settlement proposal. (Jones[5] Dep. Tr. at 54). A true and correct copy of the letter dated August 8, 1997 from Denise M. Jones to Bobby Melvin is attached as Exhibit 13.

55. Since ISN had already been paid $4,049,532, the TCO stated that ISN was entitled to nothing. (Exh. 13).

56. The TCO further informed ISN that it could submit additional information to the TCO that could impact her decision. (Jones Dep. Tr. at 55).

57. Thereafter, by letter dated September 5, 1997, ISN provided the TCO with supplemental information that supported ISN's entitlement to an additional $891,364 for work performed pursuant to the approved ECP. (Jones Dep. Tr. at 60). A true and correct copy of the letter dated September 5, 1997 from Robert M. Cozzie, Esq. to Denise M. Jones is attached as Exhibit 14.

58. Upon receipt of ISN's supplemental information, the TCO by certified letter dated October 9, 1997, requested confirmation of the information from the CO. (Jones Dep. Tr. at 63, 65). A true and correct copy of the letter dated October 9, 1997 from Denise M. Jones to Roscoe Crawford is attached as Exhibit 15.

59. In the October 9, 1997 letter (Exh. 15), Ms. Jones requested:

> It is asked of your office to review the enclosed information and provide to our office any documentation that would support that the ECP was never approved, that ISN was told not to perform the work related to the ECP, Why (sic) the modification was not issued to incorporate the ECP, if the mod was issued provide us a copy, or give us the actual cost that was agreed upon for the ECP.

60. Ms. Jones did not receive a response from CO Crawford to her October 9, 1997 letter. (Jones Dep. Tr. at 63, 66).

---

[5] The deposition transcript of Denise Jones taken on October 22, 1999. Excerpts from Ms. Jones' deposition transcript are attached as Exhibit 12.

61. Due to no response from the CO, Ms. Jones sent another letter to CO Crawford dated November 5, 1997. (Jones Dep. Tr. 66-69). A true and correct copy of the letter dated November 5, 1997 from Denise M. Jones to Roscoe Crawford is attached as Exhibit 16.

62. In the November 5, 1997 letter (Exh. 16), Ms. Jones stated:

> Several attempts have been made to get your office to provide information on subject termination. A certified letter was sent to you on October 9, 1997 requesting you provided (sic) information on subject termination. After getting no response from you, I phoned you on October 29, 1997 and we discussed the matter once again and at that time you informed me that you would setup a conference call for Friday October 31, 1997 with you, Jeff Bergdahl, and myself. Once again I did not hear from your office. On Monday, November 23, 1997, I phoned and got your voice mail. I left a message for you to call me, no response. I also left a message on Jeff Bergdahl's voice mail and there was no response from his office.
>
> <u>This letter is to inform that based on the material provided to the TCO, The (sic) TCO is ready to make an offer to ISN for the settlement of the termination settlement proposal and the ECP in the amount of $4,940,725.00.</u> This would require additional funding on the contract in the amount of $524,079.46. It is asked of your office to reply to this letter as to whether you agree or disagree. It is asked that you respond no later than COB November 7, 1997. If no response is received from your office by this date then TCO will proceed with settlement. (for emphasis)

63. The TCO established the settlement figure of $4,940,725 based on the audit report and supplemental information contained in the September 5, 1997 letter from ISN. (Jones Dep. Tr. at 71).

64. By letter dated November 13, 1997, the TCO offered ISN the sum of $891,364.00 in full and final settlement of ISN's claims under the terminated Contract. (Jones Dep. Tr. at 77). A true and correct copy of the letter dated November 13, 1997 from Denise M. Jones to Robert M. Cozzie is attached as Exhibit 17.

65. In the November 13, 1997 letter (Exh. 17), Ms. Jones stated:

Contingent upon funding from The Department of the Navy, Fleet and Industrial Supply Center Norfolk, Washington, DC the TCO makes the following offer to ISN for the settlement on subject contract:

| | |
|---|---|
| Actual Costs and Profit | $4,909,211.00 |
| Total Previous Payment to ISN | (4,049,532.00) |
| Settlement Expenses | 31,685.00 |
| Net Settlement | 891,364.00 |

Once again this is contingent on funding from the Department of the Navy. If your are in agreement with the settlement please sign at the bottom of this letter and return to this office. (for emphasis)

66. ISN agreed with the Navy's settlement offer, and accepted the offer by signing the letter and returning it to the TCO on November 14, 1997. (Jones Dep. Tr. at 86-89). A true and correct copy of ISN's acceptance of the November 13, 1997 settlement offer is attached as Exhibit 18.

