SCHEDULE E - SETTLEMENT EXPENSE (Item 12)

| ITEM | EXPLANATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| LABOR & ODC'S | BURDENED COSTS through 4/30/96 P ESTIMATE TO COMPLETION | 125,000 | |
| PPA INTEREST | CALCULATED | 58,224 | |
| TOTAL | | 183,224 | |

Schedule F - SETTLEMENT with IMMEDIATE SUBCONTRACTORS and SUPPLIERS (Item 14)

| DETAIL OF EXPENSE | METHOD OF ALLOCATION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| TOTAL | | 0 | |

SCHEDULE G - DISPOSAL and OTHER CREDITS (Item 16)

| DESCRIPTION | AMOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|
| Not Applicable | 0 | |
| TOTAL | 0 | |

(If practicable, show separately amounts of disposal credits applicable to acceptable finished product included on SF 1428.)

Where the space provided for any information is insufficient, continue on a separate sheet.

STANDARD FORM 1436 (10-83)
PAGE 3

SECTION H - ADVANCE, PROGRESS AND PARTIAL PAYMENTS

| DATE | .PE OF PAYMENT | ..MOUNT | FOR USE OF CONTRACTING AGENCY ONLY |
|---|---|---|---|
| 34729 | Progress payment | 2,063,450 | |
| 34754 | Progress payment | 443,565 | |
| | | 2,507,015 | |

Where the space provided for any information is insufficient, continue on a separate sheet.

CERTIFICATE

This is to certify that the undersigned, individually, and as an authorized representative of the Contractor, has examined this termination settlement proposal and that, to the best knowledge and belief of the undersigned.

(a) AS TO THE CONTRACTOR'S OWN CHARGES. The proposed settlement (exclusive of charges set forth in Item 14) and supporting schedules and explanations have been prepared from the books of account and records of the Contractor in accordance with recognized commercial accounting practices. They include only those charges allocable to the terminated portion of this contract; they have been prepared with knowledge that they will, or may, be used directly or indirectly as the basis of settlement of a termination settlement proposal or claim against an agency of the United States; and the charges as stated are fair and reasonable.

(b) AS TO THE SUBCONTRACTORS' CHARGES. (1) The Contractor has examined, or caused to be examined, to an extent it considered adequate in the circumstances, the termination settlement proposals of its immediate subcontractors (exclusive of proposals filed against these immediate subcontractors by their subcontractors); (2) The settlements on account of immediate subcontractors' own charges are fair and reasonable, the charges are allocable to the terminated portion of this contract, and the settlements were negotiated in good faith and are not more favorable to its immediate subcontractors than those that the Contractor would make if reimbursement by the Government were not involved; (3) The contractor has received from all its immediate subcontractors appropriate certificates with respect to their termination settlement proposals, which certificates are substantially ;in the form of this certificate; and (4) the Contractor has no information leading it to doubt (i) the reasonableness of the settlements with more remote subcontractors or (ii) that the charges for them are allocable to this contract. Upon receipt by the Contractor of amounts covering settlements with its immediate subcontractors, the Contractor will pay or credit them promptly with the amounts so received, to the extent that it has not previously done so. The term "subcontractors", as used above, includes suppliers.

NOTE: The Contractor shall, under conditions stated in FAR 15.8044-2, be required to submit a Certificate of Current Cost or Pricing Data (see FAR 15.804-2(a) and 15.804-6).

| NAME OF CONTRACTOR | BY (Signature of authorized official) | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORP. | Donna Meltzer | |
| | TITLE President | DATE 6/4/96 |
| Name of Supervisory Accounting Official Mr. Allieu Shaw | TITLE Accounting Manager | |

U.S. GOVERNMENT PRINTING OFFICE STANDARD FORM 1436 PAGE 4

# SCHEDULE OF ACCOUNTING INFORMATION

FORM APPROVED OMB NO. 9000-0012

Public reporting burden for this collection of information is estimated to average 2.5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition and Regulatory Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0012), Washington, D.C. 20503.

To be used by prime contractors submitting termination proposals under Part 49 of the Federal Acquisition Regulation. Also suitable for use by subcontractor in effecting subcontract settlements with prime contractor or immediate subcontractor.

THIS PROPOSAL APPLIES TO (Check one): [X] A PRIME CONTRACT WITH THE GOVERNMENT [ ] SUBCONTRACT OR PURCHASE ORDER

SUBCONTRACT OR PURCHASE ORDER NO(S):

COMPANY (Prime or Subcontractor): Information Systems & Networks (ISN)Co

STREET ADDRESS: 10411 Motor City Drive

CITY AND STATE (Include ZIP Code): Bethesda, MD 20817

CONTRACTOR WHO SENT NOTICE OF TERMINATION

NAME AND ADDRESS (Include ZIP Code):

NAME OF GOVERNMENT AGENCY: U.S. Navy

| GOVERNMENT PRIME CONTRACT NO. | CONTRACTOR'S REFERENCE NO. | EFFECTIVE DATE OF TERMINATION |
|---|---|---|
| N00600-94-C-0389 | 1319 | 15 Mar 1996 |

1. INDIVIDUAL IN YOUR ORGANIZATION FROM WHOM ADDITIONAL INFORMATION MAY BE REQUESTED ON QUESTIONS RELATING TO:

| | ACCOUNTING MATTERS | PROPERTY DISPOSAL |
|---|---|---|
| NAME | Mr. Allieu Shaw | Mr. Donald Tabasco |
| TITLE | Director of Accounting | Senior Contract Administrator |
| TELEPHONE NO. | 301/469-0400 | 301/469-0400 |
| ADDRESS (Include ZIP Code) | ISN 10411 Motor City Drive Bethesda, MD 20817 | ISN 10411 Motor City Drive Bethesda, MD 20817 |

