************************************************************

**UNITED STATES COURT OF FEDERAL CLAIMS**

************************************************************

**02-796C**
**(Judge Allegra)**

**INFORMATION SYSTEMS & NETWORKS CORPORATION,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

************************************************************

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

************************************************************

**Norman H. Singer, Esquire**
**Benjamin M. Kahrl, Esquire (of counsel)**
**Singer & Associates, P.C.**
**10411 Motor City Drive**
**Suite 725**
**Bethesda, Maryland 20817**
**(301) 469-0400**

**Attorneys for Plaintiff**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 3

INTRODUCTION .......... 4

ARGUMENT .......... 6

A. Defendant's Cross-Motion Must Be Denied .......... 6

1. An Implied-In-Fact Contract Does Not Require A Formal Writing .......... 7

2. Defendant Has Not Established The Absence Of Agreement On Essential Terms Of The ECP .......... 9

3. The Months Of Inaction By The Contracting Officer Do Not Nullify Defendant's Conduct In Approving The ECP .......... 10

B. ISN Has Established That Defendant Breached An Implied-In-Fact Contract As A Matter Of Law .......... 12

CONCLUSION .......... 14

CERTIFICATE OF SERVICE .......... 15

**TABLE OF AUTHORITIES**

*Algonac Mfg. Co. v. United States*, 192 Ct. Cl. 649, 428 F.2d 1241 (1970) ……. 7

*Beta Systems, Inc. v. United States*, 838 F.2d 1179 (1988) ..…………………………. 11

*Cities Service Gas Co. v. United States*, 205 Ct. Cl. 16, 500 F.2d 448 (1974)….8-9

*LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1552-53 (Fed. Cir. 1995)..…………... 11

*LDG Timber Enterprises v. Glickman*, 114 F.3d 1140 (Fed. Cir. 1997)………………. 8

*Macke v. United States*, 199 Ct.Cl. 552, 467 F.2d 1323 (1972)………………………... 7

*Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865 (Fed. Cir. 1987)..…..... 8

*Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed. Cir. 1987)…… 6

*Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604 (2000)……………………………………………………………………….. 10

*Narva Harris Constr. Corp. v. United States*, 216 Ct. Cl. 238, 574 F.2d 508 (1978)………………………………………………………………………... 7

*New England Tank Industries of New Hampshire, Inc. v. United States*, 861 F.2d 685 (1988)………………………………………………………………. 11

*PacOrd, Inc. v. United States*, 139 F.3d 1320 (9th Cir.) ………………………... 7

*Prestex Inc. v. United States*, 320 F.2d 367, 373 (Ct.Cl. 1963)..……………………….. 12

*SCM Corp. v. United States*, 595 F.2d 595 (Ct.Cl. 1979) ……………………………… 8

*Somali Development Bank v. United States*, 205 Ct.Cl. 741, 508 F.2d 817 (1974)……... 7

*Texas Instruments, Inc. v. United States*, 922 F.2d 810 (Fed. Cir. 1990) ………... 7

*Truong Kuan Truc v. United States*, 212 Ct.Cl. 51 (1976) ……………………………… 7

*United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986)…………………… 11

*United States v. Winstar Corp.*, 518 U.S. 839 (1996)……………………………………10

*USA Petroleum Corp. v. United States*, 821 F.2d 622 (Fed. Cir. 1987) ……………….. 11

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 02-796C** |
| | : | **(Judge Allegra)** |
| **UNITED STATES OF AMERICA** | : | |
| **Defendant** | : | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Information Systems and Networks Corporation ("ISN"), by counsel, hereby submits this reply memorandum in support of its motion for partial summary judgment, and in opposition to defendant's cross-motion for partial summary judgment.

**INTRODUCTION**

In defendant's opposition to plaintiff's motion for partial summary judgment on Count I and defendant's cross motion for summary judgment regarding Count I ("defendant's opposition brief"), defendant (or "the Government") presents an argument easily undermined by existing case law and the facts of this case. Defendant's opposition brief relies almost exclusively on the fact that ISN never got a formal, signed acceptance of its engineering change proposal ("ECP") from the contracting officer (the "CO"). But defendant has missed the distinction between a written contract and an implied-in-fact contract. An implied-in-fact contract focuses on the conduct of the parties that evidences the existence of an agreement. Accordingly, the majority of defendant's opposition brief is largely irrelevant, as it focuses on the existence or terms

of a formal writing, when an implied-in-fact contract by its very definition does not require a writing in order to be enforceable against the Government.

