IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-796C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT I OF PLAINTIFF'S COMPLAINT

In our cross-motion for summary judgment, we set forth three reasons why ISN cannot establish an implied-in-fact contract with the United States. ISN's opposition does not raise any genuine issues of material fact that would defeat our motion, nor does it cite any controlling authority that refutes our position. Accordingly, the Court should enter judgment for the United States on Count I of the complaint.

## I. No Implied-In-Fact Contract Exists Because The Government Representatives, Whose Conduct Is Relied Upon, Did Not Have Actual Authority To Bind The Government

The essential elements necessary to establish an implied-in-fact contract are well-established. The plaintiff must prove: (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority on the part of the Government representative to bind the Government. City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998); see also D & N Bank v. United States, 331 F.3d 1374, 1378 (Fed. Cir. 2003); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003); Maher v. United States, 314 F.3d 600, 606 (Fed. Cir. 2002); Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002), and cases cited therein. In this case, ISN does not even allege that the contracting officer's technical

representative ("COTR") or the contract specialist, upon whom ISN relies, had any actual authority to bind the Government.

Notwithstanding the requirement to prove actual authority, ISN argues that the Court should find an implied-in-fact contract because the contracting officer "did nothing," and was "convenient[ly] silent." Pl. Reply at 10. Silence, without more, does not establish the existence or ratification of a contract. For example, in Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429 (Fed. Cir. 1998), the plaintiff was constructing an ethanol plant pursuant to a contract with Agrifuels, for which the payments were guaranteed by the United States. Plaintiff was not in privity with the United States. 142 F.3d at 1431. During construction of the plant, plaintiff attended a meeting and complained that it was not receiving timely payments. A Government representative, who had no authority to bind the Government, responded that "DOE was committed to funding the project to completion, and if the contractor completes the project, all the payments would work out in the end." Although the contracting officer was present at the meeting, he was silent after this offer was made. The plaintiff continued to work on the project, but Agrifuels declared bankruptcy, and DOE stopped funding the project. Id.

The court first noted that the delegation of authority to the contracting officer required that an action by him be accompanied by a prior, written approval. "[T]he CO was not authorized to bind the government in disregard of this explicit provision." 142 F.3d at 1432. The court relied upon, among other cases, EWG Assocs. Lts. v. United States, 231 Ct. Cl. 1028, 1030 (1982), which explained that the Government is not estopped from denying the existence of a contract where the acts upon which the contractor relies are unauthorized. 142 F.3d at 1433.

The court went on to hold that the contracting officer did not ratify the alleged oral contract, stating:

> In our case, the trial court merely found that the CO was present when the Deputy Director made the offer and was silent after the offer was made. There was no finding that the CO even heard the statement. This is not sufficient evidence to support a finding of actual knowledge by the CO of the offer. In addition, the facts as found by the trial court do not support imputing to the CO constructive knowledge of the unilateral contract. The mere fact that Harbert/Lummus continued performing its construction activities would not have put the CO on notice of the existence of a new, unilateral contract because Harbert/Lummus had been performing its construction activities before the offer by the Deputy Director in accordance with its construction contract with Agrifuels. In the absence of either actual or constructive knowledge of the unilateral contract, the CO's silence cannot be a ratification of the unilateral contract. Moreover, ratification must also be based on a demonstrated acceptance of the contract. Silence in and of itself is not sufficient to establish a demonstrated acceptance of the contract by the CO. The silence in this case by the CO was not an assent or acceptance of the oral, unilateral contract.
>
> In addition, as previously discussed, the CO's delegation of authority expressly provided that even a ratification by the CO would have to be in writing. In the absence of such a writing, the CO could not have properly demonstrated his acceptance of the contract.

142 F.3d at 1433-34 (citation omitted). Accordingly, the court held that the Government had not entered into a binding contract with the plaintiff. 142 F.3d at 1432-34. Thus, the Court here cannot find an implied-in-fact contract merely because the contracting office "did nothing."

