IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-796C (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

SUPPLEMENTAL MEMORANDUM OF THE GOVERNMENT

By order dated November 3, 2004, the Court requested supplemental briefing regarding the application of Trauma Service Group v. Unites States, 104 F.3d 1321 (Fed. Cir. 1997), to count I of plaintiff's complaint, which alleges the breach of an implied-in-fact agreement.

The written contract between ISN and the Government required ISN to "upgrade all manual technical control facilities with Automated Technical controls" for those control facilities at several locations providing tactical and strategic communications support for the Department of Defense. See Def. App. 9 (emphasis added). The contract contained specific provisions relating to engineering change proposals and change proposals. See attachment A (excerpts from contract).

The engineering change proposal ("ECP") submitted by ISN, which sets forth the terms of the alleged implied agreement, proposes to install additional equipment and to upgrade other equipment otherwise required by the contract. It also proposed a revised schedule for the Hampton Roads site. See Pl. App. 58-66. Thus, the express agreement covers the same subject matter contained in ISN's alleged implied-in-fact contract, and, therefore, the latter cannot exist. See Trauma Service Group v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("an

implied-in-fact contract cannot exist if an express contract already covers the same subject matter"); Atlas Corp. v. United States, 895 F.2d 745, 754-55 (Fed. Cir. 1990) ("The existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract").

In Trauma Service Group, the plaintiff had a contract which included the provision of certain health care providers. 104 F.3d at 1324. Following termination of the contract, plaintiff sought reimbursement for the services of an x-ray technician. Concluding that the contract covered support personnel, which included x-ray technicians, the court rejected the plaintiff's claim of an implied-in-fact contract. Like Trauma Services Group, the contract at issue here expressly addresses engineering change proposals for the modification of equipment necessary to an automated technical control system. Accordingly, there can be no implied-in-fact contracts arising from ISN's ECP.

The decision in Atlas Corp., also supports this position. In Atlas Corp., plaintiffs entered into contracts to produce uranium and thorium for the Government. 895 F.2d at 747. The contracts contained pricing provisions designed to allow each contractor to recover its costs plus a reasonable profit. Id. Many years later, the parties began to recognize the health hazards associated with the residues of the uranium and thorium milling operations, known as "tailings." In response to those dangers, the Government enacted legislation addressing these hazards. Id. at 748. After several years of complying with the increased safety standards, at increased costs to the contractors, the contractors sued the Government to recover these costs. Id. at 748-49. Although the existence of the hazards was not knowable when the contracts were negotiated, id. at 752, the contractors argued that the Government agreed to compensate the contractors for all

production costs, including the costs related to the tailings, under an implied-in-fact contract theory. Id. at 754. The Federal Circuit disagreed. The court observed that prices were set by the contracts, taking into consideration the contractors' costs. Additionally, the court found that "the stabilization costs are not 'entirely unrelated' to the costs included in the contract price." Therefore, as a matter of law, there could be no implied agreement to pay costs over and above the contract prices. Id. at 755.

Other cases support the conclusion that ISN's written contract precludes the existence of an implied-in-fact contract. In Starflight Boats v. United States, 48 Fed. Cl. 592 (2001), the plaintiff had a firm, fixed price contract to manufacture runway edge marker systems. Shortly after the commencement of performance, the contracting officer's representative ("COR") attempted to induce the contractor into a scheme to defraud the Government. The contractor reported this conduct to the Deputy of Contracting for the Air Force, who purportedly told the contractor to comply with the unlawful demands of the COR, and, in return, the Government would compensate him for his costs. The contractor thereafter sought to recover costs arising from the delay that was caused by his cooperation with the criminal case against the COR, based upon an alleged implied-in-fact contract. 48 Fed. Cl. at 594-95. In rejecting this claim, the Court noted that the plaintiff had not "identif[ied] anything that the government promised under an implied-in-fact contract that was beyond the scope of the express contract." Id. at 599. Indeed, the alleged agreement "altered the terms of the express contract." Id. at 601. Accordingly, the Court found that the alleged implied contract was "inextricably connected to the subject matter of the express contract," and, as a matter of law, no implied contract existed. As in Starflight, ISN's

ECP proposed to alter the terms of the contract; nothing in the ECP was beyond the scope of the written contract.

