**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | : | |
| **Plaintiff** | : | |
| **v.** | : | **Case No. 02-796C** |
| | : | **(Judge Allegra)** |
| **UNITED STATES OF AMERICA** | : | |
| **Defendant** | : | |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM REGARDING THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT FOR BREACH OF CONTRACT**

## INTRODUCTION

Pursuant to the Order of this Court filed on November 3, 2004, Plaintiff Information Systems and Networks Corporation ("ISN"), by counsel, submits this supplemental memorandum for the purpose of reviewing the issue of how the cross motions for summary judgment on Count I are implicated by the decision in *Trauma Service Group, Inc. v. United States*, 104 F.3d 1321 (Fed. Cir. 1997). The decision in *Trauma Service Group* stands for the proposition that a party cannot sue for breach of an implied-in-fact contract if there is an express contract between the parties addressing the same subject matter. As argued below, the cases decided by the Federal Circuit and this Court since the *Trauma Service Group* decision have clarified what constitutes "the same subject matter" for the purposes of maintaining a suit for a separate implied-in-fact contract. The engineering change proposal ("ECP") between ISN and defendant (the "Government") does not constitute the same subject matter as the express contract between the parties. As such, ISN may maintain its action for an implied-in-fact contract.

**ARGUMENT**

The *Trauma Service Group* decision involved a claim by a private health care organization ("TSG") that the government had entered into an implied-in-fact contract to pay for the services of an x-ray technician for a government medical program. The dispute centered upon whether the parties' express agreement concerning the program also provided for the cost associated with the x-ray technician's salary. In analyzing the extent to which the terms of the express agreement implicated the subject matter of the alleged implied-in-fact agreement, the Federal Circuit reviewed: (1) the provisions of the express contract; (2) statements made by the parties during negotiation of the express contract; (3) parol documents; and (4) the intent of the parties. *See Trauma Svc. Group*, 104 F.3d at 1327; *see also, Integrated Logistics Support Sys., Int'l. v. United States*, 42 Fed. Cl. 30, 36 (1998) (summarizing factors utilized by the *Trauma Svc. Group* decision). The Federal Circuit concluded on the facts in the case that the written agreement required the plaintiff to maintain support personnel and did not obligate the Government to pay for them. Therefore, the alleged implied-in-fact agreement providing for the payment of the x-ray technician involved the same subject matter as the express contract and therefore plaintiff could not maintain the action on an implied-in-fact theory. 104 F.3d at 1327.

The cases decided since *Trauma Service Group* have offered greater clarity as to what constitutes the "same subject matter" in determining whether an action for an implied-in-fact contract is barred by the parties' express contract. For example, the Federal Circuit reviewed the facts in *Barrett Refining Corp. v. United States*, and concluded that the express contract between the parties did not contain any clause covering price escalation, such that there was "nothing to preclude an implied-in-fact

agreement on that term." *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir.), *reh'g denied* (2001). In *Barrett Financing*, the parties had four express contracts for the delivery of military jet fuel to the Defense Fuel Supply Center. The contracts each contained a base price and the government's standard price adjustment clause. The price adjustment clause was later held to be unauthorized and unenforceable because it did not comply with the Federal Acquisition Regulation ("FAR"). The plaintiff plead the existence of an implied-in-fact contract with regard to pricing that provided for a fair market price adjustment. The Federal Circuit held that, for these same express contracts, the parties could have a separate implied-in-fact agreement with regard to pricing. *Id.* at 1060.

Similarly, this Court has found instances in which an express contract between the parties did not constitute the same subject matter as an implied-in-fact contract. For example, in *Integrated Logistics*, this Court held that an implied-in-fact agreement survived a motion to dismiss where the allegations "frame a new and different contract." 42 Fed. Cl. 30, 36 (1998). In that case, the Navy had awarded the plaintiff a contract for the design, procurement and installation of a warehousing system for spare parts and equipment to assist the Kuwait Air Force. The express contract provided for performance in two segments. Completion of the first segment was delayed by the Iraqi invasion of Kuwait which resulted in the destruction of some of the necessary facilities. After the resulting Persian Gulf War, the parties met to discuss timing of the second segment, and the plaintiff incurred substantial costs to prepare itself to meet the Navy's requirements that the segment be completed 90 days after receiving a notice to proceed. The Court noted that the complaint had adequately alleged that the procurement of these materials in

preparation for the second segment was made pursuant to an implied agreement with regard to the timing of performance after the war. *Id.* at 35-36.

This Court has also held that an express plea agreement by a defendant signed by his attorney in a drug case in which he agreed to disclose and forfeit all drug-related assets and assist fully with their return did not cover the "same subject matter" as an alleged implied-in-fact agreement that the drug dealer's attorney would be paid from the forfeited funds in exchange for his efforts to assist in the maintenance, liquidation and repatriation efforts regarding the forfeitable property. *Bailey v. United States*, 54 Fed. Cl. 459, 483-85 (2002). Similarly, this Court held in a Winstar-related case that a group of businesses that purchased failing thrifts under an "assistance agreement" with the Federal Savings and Loan Insurance Corporation ("FSLIC") were entitled to the tax benefits. *See First Heights Bank, FSB v. United States*, 53 Fed. Cl. 195 (2002). The Court agreed that there was an implied-in-fact agreement not to repeal the tax benefits, and distinguished the *Trauma Services Group* decision because "[t]he missing 'subject matter'" is supplied by a separate implied-in-fact contract under the terms of which [one of the plaintiffs] obligated itself, among other things, to facilitate the maximization of tax benefits." *Id.* at 207.

Like the decisions in *Barrett Refining*, *Integrated Logistics*, *Bailey*, and *First Heights Bank*, this case involves a separate implied-in-fact contract that does not involve the same subject matter as the express contract. As in *Barrett Refinancing* (missing price term) and *Integrated Logistics* (change in contract performance terms), the Statement of Work ("SOW") incorporated in the parties' contract did not contain the specifications that were the subject matter of the ECP. *See* Def. Appendix at 9-16. Rather, the SOW

was general. Thus, the ECP changes in specifying the 12-pair cabling, increasing the Novell net-users from 25-50, changing the site configuration, and upgrading the RMSA were subjects not covered by the express contract. *See* Pl. Appendix at 58-66. The ECP was submitted at the Government's request and was accepted by the Government's contracting specialist and contracting officer's technical representative. Pl. Appendix at 27, 29-30, 34, 39, 67. Like the facts in *Barrett Refining Corp*., the ECP at issue here changed the funding of the parties' agreement, and that separate funding decision as documented by the Government constituted an implied-in-fact agreement as to the work to be done under the ECP. Pl. Appendix at 73-81.

Moreover, the Government has not argued that the express agreement includes the same subject matter as the implied-in-fact agreement's subject matter. Rather, it points to issues of contract formation that have nothing to do with subject matter. As a result, the *Trauma Svc. Group* simply has no bearing on the pending cross-motions.

Respectfully submitted,

__s/ Norman H. Singer_______________
Norman H. Singer, Esq.
Singer & Associates, P.C.
.
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
(301) 469-0400

November 19, 2004

Counsel for Plaintiff

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.