# In The United States Court of Federal Claims

No. 02-796C

(Filed: April 12, 2005)

This Opinion Will Not Be Published in the U.S. Court of Federal Claims Reporter Because It Does Not Add Significantly to the Body of Law.

__________

| | |
|---|---|
| INFORMATION SYSTEMS & | * |
| NETWORKS CORPORATION, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

__________

**OPINION**

__________

**ALLEGRA, Judge:**

This government contract action is before the court on the parties' partial cross-motions for summary judgment. For the reasons that follow, this court **DENIES** plaintiff's motion, but **GRANTS** defendant's cross-motion.

## I. BACKGROUND

On or about July 15, 1994, defendant, acting through the Department of the Navy's Fleet and Industrial Supply Center, Norfolk, Virginia (FISC), awarded plaintiff, Information Systems & Networks Corp (Information Systems), a contract (No. 00600-94-C0389) to provide various material, labor, and services for naval telecommunications centers at Hampton Roads, Camp H.M. Smith, and Pearl Harbor. The Space and Naval Warfare Systems Command (SPAWAR) was the agency beneficiary of the contract. As this case involves an alleged modification of this contract, it bears emphasis, from the outset, that several sections of the contract dealt, in varying ways, with how to effectuate such a modification. For example, a section on "Change Proposals" provided that "[t]he Contracting Officer may accept any change proposal submitted pursuant to this clause by giving the Contractor written notice thereof. This written notice may be given by issuance of a modification to this contract." Another section read that "[t]he Contractor shall not comply with any order, direction, or request of Government personnel unless issued in writing and signed by the

Contracting Officer, or pursuant to specific authority otherwise included in this contract." Yet a third section of the contract, which explained the duties of the contracting officer's technical representative, again specified that only the contracting officer could approve a modification to the contract. And, finally, the contract incorporated various FAR clauses, among them, 48 C.F.R. § 43.301, which provides that supplemental agreements must be in writing and, in particular, "shall" be on a Standard Form 30 (SF 30). Under the contract, Roscoe Crawford, Jeffery Berghdal and Lisa Murtha served, respectively, as the contracting officer, contracting officer's technical representative, and contract specialist.

Defendant asserts that almost from the beginning of contract performance, Information Systems began running behind schedule. In June of 1995, SPAWAR identified changes it felt needed to be made to the contract, particularly as to the Hampton Roads site, and requested that plaintiff submit an engineering change proposal (ECP) that would incorporate those changes. On June 20, 1995, plaintiff submitted an ECP with: (i) a cost breakdown differentiated by total cost, contract cost, and ECP cost; (ii) an equipment list for Hampton Roads; and (iii) a revised schedule with a set of specific delivery dates for Hampton Roads. On June 26, 1995, Ms. Murtha wrote plaintiff, indicating that "[a] modification to the contract will be issued for . . . the formal acceptance of an ECP," and that the "ECP submitted . . . will be reviewed by SPAWAR with comments to be provided" on June 26 or 27, 1995. The letter also requested Information System to provide a revised installation schedule.

On July 21, 1995, Mr. Berghdal sent Mr. Crawford and Ms. Murtha a copy of a July 20, 1995, memorandum from SPAWAR providing the latter's comments on the ECP. This memorandum began by stating –

> SPAWAR has reviewed reference (a) ECP and technically approves [Information System's] proposed engineering changes. Recommend negotiate all terms and conditions listed in reference (a) with ISN.

It went on to provide detailed comments on various aspects of Information System's cost analysis sheet. On August 23, 1995, SPAWAR, in a document signed by the contracting officer, reallocated $789,319 to the contract in question, allegedly to fund the ECP. (However, on November 27, 1995, these funds were reallocated to another purpose.)

Also on August 23, 1995, one of plaintiff's employees, Mr. Tobin, wrote Mr. Robertson, plaintiff's program manager, to "update him on the status of our ECP at FISC." This internal memorandum stated that Lisa Murtha "has not looked at the ECP, to date," and would be unable to do so until mid-September of 1995. The memorandum reflects that Mr. Tobin informed Ms. Murtha that he "did not think that ISN (my VP) would wait that long." Referring, by section number, to the "change proposals" clause in the contract, Mr. Tobin further stated –

> I talked with Don Tabasco about contract and FAR requirements for timely ECP processing by the government. He recommends that we take a more forceful

> approach with the contracting officer. You might want to touch base with him personally.

On August 31, 1995, Mr. Berghdal sent a memorandum to plaintiff, indicating that "we have technically approved the ECP" and asking "are you still going to submit a no-cost ECP to use in negotiation of consideration with FISC."

