IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION | ) | |
| Plaintiff. | ) | Case No. 02-796C (Judge Allegra) |
| v. | ) | |
| THE UNITED STATES | ) | |
| Defendant | ) | |

PLAINTIFF'S MOTION *IN LIMINE* TO ESTABLISH AS ADMITTED ALL COSTS INCURRED BY PLAINTIFF AS VERIFIED IN DEFENDANT'S AUDIT REPORT OF SUCH COSTS

Plaintiff, Information Systems & Networks Corporation ("plaintiff" or "ISN"), by its undersigned attorneys, hereby moves this Honorable Court *in limine* pursuant to Rules 301, 402, and 403 of the Federal Rules of Evidence to establish as admitted as a conclusive, irrebuttable presumption that ISN has proven its claimed and unpaid costs incurred on the subject contract of $460,708. ISN must still prove entitlement to such costs based on the allegations of the Complaint as well as its loss of profit claim. ISN is entitled to this ruling as a result of the binding evidentiary admissions of the United States ("defendant" or "the Government"). In two of the three depositions taken regarding the audit of the costs performed by the defendant, each deponent independently confirmed that the audit performed verified that the costs incurred on the subject contract above the original contract amount of $460,708 were incurred by ISN on the performance of the subject contract and met all requirements of the Federal Acquisition Regulations ("FAR"), Generally Accepted Government Auditing Standards ("GAGAS") and the DOD FAR Supplement ("DFARS") governing audits for reimbursement except for entitlement. These admissions were made by Mark Moser who authorized the Audit

Report and headed-up the Columbia, Maryland branch office of the Defense Contract Audit Agency ("DCAA"); Benjamin Monastero, the DCAA Auditor who actually performed the audit; and are set forth in the Audit Report. Defendant has therefore conceded, as a result of its Audit Report, and testimony at deposition, that all increased costs in excess of the original contract amount were actually incurred by ISN in connection with the performance of the subject contract and met the auditing standards for verification. ISN, therefore, is not required to prove any of these costs.

ISN is entitled to the presumption of the accuracy of every portion of the Audit Report that is against the Government's interest, and should not be required to present evidence establishing any cost which exceeds the original contract amount and is being claimed in this case. The DCAA has examined all of the relevant evidence in coming to this conclusion, and is the Agency in the Government charged with auditing Contract claims. ISN should not be required to prove costs which have been verified by the DCAA and the Government should not be permitted to introduce evidence to contradict its admission or to now question costs it previously verified. Such evidence is unnecessary, would render the case not suspectible to summary disposition, and would cause confusion in resolving those aspects of ISN's claim for which there remains a material dispute. The material disputes to be resolved at trial primarily regard ISN's entitlement to the admitted costs and loss of profit. The parties should not prolong and complicate the trial by proving or disputing damages already analyzed and verified by the Government's own audit.

STATEMENT OF RELEVANT FACTS

This Court, in its Opinion of April 12, 2005, set forth in detail the overall background of this case in connection with deciding cross-motions for summary

judgment on Count I of the Complaint for breach of contract. Accordingly, ISN will not repeating such facts but will limit its statement to facts surrounding the Audit Report.

After termination of the contract for convenience, ISN submitted what is generally referred to as a Termination Settlement Proposal ("TSP") consisting of a Settlement Proposal and Schedule of Accounting Information. The TSP claimed total costs incurred and profit $5,060,578. At that time, ISN had been paid $2,507,015. After its submission, the Defense Contract Management Agency ("DCMA") in Atlanta, Georgia requested that DCAA perform an audit of the TSP. The audit responsibility fell on the DCAA Columbia branch office, that had cognizant DCAA authority over ISN. The audit was required to be performed in accordance with GAGAS, as well as requirements in the FAR and DFARS. The Audit Report was issued on December 19, 1996. See Exhibit 1.

The audit was subject to three qualifications, none of which have any relevance to the establishment or auditing of ISN's costs: First, the defendant had not provided DCAA technical reports at the time of the audit.[1] Second, the defendant had not prepared an inventory verification report at the time of the audit.[2] Third, no opinion was expressed on ISN's legal entitlement to the costs. In performing the audit, because the DCAA viewed ISN as a high risk audit candidate, it increased its testing of accounts to satisfy the risk. In addition, the DCAA determined that there were no material or significant inadequacies or noncompliances in the TSP.