67. On November 18, 1997, the TCO sent another letter to CO Crawford advising him of the settlement offer and requesting additional funding in the amount of $524,079.46. (Jones Dep. Tr. 88-89). A true and correct copy of the letter dated November 18, 1997 from Denise M. Jones to Roscoe Crawford is attached as Exhibit 19.

**D. Government Rescinds Settlement Agreement And Denies For First Time That ECP Is Enforceable.**

68. On December 1, 1997, CO Crawford finally contacted the TCO regarding the ISN settlement. Mr. Crawford's reason for not contacting the TCO sooner was because he was on travel. (Crawford Dep. Tr. at 52). A true and correct copy of the December 1, 1997 letter from Roscoe Crawford to Denise M. Jones is attached as Exhibit 20.

69. In the December 1, 1997 letter (Exh. 20), CO Crawford stated:

This office is in agreement with the original DCAA Audit Report No. 6311-97B17100001 and your August 8, 1997 letter determination that the net amount of

> $0 was due to ISN. ISN has provided your office with volumes of supposed justification for additional compensation based on supposed approval of an ECP. This ECP was not approved and no services/supplies were received as stated by ISN. The ISN request for payment is unwarranted and as a Contracting Officer, not approved by myself.
>
> * * *
>
> In summary, additional funding will not be provided. The ECP referred to by ISN was not approved. No further funding is approved.

70. It is CO Crawford's position that his December 1, 1997 letter to the TCO was simply to provide her with the information regarding ISN that she had previously requested. (Crawford Dep. Tr. at 132).

71. Crawford further stated at deposition:

> She (TCO Jones) entered into the agreement. I finally got back to her after she had entered into the agreement, and I provided her with the information that she had been requesting from us all along. Based on that information, I guess she rescinded her offer. (Crawford Dep. Tr. at 132).

72. Based on this information provided by CO Crawford, the TCO rescinded the written settlement offer accepted by ISN. (Jones Dep. Tr. at 109-110, 113).

73. By letter dated December 9, 1997, TCO Jones informed ISN:

> In our referenced letter to your office you were advised that the offer was contingent on funding from The Department of the Navy, Fleet and Industrial Supply Center Norfolk, Washington, DC.
>
> Our office has been advised by FISC that "additional funding will not be provided. The ECP referred to by ISN was not approved. No further funding is approved." FAR 49.114 requires I solicit the opinion of the Contracting Officer on all unadjusted changes. FISC's determination is that no amount is due and no funding will be provided. Accordingly, it is my determination that the Gross Settlement for this termination will be $4,049,532.00. The amount due ISN is $0. . .

A true and correct copy of the December 9, 1997 letter from Denise M. Jones to Robert Cozzie is attached as Exhibit 21.

**E. Funding**

74. At a minimum, it has never been disputed that the ISN ATC Contract was at least funded in the amount of $4,416,646. (Bergdahl Dep. Tr. at 91-92); (Crawford Dep. Tr. at 110); (Jones Dep. Tr. at 114).

75. Therefore, at least $367,114 ($4,416,646 - $4,049,532) in ATC Contract funds exists to in part satisfy the $891,364 settlement. Funding for the ATC Contract from fiscal year 1994 through September 30, 1996 totaled $7.14 million. (Bergdahl Dep. Tr. at 95).

76. Furthermore, SPAWAR was appropriated another $7 million in the ANCC/ATC procurement program for fiscal year 1996. (Bergdahl Dep. Tr. at 100, 101); (see also the true and correct copy of a SPAWAR e-mail dated April 12, 1995 which states that "[w]e have about $7M in the ANCC/ATC procurement program in FY 96 which is less than 6 months away" -- attached as Exhibit 22).

77. As of October 1995, SPAWAR had received at least $2.5 million of the FY '96 ATC program appropriation. (Bergdahl Dep. Tr. at 101).

78. Paragraph 4 of the SPAWAR fiscal year 1996 funding document signed on October 2, 1995 in the amount of $2,469,000 shows that the funds were appropriated for a three- year period, through September 30, 1998. (Exh. 4).

79. In August, 1995, the funding document for the Puerto Rico ATC project was amended to transfer the funds to the ISN ATC Contract to exercise the Hampton Roads ATC ECP. (Bergdahl Dep. Tr. at 87); (Ex. 9).

80. The total funds transferred from the Puerto Rico ATC project to the Hampton Roads ATC project to fund the ECP was $789,319. (Bergdahl Dep. Tr. 88).

Respectfully submitted,

__s/ Norman H. Singer ________________

NORMAN H. SINGER, ESQ.
BENJAMIN M. KAHRL, ESQ. (of counsel)
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
(301) 469-0400

.

October 23, 2003

Counsel for Plaintiff

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.