2. ARE THE ACCOUNTS OF THE CONTRACTOR SUBJECT TO REGULAR PERIODIC EXAMINATION BY INDEPENDENT PUBLIC ACCOUNTANTS?

[X] YES [ ] NO (Name and address of accountants)

Arthur Andersen
1666 K Street, N.W.
Washington, D.C. 20006-2873

3. INDEPENDENT ACCOUNTANTS, IF ANY, WHO HAVE REVIEWED OR ASSISTED IN THE PREPARATION OF THE ATTACHED PROPOSAL

| NAME | ADDRESS (Include ZIP Code) |
|---|---|
| None | |

4. GOVERNMENTAL AGENCY(IES) WHICH HAVE REVIEWED YOUR ACCOUNTS IN CONNECTION WITH PRIOR SETTLEMENT PROPOSALS DURING THE CURRENT AND PRECEDING FISCAL YEAR

| NAME | ADDRESS (Include ZIP Code) |
|---|---|
| DCAA | Columbia Branch Office, One Mall North 10025 Governor Warfield Pkwy., Suite 200 Columbia, MD 21004 |

5. HAVE THERE BEEN ANY SIGNIFICANT DEVIATIONS FROM YOUR REGULAR ACCOUNTING PROCEDURES AND POLICIES IN ARRIVING AT THE COSTS SET FORTH IN THE ATTACHED PROPOSAL? (If "Yes," explain briefly)

[ ] YES [X] NO

6. WERE THE DETAILED COST RECORDS USED IN PREPARING THE PROPOSAL CONTROLLED BY AND IN AGREEMENT WITH YOUR GENERAL BOOKS OF ACCOUNT?

[X] YES [ ] NO

7. STATE METHOD OF ACCOUNTING FOR TRADE AND CASH DISCOUNTS EARNED, REBATES, ALLOWANCES, AND VOLUME PRICE ADJUSTMENTS. ARE SUCH ITEMS EXCLUDED FROM COSTS PROPOSED?

[ ] YES [ ] NO

These items reduced the costs when recorded.

(Where the space provided for any information is insufficient, continue on a separate sheet.)

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is usable

EXPIRATION DATE 4-30-92

1439-102

STANDARD FORM 1439 (REV. 7-
Prescribed by GSA - FAR (48 CFR) 53.249(a)

8. STATE METHOD OF RECORDING AND ABSORBING GENERAL ENGINEERING AND GENERAL DEVELOPMENT LICENSE AND (B) ENGINEERING AND DEVELOPMENT EXPENSE DIRECTLY APPLICABLE TO THE TERMINATED CONTRACT.

Not applicable.

9. STATE TYPES AND SOURCE OF MISCELLANEOUS INCOME AND CREDITS AND MANNER OF RECORDING IN THE INCOME OR THE COST ACCOUNTS SUCH AS RENTAL OF YOUR FACILITIES TO OUTSIDE PARTIES, ETC.

ISN does not sublease facilities. Miscellaneous income is comprised primarily of interest or investment income. Refunds or rebates are credited to the original cost or cost pool where identifiable.

10. METHOD OF ALLOCATING GENERAL AND ADMINISTRATIVE EXPENSE.

General and Administrative expenses are allocated to direct cost objectives on a total cost basis.

11. ARE COSTS AND INCOME FROM CHANGE ORDERS SEGREGATED FROM OTHER CONTRACT COSTS AND INCOME? (If "Yes," by what method)

☐ YES ☐ NO

Yes, if they result in a modification which requires separate accountability. No, if only a modification to an existing task where separate accountability is not required. The Contracting Officer makes this determination.

12. METHOD OF COMPUTING PROFIT SHOWN IN THE ATTACHED PROPOSAL AND REASON FOR SELECTING THE METHOD USED. FURNISH ESTIMATE OF AMOUNT OR RATE OF PROFIT IN DOLLARS OR PERCENT ANTICIPATED HAD THE CONTRACT BEEN COMPLETED.

A profit of 10% has been applied to all costs incurred. It is estimated that had the contract been completed, i.e., the planned change orders been implemented, ISN would have realized a 10% profit.

13. ARE SETTLEMENT EXPENSES APPLICABLE TO PREVIOUSLY TERMINATED CONTRACTS EXCLUDED FROM THE ATTACHED PROPOSALS? (If "NO," explain)

☒ YES ☐ NO

14. DOES THIS PROPOSAL INCLUDE CHARGES FOR MAJOR INVENTORY ITEMS AND PROPOSALS OF SUBCONTRACTORS COMMON TO THIS TERMINATED CONTRACT AND OTHER WORK OF THE CONTRACTOR? (If "Yes," explain the method used in allocating amounts to the terminated portion of this contract.)

☒ YES ☐ NO

All material and supplier costs are specific to this contract.

15. EXPLAIN BRIEFLY YOUR METHOD OF PRICING INVENTORIES, INDICATING WHETHER MATERIAL HANDLING COST HAS BEEN INCLUDED IN CHARGES FOR MATERIALS.

The equipment inventory has been priced at actual cost plus M&S costs.