In actuality, the conduct of the parties conclusively establishes that there is no genuine issue of material fact that an implied-in-fact contract existed between the parties. The uncontroverted facts demonstrate:

1. ISN submitted a written ECP to the Government. Def. Resp. PFOF 24.[1]

2. Within a week of receiving ISN's ECP, the Government's contract specialist told ISN that a modification to the Contract[2] would be issued. Def. Resp. PFOF 25.

3. The Government technically approved the ECP. Def. Resp. PFOF 28.

4. The Government told ISN that the ECP had been technically approved. Def. Resp. PFOF 29.

5. ISN had provided the Government with the requested schedule for the ECP at the time it submitted the ECP. Def. Resp. PFOF 41, 44.

6. The Government sought to fund the ECP. Def. Resp. PFOF 32, 74-80.

7. The Government informed ISN that it needed to make only small changes to its own funding documents for the ECP to take effect. Def. Resp. PFOF 31.

8. The Government did in fact obtain the funds requested for the ECP. Def. Resp. PFOF 33, 74-80.

9. ISN commenced work on the ECP. Def. Resp. PFOF 34.

10. The Government not only had knowledge that ISN was working on the ECP, but assisted with that work and formally evaluated ISN's work on the ECP. Def. Resp. PFOF 35, 44.

11. The Government's own audit acknowledged its obligation to pay ISN for its work on the ECP. Def. App. at 97.[3]

[1] "Def. Resp. PFOF _" refers to a paragraph in Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact.
[2] The "Contract refers to Contract No. N00600-94-C-0389, between ISN and defendant.
[3] "Def. App." refers to the Appendix of Exhibits Supporting Defendant's Cross-Motion for Summary Judgment. Similarly, "Pl. App." refers to ISN's corresponding appendix filed with its motion.

12. The Government's contracting officer had knowledge of the ECP within a month of the time it was submitted by ISN. Def. Resp. PFOF 28.

Federal contract law does not permit the Government to induce ISN to work for several months on the ECP based upon the terms of the ECP, and then avoid its own obligations to ISN under the ECP with the excuse that federal employees had failed to adhere to the Government's self-imposed formalities regarding contract modifications. In light of the uncontroverted facts, defendant's cross-motion for summary judgment on ISN's breach of contract claim should be denied, and ISN's motion for partial summary judgment on its breach of contract count should be granted.

## ARGUMENT

### A. Defendant's Cross-Motion For Summary Judgment Must Be Denied.

As this Court is well aware, summary judgment may only be entered when there is no genuine issue of material fact after reviewing the record in the light most favorable to the nonmoving party. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed. Cir. 1987). The Government raises three arguments to support its cross-motion, but each lacks legal foundation and support in the record. First, the Government argues that the implied-in-fact contract was not formed because no formal modification was executed. This assertion is patently absurd – an implied-in-fact contract by its very definition is not a formal agreement, and the Courts of this Circuit have consistently upheld such contracts. Second, the Government's argument that the implied-in-fact contract was not formed because the parties did not agree upon the essential terms in the ECP is at best a disputed issue, and is actually not supported by the record or the relevant case law. Finally, the Government's argument that the implied-in-fact contract was not formed because the ECP was not accepted by a government official

with authority is both redundant to its prior argument regarding formal execution, as well as inconsistent with the Government's conduct in this case. Defendant's conduct is the focus of an implied-in-fact contract inquiry, and there is far too much evidence of conduct supporting the existence of an implied-in-fact contract to perform the ECP for entry of summary judgment on defendant's cross-motion.