ISN also raises the legal doctrines of unilateral mistakes, illegal contracts, and estoppel, Pl. Reply at 10-12, but it fails to explain the relevance of these doctrines to the facts of this case or their application to the determination of whether an implied-in-fact contract exists. At best,

ISN suggests that an implied-in-fact contract exists because ISN began performance of the ECP. Id.

Even if it were true that ISN began performance of the ECP, it is legally irrelevant. For example, in City of Cincinnati, the plaintiff asked the court to find an implied-in-fact contract from the fact that the city had been providing storm drainage services to the United States. The court declined, noting that the United States had not taken any action to indicate its willingness to pay the charges. "The fact that the United States may benefit from the storm drainage services provided by the city does not create an implied-in-fact contract to pay for those services." 153 F.3d at 1378.

However, the simple response to ISN's claim that it had "embark[ed] on the work of the ECP," Pl. Reply at 10, is that the contract forbade it from doing so. See Def. App. 23 ("No action will be taken by the contractor under such technical instruction [by the COTR] unless the PCO or ACO has issued a contractual change"); Def. App. 33 ("The Contractor shall not comply with any order, direction, or request of Government personnel unless issued in writing and signed by the Contracting Officer . . . "). ISN is not entitled to benefit from its failure to comply with the explicit provisions of the contract.

II There Was No Meeting Of The Minds On Essential Terms Of The ECP

ISN contends that there was a meeting of the minds as to the price of the ECP because no one ever protested to ISN its proposed price. Pl. Reply at 9. For every contract, however, there must be a mutual intent to contract, and an unambiguous offer and acceptance. See City of Cincinnati, 153 F.3d at 1377. As we stated above, silence is not an assent or acceptance of a contract. Harbert/Lummus, 142 F.3d at 1434; EWG Associates, Ltd., 231 Ct. Cl. at 10[28].

In Radioptics, Inc. v. United States, 223 Ct. Cl. 594, 621 F.2d 1113, 1121 (1980), the plaintiff, like ISN, claimed that if the express terms of its proposal were unacceptable to the Government, it should have notified the plaintiff. "Not having done so, Radioptics contends that the facts establish acceptance of the terms by the AEC by implication. The general rule, however, is to the contrary: Silence may not be construed as an acceptance of an offer in the absence of special circumstances existing prior to the submission of the offer which would reasonably lead the offeror to conclude otherwise." In this case, there is no evidence that Government agreed to the price proposed by ISN, and its silence cannot be construed as acceptance.

With respect to a proposed schedule, we contend that ISN never provided a revised delivery schedule "for all sites in Lot I," which the contract specialist requested from ISN. Def. Proposed Findings of Uncontroverted Fact, ¶¶ 6, 8. As Ms. Murtha explained, "A modification to the contract will be issued for the combination of both the formal acceptance of an ECP for implementation of all sites in Lot I and the revised delivery schedule for all sites in Lot I." Def. App. at 54. ISN contends that the submission of an acceptable revised schedule is "contradicted by the ECP itself." Pl. Resp. to Def. Proposed Findings of Uncontroverted Fact, ¶ 8. ISN is mistaken. The schedule attached to ISN's ECP concerns activities at Hampton Roads, Virginia. Pl. App. 62-66. Lot I, however, included Camp Smith and Makalapa. Def. App. at 3. Thus, the parties never reached an agreement as to a revised schedule for all sites in Lot I, which was an essential element of the proposed contract modification.

## III. Controlling Precedent Requires The Use Of Standard Form 30 For Any Change Order Issued Under The Contract

In this Circuit, controlling precedent mandates the use the standard form 30 (SF 30) whenever there is a change order issued under the changes clause of the contract. In SCM Corporation v. United States, 595 F.2d 595 (Ct. Cl. 1979), the parties, in a telephone conversation, reached "an apparent understanding" with respect to an equitable adjustment due to increased testing costs imposed upon the plaintiff by the Government. Although the agreement was memorialized in a memorandum by the contracting officer, the plaintiff refused to sign the SF 30, contending that it did not represent the agreement reached during the telephone conversation. Thus, the plaintiff filed suit seeking to enforce that agreement. 595 F.2d at 596-97.