Finally, in W.M. Schlosser, Inc. v. United States, 50 Fed. Cl. 147 (2001), the written contract at issue contemplated the pricing of field overhead on change orders as a percentage of cost, rather than as an extended cost per day, yet three change orders had included field overhead on a per diem basis. Subsequently, the contractor sought the same per diem rate for other change orders that extended the contract duration. Because the contract's changes clause explicitly provided for compensation for overhead, this explicit provision precluded an implied agreement on the same subject. 50 Fed. Cl. at 151. In this case, the contract explicitly provided that no "order, statement, or conduct of Government personnel" constituted a change of the contract unless it was "issued in writing and signed by the Contracting Officer." Def. App. 33; see also Def. App. 23. This explicit provision precludes the existence of an implied agreement to change any requirement of the contract.

These cases all demonstrate that an implied agreement to implement the changes set forth in ISN's ECP does not exist.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin/ by Robert Kirschman
BRIAN M. SIMKIN
Assistant Director

s/ Doris S. Finnerman
DORIS S. FINNERMAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Phone:(202) 307-0300
Fax: (202) 305-7643

Attorneys for Defendant

# ATTACHMENT A

| | | |
|---|---|---|
| 52.232-18 | AVAILABILITY OF FUNDS | APR 1984 |
| 52.232-23 | ASSIGNMENT OF CLAIMS | JAN 1986 |
| 52.232-25 | PROMPT PAYMENT | SEP 1992 |
| 252.232-7004 | DOD PROGRESS PAYMENT RATES | DEC 1991 |
| 252.232-7006 | REDUCTION OR SUSPENSION OF CONTRACT PAYMENTS UPON FINDING OF FRAUD | AUG 1992 |
| 52.233-1 | DISPUTES | DEC 1991 |
| | Alternate I | DEC 1991 |
| 52.233-3 | PROTEST AFTER AWARD | AUG 1989 |
| 252.233-7000 | CERTIFICATION OF CLAIMS AND REQUESTS FOR ADJUSTMENT OR RELIEF | DEC 1991 |
| 52.237-2 | PROTECTION OF GOVERNMENT BUILDINGS, EQUIPMENT AND VEGETATION | APR 1984 |
| 252.239-7000 | PROTECTION AGAINST COMPROMISING EMANATIONS | DEC 1991 |
| 52.242-13 | BANKRUPTCY | APR 1991 |
| 252.242-7000 | POSTAWARD CONFERENCE | DEC 1991 |
| 252.242-7004 | MATERIAL MANAGEMENT AND ACCOUNTING SYSTEM | DEC 1991 |
| 52.243-1 | CHANGES - FIXED PRICE | AUG 1987 |
| 52.243-6 | CHANGE ORDER ACCOUNTING | APR 1984 |
| 252.243-7001 | PRICING OF CONTRACT MODIFICATIONS | DEC 1991 |
| 52.244-1 | SUBCONTRACTS (FIXED-PRICE CONTRACTS) | APR 1991 |
| 52.245-2 | GOVERNMENT PROPERTY (FIXED-PRICE CONTRACTS) | DEC 1989 |
| 52.245-19 | SPECIAL TEST EQUIPMENT | AUG 1988 |
| 52.246-23 | LIMITATION OF LIABILITY | |
| 52.246-24 | LIMITATION OF LIABILITY - HIGH-VALUE ITEMS | APR 1984 |
| | Alternate I | APR 1984 |
| 52.246-25 | LIMITATION OF LIABILITY - SERVICES | APR 1984 |
| 252.246-7000 | MATERIAL INSPECTION AND RECEIVING REPORT | DEC 1991 |
| 252.247-7023 | TRANSPORTATION OF SUPPLIES BY SEA | DEC 1991 |
| 252.247-7024 | NOTIFICATION OF TRANSPORTATION OF SUPPLIES BY SEA | DEC 1991 |
| 52.248-1 | VALUE ENGINEERING | MAR 1989 |
| 52.249-2 | TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED PRICE) | APR 1984 |

(b) Risk of Loss or Damage - Purchased Equipment

(1) The Government is relieved of all risk of loss or damage to the equipment, up to and including the day prior to the first day of a successful performance period, except for

(i) loss or damage caused by nuclear reaction, nuclear radiation, radioactive contamination, war, insurrection, civil strife, rebellion, weapons of war; or

(ii) negligence on the part of the Government or its agents, provided, however, that the Government shall be relieved of the liability for such risks of loss-or damage due to negligence if any commercial customer of the Contractor is relieved of such liability under like circumstances.

(2) If the Government is liable for loss or damage of a machine, the Contractor shall have the option to restore the machine to its previous condition, in which event the Government shall pay the Contractor to perform such restoration at the Contractor's then-current prices, terms and conditions. If the Contractor elects not to restore the machine, the Government may, at its own expense, restore the machine to its previous condition. If, however, the machine is lost or damaged beyond repair, the Government shall pay the Contractor the same price for the machine as the Government would have paid if it had purchased the machine on the day prior to the loss or damage under the provisions of this contract. This clause shall govern risk of loss or damage, notwithstanding any other provisions of this contract relating to title, payment, or ownership.

**I.45 PREPARATION OF VALUE ENGINEERING CHANGE PROPOSALS, DFARS 252.248-7000 (DEC 1991)**

Prepare Value Engineering change proposals, for submission pursuant to the value engineering clause of this contract, in the format prescribed by the version of MIL-STD-973 in effect on the date of contract award.

**I.46 CHANGE PROPOSALS**

(a) After contract award, the Government may solicit, and the Contractor is encouraged to independently propose, changes to the equipment, software specifications, or other requirements of this contract. These changes may be proposed to save money, to improve performance, to save energy, or to satisfy increased data processing requirements. However, if proposed

changes relating to improved performance are necessary to meet increased data processing requirements of the user, those requirements shall not exceed the contract requirements by more than 25%. If the proposed changes are acceptable to both parties, the Contractor shall submit a price proposal to the Government for evaluation. Those proposed changes that are acceptable to the Government will be processed as modifications to the contract.

(b) This clause applies only to those proposed changes identified by the Contractor under a proposal submitted pursuant to the provisions of this clause. At a minimum, the following information shall be submitted by the Contractor with each proposal:

(1) A description of the difference(s) between the existing contract requirement and the proposed change(s), and the comparative advantages and disadvantages of each;

(2) Itemized requirements of the contract which must be changed if the proposal is adopted, and the proposed revision to the contract for each such change;

(3) An estimate of the changes in performance and cost, if any, that will result from adoption of the proposal;

(4) An evaluation of the effects the proposed change would have on collateral costs to the Government, such as Government-furnished property costs, costs of related items, and costs of maintenance and operation; and

(5) A statement of the time by which the change order adopting the proposal must be issued so as to obtain the maximum benefits of the changes during the remainder of this contract. Also, any effect on the contract completion time or delivery schedule shall be identified.

(c) Change proposals submitted to the Contracting Officer shall be processed expeditiously. The Government shall not be liable for proposal preparation costs or any delay in acting upon any proposal submitted pursuant to this clause. The Contractor has the right to withdraw, in whole or in part, any change proposal not accepted by the Government within the period specified in the change proposal. The decision of the Contracting Officer as to the acceptance of any such proposal under this contract shall be final and shall not be subject to the "Disputes" clause of this contract.

(d) The Contracting Officer may accept any change proposal submitted pursuant to this clause by giving the Contractor written notice thereof. This written notice may be given by issuance of a modification to this contract. Unless and until a modification is executed to incorporate a

change proposal under this contract, the Contractor shall remain obligated to perform in accordance with the terms of the existing contract.

(e) If a change proposal submitted pursuant to this clause is accepted and applied to this contract, an equitable adjustment in the contract price and in any other affected provisions of this contract shall be made in accordance with this clause and other applicable clauses of this contract.

(f) The Contractor is requested to identify specifically any information contained in the change proposal which the Contractor considers confidential and/or proprietary. Identification of information as confidential and/or proprietary is for information purposes only shall not be binding on the Government to prevent disclosure of such information. Offerors are advised that such information may be subject to release upon request pursuant to the Freedom of Information Act (5 U.S.C. 552).

(g) Nothing in this clause shall be construed to authorize change proposals which are properly changes under the "Changes" clause or new work which require justification and approval in accordance with FAR Part 6. All matters should be coordinated with the Contracting Officer.

**I.49 CLAUSES INCORPORATED BY REFERENCE, FAR 52.252-2 (JUN 1988)**

This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

**I.50 ALTERATIONS IN CONTRACT, FAR 52.252-4 (APR 1984)**

Portions of this contract are altered as follows:

| | | | | |
|---|---|---|---|---|
| G.4 | G.6 | ____ | G.12 | G.20 |
| G.24 | H.4 | I.18 | I.26 | ____ |

**I.51 AUTHORIZED DEVIATIONS IN CLAUSES, FAR 52.252-6 (APR 1984)**

(a) The use in this solicitation or contract of any Federal Acquisition Regulation (48 CFR