Information Systems alleges that it orally was told to proceed with the work – or, at least, never told not to perform the work. Between September and December 1995, plaintiff submitted progress reports in which it repeatedly recognized that the ECP had not been approved. On September 27, 1995, Mr. Berghdal noted that "ISN is slightly behind the proposed schedule in their ECP, but still performing satisfactorily compared against that schedule." Notes from a December 6, 1995, meeting between Mr. Crawford and SPAWAR representatives reflect that Mr. Crawford –

> never modified the contract to re-establish the [delivery] schedule on any of the sites because he could never get a good idea of what a realistic new [delivery] schedule would be. Also the contractor would not agree to pay consideration to extend the schedule. So right now we are in limbo.

On January 26, 1996, Mr. Tabasco, plaintiff's manager of contracts, wrote the government complaining that "the approval of the latest ECP dated June 20, 1995, in the amount of $930,527 for Hampton Roads has not been received by ISN."

In February of 1996, after Information Systems had failed to meet its proposed delivery schedules, the Navy issued a stop work order. On March 15, 1996, defendant terminated the contract. From June of 1996 to November of 1997, plaintiff's representatives and Ms. Jones, the terminating contracting officer, attempted to settle on the proposed termination costs. As part of this process, on December 19, 1996, the Defense Contract Audit Agency audited plaintiff's termination proposal and concluded that a settlement of $4,049,532 was appropriate. By letter dated August 8, 1997, Ms. Jones issued a unilateral determination that found that Information Systems was entitled to $4,049,532; however, since plaintiff had already been paid this amount, Ms. Jones concluded that they were entitled to nothing further. In her letter, however, she left open the possibility that plaintiff could provide additional documentation to support its claim for compensation.

By letter dated September 5, 1997, Information Systems provided Ms. Jones with further information in support of its entitlement to an additional $891,364, for work performed pursuant to the ECP. Thereafter, Ms. Jones attempted to contact Mr. Crawford, the contracting officer on the original contract, to determine whether the ECP had been approved. After Mr. Crawford did not respond to Ms. Jones, by letter dated November 13, 1997, she offered Information System the sum of $891,364.00 in full and final settlement of its claims, "contingent on funding from the Department of Navy." On November 14, 1997, Information Systems accepted the offer by signing the November 13 letter and returning it to Ms. Jones.

On November 18, 1997, Ms. Jones wrote Mr. Crawford advising him of the "offer" to Information Systems and requesting that he provide the additional funding needed. On December 1, 1997, Mr. Crawford responded that his office agreed with the original audit findings, that is, that nothing further was due Information System. By way of explanation, his letter stated –

> ISN has provided your office with volumes of supposed justification for additional compensation based on supposed approval of an ECP. This ECP was not approved and no services/supplies were received as stated by ISN. The ISN request for payment is unwarranted and as a Contracting Officer, not approved by myself.

His letter continued –

> ISN was not issued this ECP because the costs associated with its implementation were exorbitant . . . No matter what case ISN is trying to build, it is clear that ISN knew and knows the modification of the contract by myself as the Contracting Officer was the only way the ECF could be added to the contract and the only way the ECP could be added to the contract and the only manner in which contracted reimbursable work could be performed.

This letter concluded, "[i]n summary, additional funding will not be provided." On December 9, 1997, Ms. Jones informed plaintiff that the funding for her prior offer had not been approved and that plaintiff was due nothing for the ECP.

Initially, Information Systems brought suit in this court seeking, *inter alia*, damages for the breach of a settlement agreement covering the ECP. This court held that the settlement had not been finalized and dismissed the relevant count of the complaint. Plaintiff then voluntarily dismissed its other counts, without prejudice, while pursuing an appeal; on October 16, 2002, the Federal Circuit affirmed. Then, on July 16, 2002, plaintiff filed a second complaint, this one containing five counts and seeking to recover in excess of $890,000, plus interest. At issue in the pending cross-motions for summary judgment is the first count of that complaint, in which plaintiff seeks damages for the costs incurred on the ECP as a result of the defendant's breach of the allegedly modified contract.

## II. DISCUSSION

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

In its motion, plaintiff asseverates that defendant breached an implied-in-fact contract based on the ECP. Plaintiff argues that a written modification to the contract was a "mere formality," and not required. In its response and cross-motion, defendant counters that the parties failed to execute a formal, written modification as required by the contract. It remonstrates that the parties never

formed an implied-in-fact contract because they never had a meeting of the minds and, at all events, no agency official with the authority to bind defendant expressed an intention to be bound in any form here.

All government contracts must be administered consistent with the applicable regulatory requirements and the contract language. *See Hercules, Inc. v. United States,* 516 U.S. 417, 428-29 (1996). Here, various contract provisions and incorporated FAR clauses, key among them, FAR § 43.301, required, first, that modifications of the contract be in writing and, second, that a Standard Form 30 (SF30) be used for this purpose. Plaintiff agrees that neither of these requirements were met. It is well-accepted that, where required by a contract, the failure to reduce a modification or amendment to writing renders the modification ineffective – even as against claims that the modification was somehow effectuated through an implied-in-fact or oral contract. *See e.g., Johnson Mgmt. Group CFC, Inc. v. Martinez*, 308 F.3d 1245, 1258 (Fed. Cir. 2002) (observing "an oral contract may not modify a written contract which is required by regulation to be in writing"); *Daly Constr., Inc. v. Garrett,* 5 F.3d 520, 521 (Fed. Cir. 1993) (writing requirement enforced and modification held not binding where contractor "knew the government was not bound in contract until a formal written modification was executed"); *Mil-Spec Contractors, Inc. v. United States*, 835 F.2d 865, 867 (Fed. Cir. 1987) ("Unless and until there was a binding modification to which both [the contractor] and the contracting officer had agreed in writing, there could not be a binding modification of the contract"); *SCM Corp. v. United States*, 595 F.2d 595, 598 (Ct. Cl. 1979) (no oral contract to modify agreement where regulations required such modifications to be in writing; "oral understandings which contemplate the finalization of the legal obligations in a written form are not contracts in themselves"). Summarizing these case, two leading commentators have stated that "it is now clearly established that bilateral contract modifications can only be made in writing," and that "alleged oral agreements to modify the terms of a contract are not valid." John Cibinic, Jr. & Ralph C. Nash, Jr., Administration of Government Contracts 410 (3d ed. 1995). Moreover, the cases noted above, as well as others, hold that the requirement that a written modification be on SF30 is also not met by an implied-in-fact or oral agreement. *See, e.g., Mils-Spec Contractors, Inc.*, 835 F.2d at 868 ("any bilateral modification of a contract is a 'supplemental agreement,' which requires the execution of a written standard form 30"); *Solar Turbines, Inc. v. United States*, 23 Cl. Ct. 142, 152 (1991); *Merrimac Mgmt. Inst., Inc.*, 94-3 B.C.A. ¶27,251, 1994 WL 590092 (1994).

Applying the law to the facts at hand, it is plain that a binding modification did not arise here, as the alleged modification was not reduced to a written agreement, let alone a SF30. In arguing to the contrary, plaintiff relies on several Federal Circuit cases that have upheld implied-in-fact contracts. *See, e.g., LDG Timber Enters., Inc. v. Glickman*, 114 F.3d 1140 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 916 (1997); *Texas Instruments Inc. v. United States*, 922 F.2d 810 (Fed. Cir. 1991); *Narva Harris Constr. Corp. v. United States,* 574 F.2d 508 (Ct. Cl. 1978); *Cities Serv. Gas Co. v. United States*, 500 F.2d 448 (Fed. Cir. 1974). But, most of these cases did not involve true contract modifications, *see, e.g.*, *Texas Instruments*, 922 F.2d at 814, and none involved regulations or contract provisions of the limiting sort at issue, *see, e.g., LDG Timber Enters.*, 114 F.3d at 1143 ("No statute, regulation, or rule was cited as violated by the contract extensions").

Indeed, the Federal Circuit in *Texas Instruments*, 922 F.2d at 814, distinguished its prior decision in *Mil-Spec*, *supra*, and *SCM*, *supra*, precisely on the latter basis. Accordingly, these cases are all inapposite and do not require a different result on the facts *sub judice*.

In a further attempt to sidestep the writing requirement, plaintiff relies on *J.S. Alberici Constr. Co., Inc. v. Gen. Servs. Admin.*, GSBCA No. 12,386, 94-2 BCA ¶ 26,776 at 133,173 (1994), where the Board found that the execution of the SF30, or any written document, was a "mere formality" that could be ignored where the parties had reached full agreement as to the terms of the contract. The ruling in *Alberici*, of course, is in tension with at least some of the decisions that have enforced the writing requirement – at least those in which an argument also might have been made that the requirement was a "mere formality." *See, e.g.*, *Daly Constr.,* 5 F.3d at 521. Perhaps for this reason, the Federal Circuit questioned the validity of *Alberici* in *Johnson,* 308 F.3d at 1258. Yet, the Federal Circuit ultimately was satisfied merely to distinguish that case because, unlike in *Johnson*, the contractor in *Alberici* had agreed to specific terms with the government, but simply had not reduced them to writing. *Id*. In the court's view, *Johnson* indicates, at the least, that the rule enunciated in *Alberici* is inapplicable where the signing of the SF30 was not a "mere formality." As in *Johnson*, the latter is the case here and the supposed salvific principles enunciated in *Alberici* (and arguably in other cases) thus have no factual footing in the case *sub judice*. *Cf. Robinson Contracting Co v. United States*, 16 Cl. Ct. 676, 688-89 (1989), *aff'd*, 895 F.2d 1420 (Fed. Cir. 1990) (signing of SF30 was a "mere formality" where the agreement was already fully reduced to writing).

Indeed, any notion that the signing here was a "mere formality" is belied by many of the same undisputed facts that demonstrate that an implied-in-fact modification did not arise here. For one thing, such a modification requires that there be a meeting of the minds, albeit one inferred from the conduct of the parties. *La Van v. United States*, 382 F.3d 1340, 1346 (Fed. Cir. 2004); *Maher v. United States*, 314 F.3d 600, 606 (Fed. Cir. 2002), *cert. denied*, 540 U.S. 821 (2003). However, it is improper to draw such an inference, where, as here, the evidence plainly indicates that the parties anticipated future negotiations, and particularly where it is anticipated that the final, fully-negotiated agreement will be reduced to writing. *See, e.g., Kilmer Village Corp. v. United States*, 153 F. Supp. 393, 397 (Ct. Cl. 1957); *Edwards v. United States*, 22 Cl. Ct. 411, 421 (1991); *see also* Restatement (Second) Contracts § 26 (2004). That the parties had not agreed on critical terms (*e.g.*, the cost of the ECP) is evidenced by the entire course of conduct here – not only by correspondence between the parties, but even plaintiff's own internal documents, all of which acknowledge that the ECP had not been finally approved and that future negotiations were necessary. In light of these circumstances, plaintiff's alleged performance of the ECP could not give rise to an implied-in-fact contract with the government. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1327 (Fed. Cir. 1997) (citing *Merritt v. United States*, 267 U.S. 338, 340-41 (1925)); *Atlas Corp. v. United States*, 895 F.2d 745, 754-56 (Fed. Cir. 1990), *cert. denied*, 498 U.S. 811 (1990); *EWG Assocs., Ltd. v. United States*, 231 Ct. Cl. 1028, 1030 (1982). While such performance might give rise to an implied-in-law contract, based on benefits received by the government, this court lacks jurisdiction to award relief on that basis. *See, e.g., Hercules*, 516 U.S.

at 423; *Perri v. United States*, 340 F.3d 1337, 1343 (Fed. Cir. 2003); *Trauma Serv.*, 104 F.3d at 1327.

Further, no agency official with authority to bind the defendant assented to the ECP, either in writing or by conduct. In this regard, it is axiomatic that to show that either an implied-in-fact (or express) contract existed, a plaintiff must demonstrate "the Government representative 'whose conduct is relied upon [had] actual authority to bind the government in contract." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990) (quoting *Juda v. United States*, 6 Cl. Ct. 441, 452 (1984)), *cert. denied*, 501 U .S. 1230 (1991); *see also Harbert/ Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed. Cir.1998), *cert. denied*, 525 U.S. 1177 (1999) ("It is well established that the government is not bound by the acts of its agents beyond the scope of their authority."); *Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1153 (Fed. Cir.1983) ("[T]he United States is not bound by its agents acting beyond their authority and contrary to regulation."). The only person with the authority to bind defendant here was Mr. Crawford, the contracting officer, who neither engaged in any conduct assenting to the amendment nor signed any written document to that effect. Although it appears that plaintiff knew that Mr. Crawford alone could authorize the ECP, it is charged with that knowledge at any rate, as "anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." *Federal Crop Ins Corp. v. Merrill*, 332 U.S. 380, 384 (1947). Morever, as plaintiff apparently knew all to well, mere silence or inaction by the contracting officer could not bind the United States. *See Harbert/Lummus Agrifuels Projects*, 142 F.3d at 1433-1434; *EWG Assocs.*, 231 Ct. Cl. at 1030. Indeed, the Federal Circuit has held that where, as here, agency procedures require a written approval by the contracting officer, any conduct short of that cannot demonstrate acceptance of a contract. *Harbert/Lummus*, 142 F.3d at 1433-1434.

## III. CONCLUSION

This court need go no further. The court has considered – and rejects – various other theories that plaintiff glancingly mentioned in its reply brief (*e.g.,* illegality, estoppel, and unilateral mistake). Based on the foregoing, the court **DENIES** plaintiff's motion for partial summary judgment, and **GRANTS** defendant's cross-motion for partial summary judgment. The Clerk is directed to dismiss count one of plaintiff's complaint.

**IT IS SO ORDERED.**

s/ Francis M. Allegra
Francis M. Allegra
Judge