The audit investigated six elements of the ISN TSP: (1) Direct Materials; (2) Direct Labor; (3) Indirect Expenses; (4) Other Direct Costs; (5) G&A Expense; and (6)

---

[1] These reports were required from the defendant and apparently submitted later.
[2] This report was subsequently provided by the defendant. Neither Report caused any alteration in the results of the Report.

Settlement Expenses. For each of these categories, the DCAA found as follows:

1. Direct Materials. Total claimed of $2,401,080 was found accurate and supportable.

2. Direct Labor: DCAA made an upward adjustment to direct labor of $22,147 or increased the amount of ISN's claim by this amount. DCAA verified that the labor cost reconciled with ISN's Jamis job cost reports and employee timesheets and was incurred prior to the termination notice. Total amount was found to be accurate and supportable of $626,804.

3. Indirect Expenses: DCAA again made an upward adjustment of $17,079 because of the increase in direct labor. These expenses were based on Fringe Benefits and Overhead rates that DCAA approved and accepted. Total amount found accurate and supportable was $483,409.

4. Other Direct Costs: The DCAA found $427,831 to be accurate and supportable.

5. G&A Expense: DCAA again made an upward adjustment of $5,370. The G&A rate was verified to the current provisional billing rates being used by ISN as well as prior termination audits and totaled $539,431.

6. Settlement Expenses: The DCAA allowed $31,685 of the $183,224 claimed by ISN.[3]

Thus, all of the costs set forth and claimed by ISN in the TSP were audited and tested by DCAA, which than made the following overall findings: First, all documentation supporting all costs was reviewed for allowability and allocabiltiy to the terminated contract and found to be proper. Second, all costs were tested and found to

[3] For the purposes of this Motion, ISN is accepting the $31,685.

have been properly incurred on the terminated contract. Third, the DCAA confirmed the defendant's acknowledgement during the audit process that ISN was due some form of equitable adjustment on the contract due to various changes to the statement of work.

Therefore, the Audit Report concluded that based on total costs incurred of $4,510,240, ISN should be paid an additional $1,542,517. Along with what had been paid before the TSP was filed, this left unpaid incurred costs of $460,708.[4]

In describing the audit procedures, Moser said:

> ...You want to make sure that the findings, or the results of the audits are based upon sound logic, that there is some basis in FAR, that they have-- it seems that they have performed adequate auditing steps to prove the things that they have done by, you know, saying to me that they had verified the cost incurred back to whatever documents that they identify....
> (Dep.at 32)

Regarding the purpose of the Report, Moser confirmed the audit was to verify ISN's TSP costs:

> Q. So is it correct to say that the only purpose of this audit report...was...verifying the elements of ISN's settlement proposal.
> A. Yes
> (Dep.T.at 84)

The actual auditor, Monastero, wrote the statement in the Report that "...we consider the proposal (TSP) to be acceptable as a basis for negotiating a fair and reasonable price"

(Dep.at 42).

> Q. What was your purpose in stating that?
> A. When you craft the auditor's opinion, when the proposal and your audit is--generally everything checks out okay for the most part— I'm trying to put it in layman's terms, that it was okay that you can use this as a basis to negotiate. There wasn't any super serious

[4] The defendant accepted the findings of the Report as the basis to pay an additional $1,542,517. The only reason the remaining $460,708 was not paid was because it exceeded the Contract amount.

flaws that would be, you know, big showstopper kind of things so to speak, you know?
Q. Did you audit whether the contents of ISN's proposal were supportable and accurate?
A. We did.
Q. Okay, and your conclusion was with the exceptions that you point out, that the data was accurate.
A. Yes.
(Dep. 44-45).

LEGAL ARGUMENT

The admissions in the Audit Report, the conduct of defendant in paying $1,542,517 based on the Report, and the accompanying testimony of the two DCAA witnesses who cannot now contradict or otherwise explain away the Audit Report findings constitute "evidentiary admissions." An evidentiary admission is a statement made by a party's agent which the trier of fact may evaluate as it deems fit. See Weyerhaeuser Co. and Subsidiaries v. United States, 32 Fed. Cl. 80, 118(1994). The trier of fact shall ascribe whatever evidentiary weight that is appropriate for the evidentiary admission. Id. (citing Budden v. United States, 748 F. Supp. 1374 (D.Neb. 1990), vacated on other grounds, 963 F.2d 188(8th Cir. 1991).

In this instance, this Court is the trier of fact. In narrowing the issues for trial, this Court should give substantial weight to the admissions made by the Government after it audited the extensive evidence supporting ISN's claim. The DCAA "has the primary responsibility for providing accounting and financial advice on Department of Defense contracts governed by Defense Acquisition Regulations, 32 C.F.R. Sec. 357.2(a)." Marquardt Co. v. United States, 822 F.2d 1573(Fed Cir. 1987); see also, FAR § 42101(b)("the [DCAA] is the responsible Government audit agency" regarding audits). Federal courts have observed, "[T]he auditors of the DCAA are highly expert in their field and have special knowledge which no other personnel in any of the other agencies

of the[Department of Defense] possess…." See United States v. Westinghouse Elec. Corp., 615 F.Supp. 1163,1191(W.D. Pa. 1985). The Government relies heavily upon the DCAA's expertise in auditing claims from government contractors.

As a result of the admission made by the Government through the Agency that specializes in analyzing the proof of contract claims, the Court should proceed with the legal presumption that ISN has proven the costs incurred under the Contract that exceed the original Contract amount. A presumption has been defined as "a rule of law, statutory or judicial, by which finding a basic fact gives rise to[the] existence of [a] presumed fact, until [the] presumption is rebutted." Black's Law Dictionary 1185(6th Ed. 1990). Although not evidence, a presumption can be a "substitute" for evidence if it is not rebutted. Dunn v. Simmons, 877 F.2d 1275, 1278(6th Cir. 1989), cert. Den., 494U.S. 1061(1990). "[P]resumptions, whether created by statute or by judicial ruling, 'arise out of considerations of fairness, public policy and probability.'" See A.C.Aukerman Co. v. R.L. Chaides Contr Co., 960 F.2d 1020,1034 (Fed. Cir. 1992)(citing Cornetta v. United States, 851 F.2d 1372,1380(Fed. Cir. 1988); see also, Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564,1581(Fed. Cir. 1984).

Conclusive, or "irrebuttable" presumptions are binding, while presumptions which are rebuttable are nonbinding. See Universal Restoration, Inc. v. United States, 798 F.2d 1400, 1406(Fed. Cir. 1986). "A conclusive presumption is one in which proof of[a] basic fact renders the existence of the presumed fact conclusive and irrebuttable." Black's Law Dictionary 1186. Here, there is no Government witness who can now

provide any testimony about the Audit Report in light of their respective deposition testimony disclaiming any different knowledge of the Report's content.[5]

Accordingly, as a result of the defendant's conduct alone, the Court should apply an irrebutable presumption to the accuracy of the Government's admissions in the Audit Report thereby precluding the Government from offering evidence rebutting its own Report. ISN, as a result, would not have to offer evidence other than the Audit Report itself to prove any of the incurred costs claimed. Any other result would moot the purpose and the effect of the Audit Report.

Even if the Court determines that ISN is entitled to only a rebuttable presumption as to the proof of the costs not questioned in the Audit Report, the Government has no ability to offer evidence to refute or explain the contents of the Audit Report because it refused to provide such deposition testimony claiming lack of any knowledge.

This Court should determine that ISN is entitled to a conclusive, irrebuttable presumption that the Government's admissions are accurate and binding. The findings by the DCAA must be viewed as reliable since they were the result of an independent audit performed under the applicable DCAA standards. Certainly DCAA would not err against the interests of the Government. To the contrary, the Audit Report discloses that because ISN was a high risk audit candidate, DCAA would be especially careful in its audit investigation. This Court should therefore presume that the costs claimed by ISN in this case have been properly verified.

The United States Court of Federal Claims has previously held that the United States is estopped from protesting the findings of one of its own audits of a claim by

---

[5] ISN claims that because the defendant failed to comply with RCFC 30(b)(6), it is precluded from offering any testimony on which the designee was unprepared and unknowledgeable as well as precluding defendant from contradicting or modifying their responses on specified issues, from the deposition testimony offered.

offering subsequent audit of the same claim containing a different calculation as to the determination of costs. See Elastic Stop Nut Corp. v. United States, 132 F.Supp. 466, 468(Ct. Cl. 1955). The Elastic case dealt with multiple contracts between the Government and a contractor, and the attempt by the Government to contradict its previous audit of the contractor's claim that the parties had relied on in settling a previous claim. Id. The Government's rationale for questioning the previous audit in that case was to reallocate costs from a different claim to the claim that had already settled, thereby reducing the amount available as damages in the subsequent suit. Id. The Court held that even "[I]f, at this stage of the proceedings, there were unanimity of opinion among expert accountants that the [latter] audit was more scientifically accurate, it would not affect our conclusion in this case." Id. The Court noted that the "Government made its [initial] audit," and the Court rejected the Government's attempt to revise the results of that audit because "[I]t is too late to do that, merely for the purpose of preserving the niceties of scientific accounting." Id.

The application of a conclusive presumption would allow the Court to save time and move more quickly to the entitlement issues. The Federal Circuit has held that the Court should reject litigation positions which waste resources and time or needlessly encumber the dispute resolution process." See Anderson Consulting v. United States, 959 F.2d 929, 932 (Fed. Cir. 1992). In addition, even if the Court denies ISN's accompanying motion on the discovery conduct, any evidence offered by the Government rebutting its previous admissions would be irrelevant, and therefore inadmissible under Rule 402 of the Federal Rules of Evidence. To the extent that evidence regarding the costs verified in the Audit Report could be considered relevant, its "probative value is substantially outweighed" by "considerations of undue delay, waste of

time, or needless presentation of cumulative evidence"-and therefore must be excluded pursuant to Rule 403 of the Federal Rules of Evidence.

Regardless of the type of presumption the Court may find applicable here, ISN should not be required to present evidence of the verified costs from the Audit Report. Forcing ISN to produce the raw data underlying the admissions in the Audit Report would only prolong the trial of this matter unnecessarily, and would not serve any public purpose. The Government has already examined all of this evidence. If the Court decides that the Government may have the opportunity to revisit its findings, even in the face of its discovery tactics, ISN should not be required to reproduce documents and testimony that substantiate the Government's admissions. The trial should proceed with the admission that ISN as satisfactorily proven the costs verified in the Audit Report by virtue of the Government's admissions therein.

CONCLUSION

For the foregoing reasons, plaintiff, Information Systems & Networks Corporation, respectfully requests this Court to establish as admitted all costs incurred by ISN under the Contract as verified in the Audit Report.

December 11, 2006

Respectfully Submitted,

SINGER & ASSOCIATES, P.C.

s/Norman H. Singer

NORMAN H. SINGER, ESQ
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, MD 20817
Phone: (301) 469-0400
Fax: (301) 469-0403

CERTIFICATE OF FILING

I hereby certify that on December 11, 2006, a copy of the foregoing Plaintiff's Motion *In Limine* to Establish as Admitted all Costs Incurred by Plaintiff as Verified in Defendant's Audit Report of such Costs was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing systems. Parties may access this filing through the Court's system.

s/Norman H. Singer
NORMAN H. SINGER, ESQ

# DEFENSE CONTRACT AUDIT AGENCY

## AUDIT REPORT

19 December 1996

**PREPARED FOR:** Termination Contracting Officer
ATTN: DCMDS-GATC (Ms. Mildred Jacobs)
Defense Logistics Agency
Defense Contract Management Command Atlanta
508 Walker Street
Atlanta, GA 30060-2789

**PREPARED BY:** Columbia Branch Office
One Mall North, Suite 200
10025 Governor Warfield Parkway
Columbia, MD 21004
Telephone No. (410) 964-2060
FAX No. (410) 997-3237
e-Mail Address fao6311@rma.dcaa.mil

**SUBJECT:** Termination Settlement Proposal

**REFERENCES:** TCO: Contract No. N00600-94-C-0389
DCAA: Audit Report No. 6311-97B17100001

**CONTRACTOR:** Information Systems and Networks Corporation
10411 Motor City Drive
Bethesda, MD 20817

**REPORT RELEASE RESTRICTIONS:** See Page 9

**CONTENTS:**


| | Page |
|---|---|
| Subject of Audit | 1 |
| Executive Summary | 1 |
| Scope of Audit | 2 |
| Results of Audit | 3 |
| DCAA Personnel and Report Authorization | 8 |
| Audit Report Distribution and Restrictions | 9 |

## SUBJECT OF AUDIT

As requested by DCMC-Atlanta, we audited the 4 June 1996 termination settlement proposal submitted by Information Systems and Networks Corporation (ISN). Contract N00600-94-C-0389 was terminated for the convenience of the government with an effective termination date of 15 March 1996. Prior to the termination notice, a Stop-Work Order had been issued on 20 February 1996. The termination settlement proposal for $5,060,578 was submitted on the total cost basis.

The termination settlement proposal is the responsibility of ISN. Our responsibility is to express an opinion on the settlement proposal based on our audit.

## EXECUTIVE SUMMARY

Our audit of the $5.06 million proposal disclosed $1.01 million of questioned costs. The questioned costs are summarized below:

| | |
|---|---|
| Direct Labor | ($22.147) |
| Indirect Expenses | (17,079) |
| G&A Expense | (5.370) |
| Profit | 443.396 |
| Settlement Expenses | 151.539 |
| Cost in Excess of Contract | 460.708 |
| Total | $1.011.047 |

The termination settlement proposal is acceptable for arriving at a fair and reasonable price; however, the significant issues described below should be considered in establishing the government's position.

SIGNIFICANT ISSUES:

1. The results are qualified because we have not yet received a copy of the current technical report regarding the estimate to complete/estimate at completion, and the inventory verification report. We do not express an opinion regarding the contractor's legal entitlement.

2. ISN overstated settlement expenses by proposing settlement labor and ODCs which it did not incur and prompt payment act interest which is unallowable since ISN received progress payments.

3. ISN overstated the entire settlement proposal by proposing costs in excess of the contract limitations (FAR 49.207).

4. Profit is questioned in total. ISN could not support the proposed 10% profit factor with any Estimates to Complete (ETCs). Further, ISN acknowledged that they under bid this contract and were starting out in a loss from the beginning.

## SCOPE OF AUDIT

Except for the qualifications noted below, we conducted our audit in accordance with generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain reasonable assurance that the proposal is free of material misstatement. An audit includes:

a. reviewing the contractor's internal controls, assessing control risk, and determining the extent of audit testing needed based on the control risk assessment;
b. examining, on a test basis, evidence supporting the amounts and disclosures in the termination settlement proposal;
c. assessing the accounting principles used and significant estimates made by the contractor;
d. evaluating the overall proposal presentation, and
e. determining the need for technical specialist assistance and (if applicable) quantifying the results of a government technical evaluation.

We evaluated the proposed costs using the applicable requirements contained in the:

a. Federal Acquisition Regulation (FAR), Part 49, and
b. DOD FAR Supplement (DFARS).

In CY 1996, ISN has brought three previous termination settlement proposals to the Armed Services Board of Contract Appeals (ASBCA) for settlement. Our prior audits have resulted in significant questioned costs. Based on our prior audits and current ASBCA experience with ISN's termination settlement proposals, we have assessed control risk as high. Our audit reflects this assessment and provides a reasonable basis for our opinion.

QUALIFICATIONS:

1. We were informed by Mr. Jeff Bergdahl, COTR that the updated technical reports will not be available for incorporation into our report. Therefore, the results of audit are qualified.

2. We made our recommendations without the benefit of the inventory verification report (SF 1423), which was not available as of the date of this report. Therefore, the audit report is qualified accordingly.

3. Our audit results do not consider the contractor's legal entitlement. We express no opinion regarding legal entitlement.

## RESULTS OF AUDIT

### AUDITOR'S OPINION

In our opinion, the cost or pricing data submitted by the offeror are inadequate in some respects. The proposal was not prepared in all respects in accordance with appropriate provisions of FAR and DFARS (see Notes 5, 6 and 7, pages 5, 6 and 7 for a further discussion). However, the impact of the inadequacies and noncompliances described is considered to be relatively insignificant. Therefore, we consider the proposal to be acceptable as a basis for negotiating a fair and reasonable price. This statement should not be interpreted to mean that the data are necessarily accurate, complete and current in accordance with 10 U.S.C. 2306a, since a postaward review may disclose evidence not now discernible.

| Elements of ISN's Proposal | ISN's Proposal | Questioned Costs | Difference (Note 1) | Note | Page |
|---|---|---|---|---|---|
| Direct Materials | $ 2,401,080 | $ 0 | $ 2,401,080 | | |
| Direct Labor | 604,657 | (22,147) | 626,804 | 2 | 4 |
| Indirect Expenses | 466,330 | (17,079) | 483,409 | 3 | 4 |
| Other Direct Costs | 427,831 | 0 | 427,831 | | |
| G&A Expense | 534,061 | (5,370) | 539,431 | 4 | 5 |
| Subtotal | 4,433,959 | (44,596) | 4,478,555 actual profit | | |
| Profit | 443,396 | 443,396 | 0 | 5 | 5 |
| Settlement Expenses | 183,224 | 151,539 | 31,685 | 6 | 6 |
| Cost in Excess of Cont. | 0 | 460,708 | (460,708) | 7 | 6 |
| Total | 5,060,579 | $ 1,011,047 | $ 4,049,532 | | |
| Payments Received | (2,507,015) | | | 8 | 7 |
| Net Requested | $ 2,553,564 | | | | |

4,049,532

() Denotes upward adjustment

1,542,517.00
2,507,015.00

### Explanatory Notes

1. The amounts in this column are presented solely for the convenience of the TCO in developing the government's negotiation objective. They represent only the arithmetic difference between the amounts proposed and the related questioned costs. You should not consider the amounts to be audit approved or recommended amounts. DCAA does not approve or recommend prospective costs because the amounts depend partly on factors outside the realm of accounting expertise, such as opinions on technical and production matters. Any portion of the questioned costs accepted by the TCO must have the appropriate indirect rates applied.



FOR OFFICIAL USE ONLY

2. Direct Labor

a. Summary of Conclusions:

We have reclassified $22,332 of stop work labor from settlement costs to direct costs and questioned $185 due to a difference between the settlement proposal and its supporting documentation. The net effect of these adjustments is an upward adjustment to direct labor of $22,147.

b. Basis of Claimed Cost:

Direct labor is based on the actual incurred labor cost as recorded in the books and records.

c. Audit Evaluation:

We verified that the direct labor cost: (1) reconciled with ISN's Jamis job cost reports and employee timesheets; and (2) was incurred prior to the termination notice.

3. Indirect Expenses

a. Summary of Conclusions:

We have increased the indirect expenses by $17,079 due to the increase in Direct Labor shown above.

b. Basis of Claimed Cost:

The indirect expenses are based on a Fringe Benefits rate of 29.68% and an Overhead rate of 36.58%. ISN's overhead allocation base includes fringe benefits.

c. Audit Evaluation:

We verified the proposed Fringe Benefits and Overhead rates to the current provisional billing rates and prior termination audits. The upward adjustment applicable to Fringe Benefits is calculated by applying the proposed and accepted Fringe Benefits rate to the stop work labor reclassified from settlement expenses to direct labor. The resulting sum is then multiplied by the proposed and accepted Overhead rate to arrive at the upward adjustment applicable to overhead.

4. G&A Expense

a. Summary of Conclusions:

We have increased the G&A expenses by $5.370 due to the increases in Direct Labor, Fringe Benefits and associated Overhead expenses.

b. Basis of Proposed Cost:

The G&A expenses are based on a G&A rate of 13.69% applied to Direct labor, Indirect expenses, Direct materials and ODCs.

c. Audit Evaluation:

We verified the proposed G&A expense rate to the current provisional billing rate and prior termination audits. The upward adjustment is the result of applying the proposed and accepted G&A rate to the increase in Direct labor and related Fringe Benefits and Overhead expense

5. Profit

a. Summary of Conclusions:

We have questioned the entire $443.396 of claimed profit in accordance with FAR 49.203 due to the following: (1) ISN did not provide us with any Estimate to Complete (ETC) or Percentage of Completion; (2) ISN significantly under bid this contract by approximately $900,000; and (3) DCAA audit report No. 6221-96G17500001 disclosed that ISN was in a loss position on this contract.

A loss calculation was not applied since the Government acknowledged that ISN was due some form of equitable adjustment on this contract due to various changes to the statement of work. It is our understanding that the only hold-up in the equitable adjustment negotiations was a delivery schedule. Since the contract was terminated prior to the conclusion of the equitable adjustment negotiations, we are unable to determine the impact that the equitable adjustment would have on the anticipated loss.

b. Basis of Claimed Cost:

ISN has claimed a profit factor of 10% applied to all costs

c. Audit Evaluation:

We requested ISN to provide us with an ETC and a Percentage of Completion. We also requested technical specialist assistance regarding the ETC and Percentage of Completion.

6. Settlement Expenses

a. Summary of Conclusions:

We have questioned $151,539 of the $183,224 proposed settlement expenses as shown below:

| Description | Questioned | Ref. |
|---|---|---|
| Reclassified to D/L | $28,960 | (1) |
| Cost Not Incurred | 64,355 | (2) |
| Prompt Pmt. Int. | 58,224 | (3) |
| Total | $151,539 | |

(1) We have reclassified the stop work period labor and associated fringe benefits to direct labor and indirect expenses respectively as discussed in notes 2. and 3. Stop work period labor is not a settlement cost but a direct expense.

(2) ISN is proposing settlement labor and ODCs which are estimates of possible future costs. Consequently, these costs have not been incurred and are questioned in total.

(3) We have questioned the entire $58,224 of proposed Prompt Payment Interest in accordance with FAR 32.907-2 which states "no interest penalty shall be paid to the contractor as a result of delayed contract financing payments". Since ISN received progress payments, and the interest is calculated on these progress payments, the interest is unallowable. Review

b. Basis of Claimed Cost:

The claimed settlement costs are based on costs recorded in ISN's Jamis Job Cost and estimated future labor and ODCs. The claimed prompt payment interest is a mathematical calculation not recorded in the accounting records.

c. Audit Evaluation:

We verified that the claimed settlement expenses were recorded in the Jamis Job Cost and supported by vendor invoices and employee timesheets. We reviewed the supporting documentation for allowability and allocability to the terminated contract. We also verified that the costs were incurred after the Termination notice.

7. Cost in Excess of Contract Limitations

a. Summary of Conclusions:

We have questioned $460,708 which is the total proposed costs and profit of $4,877,354 less the contract price of $4,416,646 in accordance with FAR 49.207.

b. Basis of Claimed Cost

ISN did not indicate in its termination settlement proposal any costs claimed in excess of the contract limitations.

c. Audit Evaluation

We compared the proposed costs plus profit to the contract price.

8. Payments Received

a. Summary of Conclusions:

The $2,507,015 proposed by ISN agrees with their accounting records.

We discussed factual matters concerning audit findings with Mr. Daniel Dowling, Corporate Counsel. We did not disclose the dollar impact of our conclusions and recommendations to the contractor. Mr. Dowling reserved comment on our findings.

## DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact regarding this audit | |
| Benjamin Monastero, Senior Auditor | (410) 964-2060 |
| Other contacts regarding this audit: | |
| Mark S. Moser, Branch Manager | (410) 964-2060 |
| William C. Erdman, Supervisory Auditor | (410) 964-2060 |
| Office Administrative Personnel | |
| | FAX No. |
| | (410) 997-3237 |

AUDIT REPORT AUTHORIZED BY:

for William C. Erdman
Mark S. Moser
Branch Manager
DCAA Columbia Branch Office

## AUDIT REPORT DISTRIBUTION AND RESTRICTIONS

DISTRIBUTION

Termination Contracting Officer
ATTN.: DCMDS-GATC (Ms. Mildred Jacobs)
Defense Logistics Agency
Defense Contract Management Command Atlanta
508 Walker Street
Atlanta, GA 30060-2789

RESTRICTIONS

1. Information contained in this audit report may be proprietary. It is not practical to identify during the conduct of the audit those elements of the data which are proprietary. Proprietary determinations should be made in the event of an external request for access. The restrictions of 18 U.S.C. 1905 should be considered before this information is released to the public.

2. Under the provisions of Title 32, Code of Federal Regulations, Part 290.26(b)(2), any Freedom of Information Act requests for audit reports received by DCAA will be referred to the cognizant contracting agency for determination as to releasability and a direct response to the requester.

3. The information contained in this audit report should not be used for purposes other than action on the subject of this audit without first discussing its applicability with the auditor.