16. ARE ANY PARTS, MATERIALS, OR FINISHED PRODUCT, KNOWN TO BE DEFECTIVE, INCLUDED IN THE INVENTORIES? (If "Yes," explain)

☐ YES ☐ NO

All material has been taken by the Government on 21 February 1996. To the best of ISN's knowledge and belief at the time the material was taken by the Government it was in serviceable condition.

(Where the space provided for any information is insufficient, continue on a separate sheet.)

17. WERE INVENTORY QUANTITIES BASED ON A PHYSICAL COUNT AS OF THE DATE OF TERMINATION? (If "NO," explain exceptions.)

☐ YES ☐ NO

Not applicable since all material was taken by the Government on 21 February 1996.

18. DESCRIBE BRIEFLY THE NATURE OF INDIRECT EXPENSE ITEMS INCLUDED IN INVENTORY COSTS (See Schedule A, SF 1435) AND EXPLAIN YOUR METHOD OF ALLOCATION USED IN PREPARING THIS PROPOSAL, INCLUDING IF PRACTICABLE, THE RATES USED AND THE PERIOD OF TIME UPON WHICH THEY ARE BASED.

G&A costs are included in the cost of the material. This cost is allocated at the rate in use at the time costs were recorded.

19. STATE GENERAL POLICIES RELATING TO DEPRECIATION AND AMORTIZATION OF FIXED ASSETS, BASES, UNDERLYING POLICIES.

Fixed assets are depreciated over estimated useful lives. The costs of depreciation and amortization is included in the indirect cost pool of the business unit using the asset and spread to direct cost objectives in the same manner as the indirect pool. Overhead pools are spread based on total direct labor (Direct labor + fringe) benefiting from the pool. G&A costs are spread on a total cost basis.

20. DO THE COSTS SET FORTH IN THE ATTACHED PROPOSAL INCLUDE PROVISIONS FOR ANY RESERVES OTHER THAN DEPRECIATION RESERVES? (If "Yes," list such reserves)

☐ YES ☒ NO

21. STATE POLICY OR PROCEDURE FOR RECORDING AND WRITING OFF STARTING LOAD.

Not applicable.

22. STATE POLICIES FOR DISTINGUISHING BETWEEN CHARGES TO CAPITAL (FIXED) ASSET ACCOUNTS AND TO REPAIR AND MAINTENANCE ACCOUNTS.

Costs incurred which increase the value of the assets or materially extend the useful life of assets are capitalized and depreciated. Costs of maintenance and repairs which do not do the above are expensed.

23. ARE PERISHABLE TOOLS AND MANUFACTURING SUPPLIES CHARGED DIRECTLY TO CONTRACT COSTS OR INCLUDED IN INDIRECT EXPENSES?

Perishable items (small tools and consumables) purchased for use on a specific contract are charged to that contract. Items purchased for general corporate use are charged to indirect cost pools.

(Where the space provided for any information is insufficient, continue on a separate sheet.)

STANDARD FORM 1439 REV. 7-49 PAGE

24. HAVE ANY CHARGES FOR SEVERANCE, DISMISSAL, OR SEPARATION PAY BEEN INCLUDED IN THIS P/C (If "Yes," furnish brief explanation and estimates of amounts included)

☐ YES ☒ NO

25. STATE POLICIES RELATING TO RECORDING OF OVERTIME SHIFT PREMIUMS AND PRODUCTION BONUSES.

Overtime premium paid for non-exempt employees are charged to the cost objective on which employee is working. ISN does not provide for "production bonuses".

26. DOES CONTRACTOR HAVE A PENSION PLAN? (If "Yes," state method of funding and absorption of past and current pension service costs)

☒ YES ☐ NO

Yes, ISN maintains a defined contribution pension plan. As such, there are no past service costs. Required contributions are calculated annually by the Plan Administrator andpaid by the company.

27. IS THIS SETTLEMENT PROPOSAL BASED ON STANDARD COSTS?

☐ YES (If "Yes," has adjustment to actual cost or adjustment for any significant variations been made? ☐ YES ☐ NO (If "NO," explain)

☒ NO

This proposal is based on an actual costs basis.

28. DOES THIS PROPOSAL INCLUDE ANY ELEMENT OF PROFIT TO THE CONTRACTOR OR RELATED ORGANIZATION, OTHER THAN (a) PROFIT SET FORTH SEPARATELY IN THE PROPOSAL OR (b) PROFIT INCLUDED IN THE CONTRACT PRICE AT WHICH ACCEPTABLE FINISHED PRODUCT, IF ANY, IS INCLUDED IN THE PROPOSAL? (If "Yes," explain briefly)

☐ YES ☒ NO

29. WHAT IS LENGTH OF TIME (PRODUCTION CYCLE) REQUIRED TO PRODUCE ONE OF THE END ITEMS FROM THE TIME THE MATERIAL ENTERS THE PRODUCTION LINE TO THE COMPLETION AS THE FINISHED PRODUCT?

The normal lead time considering a fully staffed work force for a production system is 120 days.

30. STATE POLICY AND PROCEDURE FOR VERIFICATION AND NEGOTIATION OF SETTLEMENTS WITH SUBCONTRACTORS AND VENDORS.

Terms and conditions (Payment) of ISN's Purchase Orders are "....within 45 days after acceptance or 15 days after ISN is paid by the Government........ whichever is later."

**CERTIFICATE**

THIS CERTIFIES THAT, TO THE BEST KNOWLEDGE AND BELIEF OF THE UNDERSIGNED, THE ABOVE STATEMENTS ARE TRUE AND CORRECT.

| NAME OF CONTRACTOR | BY (Signature of supervisory accounting official) | |
|---|---|---|
| ISN<br>10411 Motor City Drive<br>Bethesda, MD 20817 | [signature] | |
| | TITLE<br>President | DATE<br>6/4/96 |

(Where the space provided for any information is insufficient, continue on a separate sheet.)

STANDARD FORM 1439 (REV. 7-89) PAGE 4

Datacomm Management Sciences Inc.

December 29, 1999

Ms. Roma Malkani
President
Information Systems & Networks Corporation
10411 Motor City Drive
Bethesda, MD 20817

Re: Prime Contract: N00600-94-C-0389, Sub-Contract 1319S
**Payment of Invoices #14769, 14775, 14785, 14845, 14853, and 14865**

Dear Ms. Malkani:

We seek your immediate attention to pay the above referenced Datacomm Management Sciences Inc. invoices which are now nearly three years past due.

The amount owed Datacomm Management Sciences by ISN is **$275,870.66**. This includes the total due for these invoices ($196,688.68) plus interest at a rate of 1% per month starting in March of 1997. We believe the U.S. Navy paid ISN for this equipment and service sometime on or before the end of February 1997 so we have calculated the interest due effective the end of March 1997. A summary of these outstanding invoices follows:

| DMSI Invoice #: | Date Invoiced: | What DMSI Provided: | $ Owed: |
|---|---|---|---|
| 14769 | 11-30-95 | Shipping charges | $ 187.20 |
| 14775 | 12-11-95 | Shipping charges | $ 58.39 |
| 14785 | 12-19-95 | 2 RMSA-100(X), 5 RIU-32 (X), 70 DIH-530, 152 AIM-800 | $ 192,640.00 |
| 14845 | 2-20-96 | Telephone support | $ 198.00 |
| 14853 | 2-26-96 | Customer Service | $ 3,546.99 |
| 14865 | 3-11-96 | Telephone support | $ 58.10 |
| | | Total | $ 196,688.68 |

Our experience dealing with ISN has not been good thus far. We will not let this matter go unresolved and will refer this collection to our attorneys (as we were forced to do to successfully collect the money ISN owed us for Keflavik) if we do not receive a full payment from ISN on or before January 28, 2000.

We look forward to receiving your full payment on or before January 28, 2000.

Sincerely,

Thomas Parnon
President

cc: Mr. John Craig, ISN; Mr. Michael Austin, Dept. of Justice

*"The Responsive Ones"*

25 Van Zant Street • East Norwalk, Con (203) 838-7183 • Fax (203) 838-1751

# DEFENSE CONTRACT AUDIT AGENCY

# AUDIT REPORT

19 December 1996

**PREPARED FOR:** Termination Contracting Officer
ATTN: DCMDS-GATC (Ms. Mildred Jacobs)
Defense Logistics Agency
Defense Contract Management Command Atlanta
508 Walker Street
Atlanta, GA 30060-2789

**PREPARED BY:** Columbia Branch Office
One Mall North, Suite 200
10025 Governor Warfield Parkway
Columbia, MD 21004

| | |
|---|---|
| Telephone No. | (410) 964-2060 |
| FAX No. | (410) 997-3237 |
| e-Mail Address | fao6311@rma.dcaa.mil |

**SUBJECT:** Termination Settlement Proposal

**REFERENCES:** TCO: Contract No. N00600-94-C-0389
DCAA: Audit Report No. 6311-97B17100001

**CONTRACTOR:** Information Systems and Networks Corporation
10411 Motor City Drive
Bethesda, MD 20817

**REPORT RELEASE RESTRICTIONS:** See Page 9

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 2 |
| Results of Audit | 3 |
| DCAA Personnel and Report Authorization | 8 |
| Audit Report Distribution and Restrictions | 9 |

## SUBJECT OF AUDIT

As requested by DCMC-Atlanta, we audited the 4 June 1996 termination settlement proposal submitted by Information Systems and Networks Corporation (ISN). Contract N00600-94-C-0389 was terminated for the convenience of the government with an effective termination date of 15 March 1996. Prior to the termination notice, a Stop-Work Order had been issued on 20 February 1996. The termination settlement proposal for $5,060,578 was submitted on the total cost basis.

The termination settlement proposal is the responsibility of ISN. Our responsibility is to express an opinion on the settlement proposal based on our audit.

## EXECUTIVE SUMMARY

Our audit of the $5.06 million proposal disclosed $1.01 million of questioned costs. The questioned costs are summarized below:

| | |
|---|---|
| Direct Labor | ($22,147) |
| Indirect Expenses | (17,079) |
| G&A Expense | (5,370) |
| Profit | 443,396 |
| Settlement Expenses | 151,539 |
| Cost in Excess of Contract | 460,708 |
| Total | $1,011,047 |

The termination settlement proposal is acceptable for arriving at a fair and reasonable price; however, the significant issues described below should be considered in establishing the government's position.

SIGNIFICANT ISSUES:

1. The results are qualified because we have not yet received a copy of the current technical report regarding the estimate to complete/estimate at completion, and the inventory verification report. We do not express an opinion regarding the contractor's legal entitlement.

2. ISN overstated settlement expenses by proposing settlement labor and ODCs which it did not incur and prompt payment act interest which is unallowable since ISN received progress payments.

3. ISN overstated the entire settlement proposal by proposing costs in excess of the contract limitations (FAR 49.207).

4. Profit is questioned in total. ISN could not support the proposed 10% profit factor with any Estimates to Complete (ETCs). Further, ISN acknowledged that they under bid this contract and were starting out in a loss from the beginning.

## SCOPE OF AUDIT

Except for the qualifications noted below, we conducted our audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance that the proposal is free of material misstatement. An audit includes:

a. reviewing the contractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on the control risk assessment;
b. examining, on a test basis, evidence supporting the amounts and disclosures in the termination settlement proposal;
c. assessing the accounting principles used and significant estimates made by the contractor;
d. evaluating the overall proposal presentation, and
e. determining the need for technical specialist assistance and (if applicable) quantifying the results of a government technical evaluation.

We evaluated the proposed costs using the applicable requirements contained in the:

a. Federal Acquisition Regulation (FAR), Part 49, and
b. DOD FAR Supplement (DFARS).

In CY 1996, ISN has brought three previous termination settlement proposals to the Armed Services Board of Contract Appeals (ASBCA) for settlement. Our prior audits have resulted in significant questioned costs. Based on our prior audits and current ASBCA experience with ISN's termination settlement proposals, we have assessed control risk as high. Our audit reflects this assessment and provides a reasonable basis for our opinion.

QUALIFICATIONS:

1. We were informed by Mr. Jeff Bergdahl, COTR that the updated technical reports will not be available for incorporation into our report. Therefore, the results of audit are qualified.

2. We made our recommendations without the benefit of the inventory verification report (SF 1423), which was not available as of the date of this report. Therefore, the audit report is qualified accordingly.

3. Our audit results do not consider the contractor's legal entitlement. We express no opinion regarding legal entitlement.

## RESULTS OF AUDIT

### AUDITOR'S OPINION

In our opinion, the cost or pricing data submitted by the offeror are inadequate in some respects. The proposal was not prepared in all respects in accordance with appropriate provisions of FAR and DFARS (see Notes 5, 6 and 7, pages 5, 6 and 7 for a further discussion). However, the impact of the inadequacies and noncompliances described is considered to be relatively insignificant. Therefore, we consider the proposal to be acceptable as a basis for negotiating a fair and reasonable price. This statement should not be interpreted to mean that the data are necessarily accurate, complete and current in accordance with 10 U.S.C. 2306a, since a postaward review may disclose evidence not now discernible.

| Elements of ISN's Proposal | ISN's Proposal | Questioned Costs | Difference (Note 1) | Note | Page |
|---|---|---|---|---|---|
| Direct Materials | $ 2,401,080 | $ 0 | $ 2,401,080 | | |
| Direct Labor | 604,657 | (22,147) | 626,804 | 2 | 4 |
| Indirect Expenses | 466,330 | (17,079) | 483,409 | 3 | 4 |
| Other Direct Costs | 427,831 | 0 | 427,831 | | |
| G&A Expense | 534,061 | (5,370) | 539,431 | 4 | 5 |
| Subtotal | 4,433,959 | (44,596) | 4,478,555 [handwritten: actual profit] | | |
| Profit | 443,396 | 443,396 | 0 | 5 | 5 |
| Settlement Expenses | 183,224 | 151,539 | 31,685 | 6 | 6 |
| Cost in Excess of Cont. | 0 | 460,708 | (460,708) | 7 | 6 |
| Total | 5,060,579 | $ 1,011,047 | $ 4,049,532 | | |
| Payments Received | (2,507,015) | | | 8 | 7 |
| Net Requested | $ 2,553,564 | | | | |

[handwritten: 4,049,532]

() Denotes upward adjustment

[handwritten: 1,542,517.00 / 2,507,015.00]

### Explanatory Notes

1. The amounts in this column are presented solely for the convenience of the TCO in developing the government's negotiation objective. They represent only the arithmetic difference between the amounts proposed and the related questioned costs. You should not consider the amounts to be audit approved or recommended amounts. DCAA does not approve or recommend prospective costs because the amounts depend partly on factors outside the realm of accounting expertise, such as opinions on technical and production matters. Any portion of the questioned costs accepted by the TCO must have the appropriate indirect rates applied.

2. Direct Labor

a. Summary of Conclusions:

We have reclassified $22,332 of stop work labor from settlement costs to direct costs and questioned $185 due to a difference between the settlement proposal and its supporting documentation. The net effect of these adjustments is an upward adjustment to direct labor of $22,147.

b. Basis of Claimed Cost:

Direct labor is based on the actual incurred labor cost as recorded in the books and records.

c. Audit Evaluation:

We verified that the direct labor cost: (1) reconciled with ISN's Jamis job cost reports and employee timesheets; and (2) was incurred prior to the termination notice.

3. Indirect Expenses

a. Summary of Conclusions:

We have increased the indirect expenses by $17,079 due to the increase in Direct Labor shown above.

b. Basis of Claimed Cost:

The indirect expenses are based on a Fringe Benefits rate of 29.68% and an Overhead rate of 36.58%. ISN's overhead allocation base includes fringe benefits.

c. Audit Evaluation:

We verified the proposed Fringe Benefits and Overhead rates to the current provisional billing rates and prior termination audits. The upward adjustment applicable to Fringe Benefits is calculated by applying the proposed and accepted Fringe Benefits rate to the stop work labor reclassified from settlement expenses to direct labor. The resulting sum is then multiplied by the proposed and accepted Overhead rate to arrive at the upward adjustment applicable to overhead.

4. G&A Expense

a. Summary of Conclusions:

We have increased the G&A expenses by $5.370 due to the increases in Direct Labor, Fringe Benefits and associated Overhead expenses.

b. Basis of Proposed Cost:

The G&A expenses are based on a G&A rate of 13.69% applied to Direct labor, Indirect expenses, Direct materials and ODCs.

c. Audit Evaluation:

We verified the proposed G&A expense rate to the current provisional billing rate and prior termination audits. The upward adjustment is the result of applying the proposed and accepted G&A rate to the increase in Direct labor and related Fringe Benefits and Overhead expense

5. Profit

a. Summary of Conclusions:

We have questioned the entire $443.396 of claimed profit in accordance with FAR 49.203 due to the following: (1) ISN did not provide us with any Estimate to Complete (ETC) or Percentage of Completion; (2) ISN significantly under bid this contract by approximately $900,000; and (3) DCAA audit report No. 6221-96G17500001 disclosed that ISN was in a loss position on this contract.

A loss calculation was not applied since the Government acknowledged that ISN was due some form of equitable adjustment on this contract due to various changes to the statement of work. It is our understanding that the only hold-up in the equitable adjustment negotiations was a delivery schedule. Since the contract was terminated prior to the conclusion of the equitable adjustment negotiations, we are unable to determine the impact that the equitable adjustment would have on the anticipated loss.

b. Basis of Claimed Cost:

ISN has claimed a profit factor of 10% applied to all costs

c. Audit Evaluation:

We requested ISN to provide us with an ETC and a Percentage of Completion. We also requested technical specialist assistance regarding the ETC and Percentage of Completion.

6. Settlement Expenses

a. Summary of Conclusions:

We have questioned $151,539 of the $183,224 proposed settlement expenses as shown below:

| Description | Questioned | Ref. |
|---|---|---|
| Reclassified to D/L | $28,960 | (1) |
| Cost Not Incurred | 64,355 | (2) |
| Prompt Pmt. Int. | 58,224 | (3) |
| Total | $151,539 | |

(1) We have reclassified the stop work period labor and associated fringe benefits to direct labor and indirect expenses respectively as discussed in notes 2. and 3. Stop work period labor is not a settlement cost but a direct expense.

(2) ISN is proposing settlement labor and ODCs which are estimates of possible future costs. Consequently, these costs have not been incurred and are questioned in total.

(3) We have questioned the entire $58,224 of proposed Prompt Payment Interest in accordance with FAR 32.907-2 which states "no interest penalty shall be paid to the contractor as a result of delayed contract financing payments". Since ISN received progress payments, and the interest is calculated on these progress payments, the interest is unallowable. Revise

b. Basis of Claimed Cost:

The claimed settlement costs are based on costs recorded in ISN's Jamis Job Cost and estimated future labor and ODCs. The claimed prompt payment interest is a mathematical calculation not recorded in the accounting records.

c. Audit Evaluation:

We verified that the claimed settlement expenses were recorded in the Jamis Job Cost and supported by vendor invoices and employee timesheets. We reviewed the supporting documentation for allowability and allocability to the terminated contract. We also verified that the costs were incurred after the Termination notice.

7. Cost in Excess of Contract Limitations

a. Summary of Conclusions:

We have questioned $460,708 which is the total proposed costs and profit of $4,877,354 less the contract price of $4,416,646 in accordance with FAR 49.207.

b. Basis of Claimed Cost

ISN did not indicate in its termination settlement proposal any costs claimed in excess of the contract limitations.

c. Audit Evaluation

We compared the proposed costs plus profit to the contract price.

8. Payments Received

a. Summary of Conclusions:

The $2,507,015 proposed by ISN agrees with their accounting records.

We discussed factual matters concerning audit findings with Mr. Daniel Dowling, Corporate Counsel. We did not disclose the dollar impact of our conclusions and recommendations to the contractor. Mr. Dowling reserved comment on our findings.

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact regarding this audit | |
| Benjamin Monastero, Senior Auditor | (410) 964-2060 |
| Other contacts regarding this audit: | |
| Mark S. Moser, Branch Manager | (410) 964-2060 |
| William C. Erdman, Supervisory Auditor | (410) 964-2060 |
| Office Administrative Personnel | |
| | FAX No. |
| | (410) 997-3237 |

AUDIT REPORT AUTHORIZED BY:

for William C. Erdman

Mark S. Moser
Branch Manager
DCAA Columbia Branch Office

# AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

## DISTRIBUTION

Termination Contracting Officer
ATTN.: DCMDS-GATC (Ms. Mildred Jacobs)
Defense Logistics Agency
Defense Contract Management Command Atlanta
508 Walker Street
Atlanta, GA 30060-2789

## RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Proprietary determinations should be made in the event of an external request for access. The restrictions of 18 U.S.C. 1905 should be considered before this information is released to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), any Freedom of Information Act requests for audit reports received by DCAA will be referred to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

3. The information contained in this audit report should not be used for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.

Copy

DEFENSE CONTRACT AUDIT AGENCY

AUDIT REPORT

13 NOV 1995

*PREPARED FOR:* Contracting Officer
ATTN: DCMDS-GMTC (F. Soda)
Defense Contract Management Area, Baltimore
200 Towsontown Boulevard West
Towson, MD 21204-5299

*PREPARED BY:* Defense Contract Audit Agency
Silver Spring Branch Office
20251 Century Boulevard, Third Floor
Germantown, MD 20874
Telephone No. (301) 353-1506
FAX No. (301) 353-1518

*SUBJECT:* Audit of Progress Payment Nos. 3, 4, and 5
Contract No. N00600-94-C-0389

*REFERENCES:* ACO: Case No. 202 (A)95-G-0183
DCAA: Audit Report No. 6221-96G17500001
Chron No.

*CONTRACTOR:* Information Systems & Networks Corporation (ISN)
10411 Motor City Drive
Bethesda, MD 20817

*REPORT RELEASE RESTRICTIONS: See Page 8*

*CONTENTS:*



| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 2 |
| Results of Audit | 2 |
| DCAA Personnel and Report Authorization | 7 |
| Audit Report Distribution and Restrictions | 8 |
| Appendix 1 - Other Matters to be Reported | 9 |
| Appendix 2 - Technical Evaluation | 11 |



FOR OFFICIAL USE ONLY

Audit Report No. 6221-96G17500001
Information Systems & Networks Corporation

*SUBJECT OF AUDIT*

In response to your 18 September 1995 request, reference DCMAO Case No. 202(A)-95-G-0183, and telephone conversation of 18 October 1995, we audited Information Systems & Networks Corporation's (ISN) progress payment request numbers 3, 4, and 5 under Contract No. N00600-94-C-0389. The purpose of the audit was to verify the amounts claimed through 30 June 1995, 31 July 1995, and 31 August 1995 to ISN's books and records as a basis for approving contract financing through progress payments in accordance with the provisions of the contract.

ISN's financial records and related supporting data are the responsibility of ISN. Our responsibility is to express an opinion on the progress payment request based on our audit.

*EXECUTIVE SUMMARY*

Our audit of progress payment Nos. 3, 4, and 5 disclosed the amounts claimed are unacceptable for payment. The contractor has understated the total costs incurred and the estimate at completion as explained in the results of audit. A summary of the claimed and eligible costs follows:

| | Claimed | Eligible |
|---|---|---|
| Progress Payment No. 3 | $103,327 | $(63,489) |
| Progress Payment No. 4 | 68,223 | 25,397 |
| Progress Payment No. 5 | 81,787 | 155,772 |

SIGNIFICANT ISSUES:

The contract is in a loss position. We applied the loss ratio factor to compute the maximum balances eligible for payment and the audit recommended progress payment amounts.

We have not finalized provisional billing rates with the contractor. In their progress payment request, indirect rates were applied based on actuals for the seven (7) months from the beginning of the fiscal year. The audit recommended amounts are based on the 1995 provisional billing rates. Additionally, we noted that the contractor is accumulating applied G&A costs differently than proposed. Additional information is provided in Appendix 1 - Other Matters.

## *SCOPE OF AUDIT*

We conducted our audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the data and records reviewed are free of material misstatement. An audit includes:

a. reviewing the contractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on an assessment of control risk;
b. examining, on a test basis, evidence supporting the amounts and disclosures in the data and records reviewed;
c. assessing the accounting principles used and significant estimates made by the contractor; and
d. evaluating the overall data and records presentation.

We did not perform the customary auditing procedures to determine the allowability of costs under FAR part 31 and the DoD FAR Supplement since such procedures will be performed to establish the final contract price, if required.

ISN's billing system is considered adequate to ensure progress payment requests are prepared in accordance with FAR. Due to concerns over the lack of provisional billing rates, prior disputes over indirect allocations, and the concerns of the ACO; we assessed control risk as medium. Our audit reflects this assessment and provides a reasonable basis for our opinion.

Because the contractor is in a loss position, we included steps to determine if the contractor is financially capable of completing the audit.

## *RESULTS OF AUDIT*

In our opinion, ISN has made errors in the computation of progress payments 3, 4 and 5. The contractor did not use the 1995 provisional billing rates resulting in the incurred costs and estimate at completion being understated. Our recommended adjustments to the progress payment amounts follow:

Audit Report No. 6221-96G17500001
Information Systems & Networks Corporation

Progress Payment No. 3

SECTION I

| | | | Note |
|---|---|---|---|
| Item 5: | Contract Price | $4,416,645 | |

SECTION II

| | | | Note |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,299,365 | 1 |
| Item 12a: | Total Costs Incurred to Date | $3,299,365 | 1 |
| Item 12b: | Estimated Additional Costs to Complete (ETC) | +1,769,910 | 2 |
| | Total Estimated Cost at Completion (EAC) | $5,069,275 | 2 |

Loss Ratio Calculation:

$$\frac{\text{Contract Price}}{\text{EAC}} = \frac{\$4,416,645}{\$5,069,275} = 87.13\% \quad 3$$

SECTION II (Continued)

| | | | Note |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,299,365 | 1 |
| | Loss Ratio Factor | X 87.13% | |
| Adjusted Item 11: | Costs Eligible for Progress Payments | $2,874,737 | |
| Item 6a: | Progress Payment Rate | 85.00% | |
| Adjusted Item 13: | Recognized Eligible Costs | $2,443,526 | 3 |
| Item 18: | Previous Progress Payments Requested | -2,507,015 | 4 |
| Item 19: | Maximum Eligible for Progress Payment | $ (63,489) | |

Explanatory Notes:

1. Item 11: The contractor used the actual indirect rates for the first seven months of their fiscal year to compute total incurred costs. Additionally, the contractor included $2,076 of duplicated direct costs in their claimed costs. We computed the total incurred costs using the 1995 provisional billing rates. We also adjusted the total direct costs for the duplicated invoice.

2. Item 12b: We reviewed the contractor's August 1995 EAC and took exception to the amounts computed. The contractor computed the EAC using the actual indirect rates for the first seven months of their fiscal year. We recomputed the EAC using the 1995 provisional billing rates.

3. Item 13: We computed the loss ratio as shown above and applied the factor to the correct Item 11 amount. We multiplied the total by the authorized progress payment rate to determine the adjusted amount of $2,443,526 in Item 13.

FOR OFFICIAL USE ONLY

4. Item 18: The total progress payments requested amount is the total amounts paid under progress payment nos. 1 and 2.

Progress Payment No. 4

SECTION I

| | | | Note |
|---|---|---|---|
| Item 5: | Contract Price | $4,416,645 | |

SECTION II

| | | | |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,419,383 | 1 |
| Item 12a: | Total Costs Incurred to Date | $3,419,383 | 1 |
| Item 12b: | Estimated Additional Costs to Complete (ETC) | +1,649,892 | 2 |
| | Total Estimated Cost at Completion (EAC) | $5,069,275 | 2 |

Loss Ratio Calculation:

Contract Price / EAC = $4,416,645 / $5,069,275 = 87.13% 3

SECTION II (Continued)

| | | | |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,419,383 | 1 |
| | Loss Ratio Factor | X 87.13% | |
| Adjusted Item 11: | Costs Eligible for Progress Payments | $2,979,308 | |
| Item 6a: | Progress Payment Rate | 85.00% | |
| Adjusted Item 13: | Recognized Eligible Costs | $2,532,412 | 3 |
| Item 18: | Previous Progress Payments Requested | -2,507,015 | 4 |
| Item 19: | Maximum Eligible for Progress Payment | $ 25,397 | |

Explanatory Notes:

1. Item 11: The contractor used the actual indirect rates for the first seven months of their fiscal year to compute total incurred costs. We computed the total incurred costs using the 1995 provisional billing rates.

2. Item 12b: We reviewed the contractor's August 1995 EAC and took exception to the amounts computed. The contractor computed the EAC using the actual indirect rates for the first seven months of their fiscal year. We recomputed the EAC using the 1995 provisional billing rates.

3. Item 13: We computed the loss ratio as shown above and applied the factor to the correct Item 11 amount. We multiplied the total by the authorized progress payment rate to determine the adjusted amount of $2,532,412 in Item 13.

4. Item 18: The total progress payments requested amount is the total amounts paid under progress payment nos. 1 and 2.

Progress Payment No. 5

SECTION I

| | | | Note |
|---|---|---|---|
| Item 5: | Contract Price | $4,416,645 | |

SECTION II

| | | | |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,629,713 | 1 |
| Item 12a: | Total Costs Incurred to Date | $3,629,713 | 1 |
| Item 12b: | Estimated Additional Costs to Complete (ETC) | +1,439,562 | 2 |
| | Total Estimated Cost at Completion (EAC) | $5,069,275 | 2 |
| | Loss Ratio Calculation: | | |
| | Contract Price / EAC = $4,416,645 / $5,069,275 = | 87.13% | 3 |

SECTION II (Continued)

| | | | |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,629,713 | 1 |
| | Loss Ratio Factor | X 87.13% | |
| Adjusted Item 11: | Costs Eligible for Progress Payments | $3,162,569 | |
| Item 6a: | Progress Payment Rate | 85.00% | |
| Adjusted Item 13: | Recognized Eligible Costs | $2,688,184 | 3 |
| Item 18: | Previous Progress Payments Requested | -2,532,412 | 4 |
| Item 19: | Maximum Eligible for Progress Payment | $ 155,772 | |

Explanatory Notes:

1. Item 11: The contractor used the actual indirect rates for the first seven months of their fiscal year to compute total incurred costs. We computed the total incurred costs using the 1995 provisional billing rates.

2. Item 12b: We reviewed the contractor's August 1995 EAC and took exception to the amounts computed. The contractor computed the EAC using the actual indirect rates for the first seven months of their fiscal year. We recomputed the EAC using the 1995 provisional billing rates. We used the contractor's latest EAC, August 1995, to compute the EAC.

Audit Report No. 6221-96G17500001
Information Systems & Networks Corporation

3. Item 13: We computed the loss ratio as shown above and applied the factor to the correct Item 11 amount. We multiplied the total by the authorized progress payment rate to determine the adjusted amount of $2,688,184 in Item 13.

4. Item 18: The total progress payments requested amount is the total amounts paid under progress payment nos. 1 and 2 plus the amount eligible under progress payment no. 4.

We also determined the contractor's financial condition is adequate for the performance of the contract.

We discussed the results of audit with the contractor's representative, Mr. Allieu Shaw, Director of Finance, on 9 November 1995. The contractor disagrees with the results of audit in its entirety.

Audit Report No. 6221-96G17500001
Information Systems & Networks Corporation

DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact regarding this audit: | |
| Jennifer L. Mosher, Senior Auditor | (301) 353-1506 |
| Other individuals having involvement with the audit report: | |
| Mark Moser, Branch Manager | (301) 353-1506 |
| Carol Bates, Supervisory Auditor | (301) 353-1506 |
| Class of persons having access to this report: | |
| Office Administrative Personnel | |
| DCAA Office FAX No. | (301) 353-1518 |

AUDIT REPORT AUTHORIZED BY:

Mark S. Moser
Branch Manager
DCAA Silver Spring Branch Office

FOR OFFICIAL USE ONLY