1. An Implied-In-Fact Contract Does Not Require A Formal Writing.

Defendant makes the astounding assertion that "[a]bsent the SF-30 there is no enforceable agreement." Def. Opposition Brf. at 9. Defendant's proclamation is undermined by numerous precedents, and by the very nature of an implied-in-fact contract. An implied-in-fact contract requires a meeting of the minds -- which is inferred from the conduct of the parties in light of the surrounding circumstances demonstrating their tacit understanding and agreement. *See Somali Development Bank v. United States*, 205 Ct.Cl. 741, 508 F.2d 817 (1974); *Algonac Mfg. Co. v. United States*, 192 Ct.Cl. 649, 428 F.2d 1241 (1970). In determining the existence of an implied-in-fact contract, the actions and conduct of the parties before the inception of a controversy is of much greater weight than what they said or did after a dispute arose. See *Truong Kuan Truc v. United States*, 212 Ct.Cl. 51 (1976); *Macke v. United States*, 199 Ct.Cl. 552, 467 F.2d 1323 (1972).

Defendant does not and cannot deny that there is ample precedent already cited to this Court demonstrating that an implied-in-fact contract is an exception to the requirement that an SF-30 be executed to make any contract or contract modification binding. *See PacOrd, Inc. v. United States*, 139 F.3d 1320 (9th Cir. 1998); *Texas Instruments, Inc. v. United States*, 922 F.2d 810 (Fed. Cir. 1990); *Narva Harris Constr.*

*Corp. v. United States*, 216 Ct.Cl. 238, 574 F.2d 508 (1978); *Cities Service Gas Co. v. United States*, 205 Ct.Cl. 16, 500 F.2d 448 (1974). Therefore, if the conduct of the parties demonstrates the existence of an implied-in-fact contract between the parties regarding the ECP, then the lack of an SF-30 has no legal effect.[4]

The Government's argument is further belied by the Federal Circuit's holding in *LDG Timber Enterprises v. Glickman*, 114 F.3d 1140 (Fed. Cir. 1997) (holding that the parties' modification entitled a timber contractor to extension of delivery date for completion of one site due to time spent foresting separate site unexpectedly damaged by fire). In LDG, the contracting officer had made several informal representations to induce the contractor to alter its delivery schedule to respond to pressing needs at one of its sites. In rejecting the argument that the contracting officer's letters did not constitute formal contract modifications, the Federal Circuit observed, "When the contracting officer administers a contract with which the officer is charged, the promises and representations made by the officer, when within the scope of the subject matter of the contract cannot be avoided by simply disclaiming the contracting officer's authority when the contract reaches litigation." *Id.* at 1143. Lack of formality does not outweigh conduct evidencing the Government's agreement.

In short, where the Government's conduct demonstrates the existence of a contract, this Court is not constrained by the formality of an SF-30 to enforce the parties' implied-in-fact contract. As such, Defendant's cross-motion must be denied.

[4] Defendant mistakenly relies on *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865 (Fed. Cir. 1987) and *SCM Corp. v. United States*, 595 F.2d 595 (Ct. Cl. 1979). Those cases involved attempted oral agreements not supported by conduct evidencing such agreements. The implied-in-fact contract theory was not at issue.

2. Defendant Has Not Established The Absence of Agreement On Essential Terms Of The ECP.

The Government wrongly suggests that the ECP was not an enforceable implied-in-fact contract because the parties allegedly did not agree on the price of the ECP. However, the Government does not cite to a single document in its appendix demonstrating that its alleged protests regarding the price of the ECP were ever communicated to ISN. Moreover, the Government sought and actually received the funding requested by ISN in the ECP. Def. FOF 11;[5] Def. Resp. PFOF 74-80. All the while, the Government communicated to ISN that the ECP had been approved and funding was forthcoming, and thereafter evaluated ISN's work on the ECP. Def. Resp. PFOF 25, 29, 31. Nothing in the Government's interaction with ISN prior to the termination for convenience suggests that the parties disagreed as to the price that would nullify an attempt at an implied-in-fact contract.

Moreover, courts have held that an implied-in-fact contract is still enforceable even if the parties had not expressed an agreement as to the price of the contract. For example, in *Cities Service*, the parties had not come to any agreement as to the price of the gas the contractor was providing the government. 500 F.2d at 448. While there is no evidence of a price dispute between the parties until the Government wanted to terminate the underlying Contract, it is clear that the absence of a formal agreement as to the price of the ECP does not nullify the conduct of the parties demonstrating an agreement to commence work on the ECP. Defendant has not met its burden for the purposes of its cross-motion regarding the non-existence of an agreement

[5] "Def. FOF _" refers to a paragraph in Defendant's Proposed Findings of Uncontroverted Fact.

on price, and an agreement on price was nevertheless unnecessary to establish an implied-in-fact contract.

3. The Months Of Inaction By The Contracting Officer Does Not Nullify Defendant's Conduct In Approving The ECP.

Defendant also argues that the implied-in-fact contract was not enforceable because it was not entered into with the contracting officer. However, the focus of an implied-in-fact contract is on the conduct of the parties. The CO did nothing while defendant was communicating its acceptance of the ECP, its funding of the ECP, and its approval of the progress made on the ECP. The CO allowed ISN to embark on the work of the ECP, and defendant communicated ongoing acceptance of the ECP through defendant's contract specialist and contracting officer's technical representative. Defendant cannot deny its conduct evidencing its agreement by relying on the convenient silence of the CO on the ECP until defendant decided it wanted to terminate the Contract for convenience.

"When the United States enters into contractual relations, its rights and duties therein are governed by the law applicable to contracts between private individuals." *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 607 (2000). The laws of contract and the rules of fair dealing do not evaporate when the government is a party. For example, when a contract provision becomes illegal, whether due to later-discovered error or statutory enactment, the party that produced the illegality is liable for the injury caused thereby. *See, e.g., United States v. Winstar Corp.*, 518 U.S. 839, 910 (1996). Therefore, defendant cannot use its own failure to adhere to the FAR in order to deny ISN compensation for the work defendant induced through its conduct.

Where the failure of the contract is attributable to a mistake by a government representative, the contractor is not without a contractual remedy. The remedy for unilateral mistake is not to absolve the side that made the mistake from responsibility for the consequences of its mistake, while placing the burden of the mistake on the innocent party. *See United States v. Amdahl Corp.*, 786 F.2d 387, 393 (Fed. Cir. 1986) ("in many circumstances it would violate good conscience to impose upon the contractor all economic loss from having entered an illegal contract"). In such instances, the Federal Circuit has upheld a contractual remedy for the contractor so as not to nullify the integrity of government contracts. For example, the Federal Circuit has held that "[i]f the contract is in violation of the DAR . . . then reformation is appropriate" to achieve compliance, rather than a simple cancellation of the illegal provision. *Beta Systems, Inc. v. United States*, 838 F.2d 1179, 1186 (1988). The Federal Circuit has similarly held that a contractor is still entitled to relief where the contracting officer violated a restriction against departing from the FAR. *See New England Tank Industries of New Hampshire, Inc. v. United States*, 861 F.2d 685 (1988). The Federal Circuit has also invoked estoppel against the government's recovery of overpayments from the contractor <u>where the government remained silent while the contractor relied on the contract provision</u> and "the contractor was not negligent and dutifully followed the terms of the contract." *USA Petroleum Corp. v. United States*, 821 F.2d 622, 626 (Fed. Cir. 1987); *see also*, *LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1552-53 (Fed. Cir. 1995) (contract not illegal despite violation of procurement regulations by government).

This Court's predecessor has recognized, "No one would deny that ordinary principles of equity and justice preclude the United States from retaining the

services, materials, and benefits and at the same time refusing to pay for them on the ground that the contracting officer's promise was unauthorized, or unenforceable for some reason." *See Prestex Inc. v. United States*, 320 F.2d 367, 373 (Ct.Cl. 1963). The same reasoning applies in this instance, where the contracting officer sat idly by with knowledge that the ECP had been approved and funded by Government representatives and commenced by ISN. The Government is estopped from denying its implied-in-fact contract when its conduct overwhelmingly supported the existence of an agreement, induced reliance by ISN, and went uncontradicted by the CO until the relationship between the parties had soured. It is at the very least disputed whether the CO had knowledge of the progress made on the ECP and the conduct of the Government's employees in the months preceding the termination of the Contract, and therefore defendant is precluded from an award of summary judgment on this basis.

**B. ISN Has Established That Defendant That Defendant Breached An Implied In-Fact Contract As A Matter Of Law.**

The uncontroverted facts before this Court warrant summary judgment in favor of ISN on its breach of contract claim. The conduct of the parties is evidence of the implied-in-fact contract. It is uncontroverted that ISN submitted the ECP to defendant. Def. Resp. PFOF 24. It cannot be denied that ISN's ECP described the work to be done, the schedule for its completion, and the estimated price. Def. Resp. PFOF 24; Pl. App. Exh. 5 at 58-66; Pl. App., Exh. 7 at 70. As such, there is no dispute that ISN submitted an offer to defendant in the form of the written ECP.

It also cannot be genuinely disputed that defendant's conduct constituted acceptance of the ECP. Within a week of receiving the ECP, the Government's contract specialist informed ISN in writing that a modification of the Contract "will be issued" in

response to the ECP. Pl. App., Exh. 6 at 67; Def. Resp. PFOF 26. It cannot be disputed that a document faxed to the CO by the contracting officer's technical specialist ("COTR") stated that defendant agreed with the delivery schedule submitted by ISN for the ECP. Pl. App., Exh. 7 at 70. ISN was verbally informed by defendant that the ECP had been approved. Def. Resp. PFOF 29. ISN was also informed in writing by defendant that the ECP was technically approved and that all that remained was a change in the wording of the funding documents. Def. Resp. PFOF 30-31; Pl. App. Exh. 8 at 72. Therefore, there is no genuine dispute that the Government communicated acceptance of the work described in the ECP and the schedule described in the ECP.

There is also no genuine dispute that the Government communicated agreement to pay for the ECP. It is undisputed that the Government "reprogrammed $789,319 from another contract to partially fund the ECP." Def. FOF 11 (emphasis added). There is no evidence that the Government communicated to ISN any disagreement with the price of the ECP in the immediate months after ISN submitted the ECP.

There is also no genuine issue of material fact that ISN commenced performance of the work described in the ECP, with defendant's knowledge. Def. Resp. PFOF 34-35; Pl. App., Exh. 2 at 28-31, 35, 51. There is no dispute that the Government cooperated with ISN's performance of the work described in the ECP. Def. Resp. PFOF 35. There is no genuine issue of material fact that both the Government and ISN assumed that formal approval of the ECP would be forthcoming. Def. Resp. PFOF 36. There is no genuine dispute that the Government did a formal review of ISN's progress on the work described in the ECP, and concluded that ISN was "performing

satisfactorily" according to the schedule for the ECP. Def. Resp. PFOF 44; Pl. App., Exh. 2 at 50; Pl. App., Exh. 10 at 74. There is no dispute that a Government's audit of the Contract recognized that ISN performed work pursuant to the ECP. Def. App. at 97.

Finally, there is no dispute that the Government has not paid ISN for the work it did on the ECP. Def. Resp. PFOF 73. The Government terminated the Contract for convenience, not cause. Def. Resp. PFOF 49. There is also no dispute that the Government has refused to pay ISN its anticipated profit from the Contract on the basis that ISN overran the original price of the Contract by performing work on the ECP. Def. App. at 94, 97.

Accordingly, there is no genuine issue of material fact regarding any of the elements of an implied-in-fact contract for performance of the ECP. ISN made an offer, the Government accepted the offer through officials in the CO's office with the knowledge of the CO. The Government obtained funding for the ECP, and ISN began satisfactory performance of the ECP. The Government breached the terms of the ECP by terminating the Contract and failing to ISN for its work on the ECP. Accordingly, ISN is entitled to judgment on its breach of contract claim in Count 1 as a matter of law.

## CONCLUSION

Because there is no genuine issue of material fact regarding the existence of defendant's contract with ISN for the work indicated in the ECP, and the Government's breach of that contract, ISN requests that this Court enter partial summary judgment in favor of ISN on the issue of the Government's liability for the ECP. Similarly, defendant's cross-motion for summary judgment should be denied.

Respectfully submitted,

__s/ Norman H. Singer________________
NORMAN H. SINGER, ESQ.
BENJAMIN M. KAHRL, ESQ. (of counsel)
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
(301) 469-0400

.

June 4, 2003

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff Information Systems & Networks Corporation's Reply Memorandum in Support of its Motion for Partial Summary Judgment and in Opposition to Defendant's Cross-Motion for Partial Summary Judgment was served via electronic filing this 4th day of June, 2004, to:

Doris Susan Finnerman, Esq.
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.
Washington, D.C. 20530

_s/ Norman H. Singer______________
Norman H. Singer, Esq.

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.