The Court of Claims concluded that the purported agreement made in the telephone conversation was not a contract. 595 F.2d at 597. The court noted that the contract was subject to the Armed Services Procurement Regulations, which provided that SF 30 "shall be used" for contract modifications such as that at issue in the case. Id. The court further noted that "[p]arties are presumed to know and required to be cognizant of the governing regulations." 595 F.2d at 598. In addition, the plaintiff was aware of the fact that the telephone conversation contemplated the finalization of the settlement by the execution of an SF 30. Id.

In determining whether the oral agreement constituted a contract, the court framed the issue as follows: "the case deals with the problem of what effect the parties' clear understanding of the procedures and regulations governing settlements had on their intent to consummate a binding contract." 595 F.2d at 598. Accordingly, the court relied upon well-established law that, where the parties understand that a written agreement is to be the exclusive operative

consummation of their negotiations, there is no contract until such agreement is executed, and their preceding communications does not constitute a contract. Id.

SCM was followed by the Federal Circuit in Mil-Spec Contractors, Inc. v. United States, 835 F.2d 865 (Fed. Cir. 1987), in which the Government had attempted to argue that an oral agreement constituted an accord and satisfaction. As in SCM, the Government understood that the oral settlement agreement would not be effective until both parties had executed an SF 30. 835 F.2d at 868. Thus, the Court was required to follow the "basic principle enunciated in SCM that an oral modification of a written contract, which may be modified only by bilateral written agreement, is ineffective." 835 F.2d at 869 (emphasis added).

Texas Instruments, Inc. v. United States, 922 F.2d 810 (Fed. Cir. 1990), cited by ISN, is not to the contrary. While holding that the absence of an SF 30 did not exclude the possibility that a binding agreement was reached, the court said,

> The regulations governing *Mil-Spec* and *SCM* simply are inapplicable to the facts of this case. In both *Mil-Spec* and *SCM*, the alleged oral agreements were indeed supplemental since they would have altered or modified the existing contract. *SCM*, 595 F.2d at 597 ("agreement changing the price"); *Mil-Spec*, 835 F.2d at 867 ("oral agreement was a modification of the contract, since it increased the amount the government would pay"). In contrast, the negotiation between TI and the Government of a price term was not an "alteration in the specification, delivery point, rate of delivery, contract period, price, quantity or other contract provisions of an existing contract," since the "existing contract" was not in conflict with a newly negotiated price and, moreover, expressly contemplated the later negotiation of the price. Furthermore, *Mil-Spec* and the regulation merely restate the longstanding proposition that an integrated executory contract excludes modification except by a signed writing. *See* U.C.C. § 2-209(2).

922 F.2d at 814 (emphasis added).

Like SCM and Mil-Spec, the alleged agreement at issue was a modification of the contract as it changed the work required and the price, and FAR § 43.301 required the use of SF 30 for any change order issued under the changes clause of the contract or any authorized unilateral contract modification. Indeed, the Federal Circuit has recently reaffirmed "the general rule . . . that an oral contract may not modify a written contract which is required by regulation to be in writing." Johnson Management Group CFC, Inc. v. Martinez, 308 F.3d 1245, 1258 (Fed. Cir. 2002). In Harbert/Lummus, which rejected an alleged contract because it lacked the required written approval, the Federal Circuit said, "agency procedures must be followed before a binding contract can be formed." 142 F.3d 1433.

Thus, the precedent that is binding on this Court clearly establishes that "[n]o contract shall be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met." 48 C.F.R §1.602-1(b). Accordingly, Government officials have no authority to bind the Government to an implied-in-fact modification of a contract where the law requires that contract modifications be set forth in an SF-30.

## CONCLUSION

The undisputed facts demonstrate that ISN cannot establish the existence of an implied-in-fact contract binding on the Government. Accordingly, we respectfully request that the Court grant summary judgment to the Government on Count I of the complaint.

Respectfully submitted,

PETER D. KEISLER

Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin by/ Mark A. Melnick
BRIAN M. SIMKIN
Assistant Director

s/ Doris S. Finneman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Phone:(202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant