No. 02-796C
(Judge Allegra)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

INFORMATION SYSTEMS & NETWORKS CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN M. SIMKIN
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, Room 12074
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

March 16, 2007

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE(S)**

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. Summary Judgment Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II. The Court Should Grant Summary Judgment For The Government With Regard To Counts III (Constructive Change) and IV (Equitable Adjustment) Of ISN's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. ISN's Equitable Adjustment Claim Should Either Be Considered As Part Of Its Constructive Change Claim, Or Dismissed For Lack Of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. ISN Cannot Demonstrate That It Received An Order From An Authorized Government Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C. ISN Sought To Modify The Contract Through A Bi-Lateral Process And Never Filed A Claim For A Change . . . . . . . . . . . . . . . . . . 11

III. The Government Did Not Breech The Covenant Of Good Faith And Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. ISN's Claim For Attorney Fees Should Be Dismissed As Moot . . . . . . . . . . . . . 15

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

Al Johnson Constr. Co. v. United States,
20 Cl. Ct. 184 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Alyeska Pipeline Service Co. v. Wilderness Society,
421 U.S. 240 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Am-Pro Protective Services Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Asco-Falcon II Shipping Co. v. United States,
32 Fed. Cl. 595 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Buckhannon Board & Care Home, Inc. v.West Virginia Dep't of Health & Human Resources,
532 U.S. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Chris Berg, Inc. v. United States,
455 F.2d 1037 (Ct .Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Conner Brothers Const. Co., Inc. v. United States,
65 Fed. Cl. 657 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Craig-Buff Limited Partnership v. United States,
69 Fed. Cl. 382 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ets-Hokin Corp. v. United States,
420 F.2d 716 (Ct. Cl. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Garza v. United States,
34 Fed. Cl. 1 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hansen v. United States,
13 Cl. Ct. 519 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Housing Corp. v. United States,
468 F.2d 922 (Ct. Cl. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

International Data Products Corp. v. United States,
70 Fed. Cl. 387 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Jascourt v. United States,
207 Ct. Cl. 955 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

J.L. Simmons Co., Inc. v. United States,
60 Fed. Cl. 388 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Jo-Bar Mfg. Corp. v. United States,
535 F.2d 62 (Ct. Cl.1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Kalvar Corp. v. United States,
543 F.2d 1298 (Ct. Cl. 1976), cert denied, 434 U.S. 830 (1977) . . . . . . . . . . . . . . . . . . 14

Knotts v. United States,
121 F. Supp. 630 (Ct. Cl. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lathan Co. v. United States,
20 Cl. Ct. 122 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

L.P. Consulting Group, Inc. v. United States,
66 Fed. Cl. 238 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Len Company & Associates v. United States,
385 F.2d 438 (Ct. Cl. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lewis v. Continental Bank Corp.,
494 U.S. 472 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Librach v. United States,
147 Ct. Cl. 605 (1959) . . . . . . . . . . 13-14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
475 U.S. 574 (1986) . . . . . . . . . . 4

Miller Elevator Co., Inc. v. United States,
30 Fed. Cl. 662 (1994) . . . . . . . . . . 7

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) . . . . . . . . . . 4

Office of Personnel Management v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . 8

Paxson Elec. Co. v. United States,
14 Cl. Ct. 634 (1988) . . . . . . . . . . 4

Rice Services, Ltd. v. United States,
405 F.3d 1017 (Fed. Cir. 2005) . . . . . . . . . . 16

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 4

Torncello v. United States,
681 F.2d 756 (Ct. Cl. 1982) . . . . . . . . . . 13

Trauma Serv. Group, Ltd. v. United States,
33 Fed. Cl. 426 (1995), aff'd, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . 6

## STATUTES & REGULATIONS

28 U.S.C. § 2412 . . . . . . . . . . 15

FAR § 1.602-1 . . . . . . . . . . 15

FAR § 52.243-1 . . . . . . . . . . 5, 8, 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-796C |
| v. | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court grant summary judgment in its favor with respect to all remaining counts of the plaintiff's complaint. In support of this motion, we rely upon the complaint and answer, this motion, and our proposed findings of uncontroverted fact with attached appendix.

**STATEMENT OF THE ISSUES**

1. Whether plaintiff cannot demonstrate that it is entitled to an equitable adjustment for a constructive change (Counts III, IV), because plaintiff cannot demonstrate the existence of any order (written or otherwise) from the contracting officer.
2. Whether plaintiff cannot demonstrate a breach of the duty of good faith and fair dealing (Count II), because there is no evidence that the Government acted in bad faith.
3. In the event that this Court dismisses Counts II through IV of the complaint, whether this Court retains jurisdiction over plaintiff's claim for attorney fees (Count V).

## STATEMENT OF THE CASE

### I. Nature of the Case

On July 15, 1994, the Government, through the Department of the Navy, awarded Contract No. N00600-94-C-0389 ("contract 0389"), to plaintiff Information Systems and Networks Corporation ("ISN"). This firm fixed-price contract required ISN to perform a variety of computer hardware and software changes for the Naval Warfare Systems Command at Hampton Roads, Virginia, and two sites in Hawaii.

In July 1994, ISN began the work on the contract 0389 at Hampton Roads, Virginia. Shortly after ISN began work, however, it became clear that ISN was behind schedule and that various changes to the contract would be required. In June 1995, at the Navy's request, ISN submitted an Engineering Change Proposal ("ECP") that was "technically" approved by the contracting officer's technical representative in July 1995. The letter indicating that the ECP was "technically" approved further recommended that the terms and conditions of any modification should be negotiated. This ECP, however, was never approved by an authorized representative of the Government.

In February 1996, after ISN failed to meet any of its proposed delivery schedules, the Navy issued a stop work order and, in March 1996, terminated the contract for the convenience of the Government. Following the termination, ISN submitted a termination settlement proposal that was audited by the Defense Contract Audit Agency ("DCAA"). During the negotiations that ensued, the Government determined that ISN was entitled to $4,049,532 and ISN had been paid that amount. The terminating contracting officer extended a settlement offer to ISN that ISN did not accept.

On March 13, 1998, ISN first brought suit in Information Systems & Networks Corporation v. United States, Fed. Cl. No. 98-178C, alleging breach of an alleged settlement agreement, among other claims. In this initial litigation, ISN focused upon its argument that there was an breach of the alleged settlement agreement. On October 3, 2001, this Court held that there was no settlement agreement upon which ISN could rely for damages, and dismissed that count of ISN's complaint. On March 29, 2002, ISN moved to dismiss its other counts without prejudice, pending a decision upon appeal. This Court granted ISN's motion on April 2, 2002. On October 16, 2002, the United States Court of Appeals for the Federal Circuit affirmed the decision of this Court pursuant to Federal Circuit Rule 36.

In July 16, 2002, ISN refiled its complaint re-alleging counts for breach of contract, breach of the duty of good faith and fair dealing, constructive change, equitable adjustment, and attorney fees. On April 12, 2005, this Court dismissed ISN's breach of contract claim (Count I). Specifically, the Court held that the lack of a written modification demonstrated that there was no meeting of the minds with regard to the ECP, and that no agency official with authority had assented to the ECP, either in writing or by conduct.

## II. Statement of Facts

The relevant facts are set forth in our separately-filed proposed findings of uncontroverted fact, with appendix. We respectfully refer the Court to that filing, as well as the factual assertions in this motion.

## ARGUMENT

### I. Summary Judgment Standards

Summary judgment is a "salutary method of disposition 'designed to secure the just, speedy, and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). This Court has consistently held that when there is no genuine dispute regarding a material fact, and the moving party is entitled to judgment as a matter of law, a motion for summary judgment will be granted. See Paxson Elec. Co. v. United States, 14 Cl. Ct. 634, 642 (1988) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)); accord Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A genuine dispute exists where the Court could render a verdict in favor of the non-movant, based upon the evidence. See Anderson, 477 U.S. at 248; Sweats Fashions, 833 F.2d at 1562.

For the United States to prevail upon its motion for summary judgment, the Government only must demonstrate its entitlement to judgment as a matter of law, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 248. Indeed, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact . . . '[i]nstead, as we have explained, the burden on the moving party may be discharged by showing – that is, pointing out to the District Court – that there is an absence of evidence to support the nonmoving party's case.'" Sweats Fashions, 833 F.2d at 1563 (quoting Celotex, 477 U.S. at 325) (emphasis omitted). "When the moving party has carried its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87

(1986). Here, there is no genuine dispute between the parties regarding any material fact, and upon the undisputed facts of record, the United States is entitled to judgment as a matter of law.

## II. The Court Should Grant Summary Judgment For The Government With Regard To Counts III (Constructive Change) and IV (Equitable Adjustment) of ISN's Complaint

Counts III and IV of ISN's complaint alleges that ISN is entitled to a constructive change and equitable adjustment, respectively, for the work it performed for the Government. The authority to issue any changes pursuant to the contract, however, resided solely with the contracting officer. Because, as this Court has previously held, ISN cannot demonstrate the existence of an order prepared by a Government agent with the authority to issue such an order, the Government respectfully requests summary judgment in its favor with regards to counts III and IV of the complaint.

### A. ISN's Equitable Adjustment Claim Should Either Be Considered As Part Of Its Constructive Change Claim, Or Dismissed For Lack Of Subject Matter Jurisdiction

As a preliminary matter, while ISN has alleged separate counts for constructive change (Count III) and an equitable adjustment (Count IV), in reality, these counts are the same claim. In general, a constructive change is the Government action that gives rise to a possible remedy of an equitable adjustment. See Ets-Hokin Corp. v. United States, 420 F.2d 716, 720 (Ct. Cl. 1970). See also Def. App. 39 (incorporating by reference FAR § 52.243-1), 43 ("If a change proposal submitted pursuant to this clause is accepted and applied to this contract, an equitable adjustment in the contract price and in any other affected provisions of this contract shall be made in accordance with this clause and any other applicable clauses of this contract.") As the terms are used in Government contracts, a change is the cause of action, while an equitable

adjustment is the relief sought. See International Data Products Corp. v. United States, 70 Fed. Cl. 387, 402-03 (2006) (reviewing the relationship between equitable adjustments and constructive change).

To the extent that ISN is not using the phrase "equitable adjustment" as a term of art, but rather is seeking an adjustment based upon equitable theories of recovery, it is well settled that this Court that does not possess jurisdiction over a claim based upon the equitable damages theories, such as quantum meruit. Hercules, Inc. v. United States, 516 U.S. 417, 423-24 (1996) ("We have repeatedly held that [Tucker Act] jurisdiction extend only to contracts either express or implied in fact, and not to claims on contracts implied in law.") (citations omitted). See also Trauma Serv. Group, Ltd. v. United States, 33 Fed. Cl. 426, 432 (1995), aff'd, 104 F.3d 1321 (Fed. Cir. 1997) ("Jurisdiction based on contract extends only to contracts either express or implied-in-fact, and not to claims on contracts implied-in-law."). Accordingly, to the extent that ISN's equitable adjustment claim is treated as separate and distinct from its constructive change claim, it should be dismissed.

### B. ISN Cannot Demonstrate That It Received An Order From An Authorized Government Agent

ISN cannot demonstrate a constructive change entitling it to an equitable adjustment, because it fails to demonstrate that it received an order from the authorized representative of the Government.

"[W]here a contract contains the standard 'change' provision and the contracting officer, without issuing a formal change order, requires the contractor to perform work or to utilize materials which the contractor regards as being beyond the requirements of the pertinent

specifications or drawings, the contractor may elect to treat the contracting officer's directive as a constructive change order and prosecute a claim for an equitable adjustment under the 'changes' provision of the contract." Ets-Hokin Corp. v. United States, 420 F.2d 716, 720 (Ct. Cl. 1970). Lathan Co. v. United States, 20 Cl. Ct. 122, 128 (1990) (citing Chris Berg, Inc. v. United States, 197 Ct .Cl. 503, 455 F.2d 1037, 1050 (1972)) ("constructive change generally arises where the Government, without more, expressly or impliedly orders the contractor to perform work that is not specified in the contract documents"). There are generally two prongs to a constructive change, the "change" component and the "order/fault" component. Miller Elevator Co., Inc. v. United States, 30 Fed. Cl. 662, 678 (1994) (citing Al Johnson Constr. Co. v. United States, 20 Cl. Ct. 184, 204 (1990)). While the "change" component focuses upon whether the work done by the contractor was outside of the scope of the contract, the "order/fault" component focuses upon whether the Government is responsible for the contractor's additional work. Id. (citations omitted).

One of the essential prerequisites to finding that the Government violated the "order/fault" component is whether the contractor received an order from a Government agent with authority. In general, to bind the Government to a contract, the Government official agreeing to the contract must possess actual authority. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380 (1947); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432 (Fed. Cir. 1998). Such determination must be made regardless of the official's title or breadth of responsibility. Jascourt v. United States, 207 Ct. Cl. 955 (1975) (Government not bound by the actions of the Deputy Assistant Secretary of Labor); Housing Corp. v. United States, 468 F.2d 922 (Ct. Cl. 1972) (HUD Secretary's unauthorized signature did not bind the Government).

A Government agent possesses express actual authority in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms. Garza v. United States, 34 Fed. Cl. 1, 17 (1995). A contractor who enters into an arrangement with an agent of the Government bears the risk that the agent is acting outside the bounds of his authority, even when the agent himself was unaware of the limitations on his authority. Merrill, 332 U.S. at 384. A Government employee's unauthorized statements to citizens cannot obligate the Treasury for the payment of funds. Office of Personnel Management v. Richmond, 496 U.S. 414, 428 (1990). The burden falls upon the plaintiff to allege facts sufficient to show that a Government agent had authority to contract. Hansen v. United States, 13 Cl. Ct. 519, 524 (1987).

In this case, the contracting officer was possessed the authority to bind the Government to a constructive change. Contract 0389 incorporates by reference one of the standard "Changes" clauses. Def. App. 39. This clause provides, in pertinent part that

> (a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract . . . .
>
> (b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

FAR § 52.243-1 (emphasis added).

Contract 0389 further modifies the standard "Changes" by providing, in pertinent part, that:

> **G.2 AUTHORIZED CHANGES ONLY BY THE CONTRACTING OFFICER, SUP 5252.243-9000 (JAN 1992)**
>
> (a) Except as specified in paragraph (b) herein, no order, statement, or conduct of Government personnel who visit the Contractor's facilities, or in any other manner communicate with Contractor personnel during the performance of this contract, shall constitute a change under the "Changes" clause of this contract.
>
> (b) The Contractor shall not comply with any order, direction, or request of Government personnel unless issued in writing and signed by the Contracting Officer, or pursuant to specific authority otherwise included in this contract.
>
> (c) The Contracting Officer is the only person authorized to approve changes in any of the requirements of this contract and, notwithstanding provisions contained elsewhere in this contract, said authority remains solely with the Contracting Officer. In the event the Contractor effects any change (s) at the direction of any person other than the Contracting Officer, that change shall be considered to have been made without authority and no adjustment in price shall be made in the contract (or Delivery Order) to cover any increase in charges incurred as a result thereof.

Def. App. 24 (emphasis added).

These express limitations are consistent with other portions of the contract, which also provide that authority to change or otherwise modify the contract resides with the contracting officer. For example, the contract permits a contractor to submit an engineering change proposals to the contracting officer for review. This proposal is processed through the contracting officer, and "[t]he Contracting Officer may accept any change proposal submitted pursuant to this clause by giving the Contractor written notice thereof. . . . Unless or until a modification is executed to incorporate a change proposal under this contract, the Contractor shall remain obligated to perform in accordance with the terms of the existing contract." Def.

App at 42-43. This section further provides that "[a]ll matters should be coordinated with the Contracting Officer." Id. at 43.

The contract identifies Roscoe Crawford as the contracting officer. Def. App. 24 However, ISN cannot identify any communication from the contracting officer that constituted an order or approval. ISN submitted an ECP proposing a modification of the contract to the contracting officer,[1] but cannot demonstrate that he approved the ECP. Further, ISN was aware that its ECP had not been approved, and that it could not proceed with the ECP without the contracting officer's approval. Def. App. 69-84. ISN's own program manager, Mr. Robertson, testified that ISN was aware that without a formal modification of the contract, ISN could not start work on the ECP. Def. App. 133-34. Further, the Court has already held that "no agency official with authority to bind the defendant assented to the ECP, either in writing or by conduct." Def. App. 152.

This situation is similar to that of Conner Brothers Const. Co., Inc. v. United States, 65 Fed. Cl. 657, 679-80 (2005), in which this Court held that the plaintiff's claim for constructive change was barred by a lack of authority on the part of the Government agent that allegedly was responsible for the constructive change. Specifically, the Court held that "in this instance, the contracting officer, the person with authority to modify the contract based on a change in the work, did not order the additional work to be done." Id. at 680.

[1] During the contract period, ISN never filed a claim for constructive change with the contracting officer, but rather proceeded pursuant to the ECP procedure, which permits the modification of the contract upon approval of the ECP. Def. App. 41-43.

### C. ISN Sought To Modify The Contract Through A Bi-Lateral Process And Never Filed A Claim For A Change

Finally, Counts III and IV are not properly characterized as claims arising pursuant to the doctrine of constructive change, in light of the fact that ISN and the Government chose to pursue this matter pursuant to the process set forth in the contract for an engineering change proposal, rather than as a unilateral change pursuant to the "Changes" clause.

As noted above, the contract expressly sets forth a process that allows a contractor to submit a proposal for a change to the requirements of a contract, which is then reviewed by the contracting officer. Def. App. 41-43. Specifically, the contract provides that

> After contract award, the Government may solicit, and the Contractor is encouraged to independently propose, changes to the equipment, software specifications, or other requirements of this contract. . . If the proposed changes are acceptable to both parties, the Contractor shall submit a price proposal to the Government for evaluation. Those proposed changes that are acceptable to the Government will be processed as modifications to the contract.

Id. at 41. Thus, the Government could evaluate an ECP only if the changes where "acceptable to both parties." Id. (emphasis added) Further, prior to approval, the contractor had the "right" to withdraw, in whole or in part, any change proposal not accepted. Id. at 42. The Contracting Officer possessed the authority for the Government to accept or reject such change proposals, and "[u]nless or until a modification is executed to incorporate a change proposal under this contract, the Contractor shall remain obligated to perform in accordance with the terms of the existing contract." Id. at 42-43.

On June 20, 1995, ISN submitted an ECP, pursuant to this section of the contract. Complaint ¶ 7. As this Court has previously held, the contracting officer never reached an

agreement as to the ECP, and the contracting officer never approved this ECP. See Def. App. 146-152.

Having chosen a bilateral process to modify or "change" the contract, where the ISN possessed the right to withdraw the change proposal at any time, and is only "obligated to perform in accordance with the terms of the existing contract," ISN cannot now assert that it experienced a unilateral constructive change. Indeed, this case is similar in many respects to Len Company & Associates v. United States, 385 F.2d 438, 442-443 (Ct. Cl. 1967). In Len, the Court of Claims determined that the bi-lateral modification process provided pursuant to the contract in that case did not give rise to a claim of constructive change. Such a process, much like the ECP process, allowed the Government to solicit a proposed change to a contract, which the contractor had the authority to reject. The Court of Claims noted that there were limits to the constructive change doctrine, and that the Court "cannot rewrite, by undiscriminating use of the constructive change doctrine, the parties' own contract." Len, 385 F.2d at 444.

Indeed, by electing to pursue its claim as an ECP, rather than a claim pursuant to the "Changes" clause, ISN deprived the Government of the notice that ISN was required to provide to the Government as a prerequisite to a claim for constructive change. Specifically, a contractor must give written notice to the contracting officer within 20 days after costs are incurred as a result of a change, and the contractor further must request an equitable adjustment within 30 days of the submission of written notice. See FAR § 52.243-1(c). The failure of a contractor to comply with this requirement may result in its claim being disallowed. Jo-Bar Mfg. Corp. v. United States, 535 F.2d 62, 66 (Ct. Cl.1976).

Accordingly, we respectfully request that the Court grant summary judgment in defendant favor with respect to Counts III and IV of the complaint.

## II. The Government Did Not Breach The Covenant Of Good Faith And Fair Dealing

Count II of ISN's complaint alleges that the Government violated its contract with ISN by breaching the duty of good faith and fair dealing. Specifically, ISN alleges that the Government acted in bad faith: (1) by advising ISN that its ECP proposal was approved and that it would be paid costs for its services; (2) by representing that formal contract modification had been approved and that the formal paperwork would "eventually catch up;" (3) by directing, authorizing, and approving the services performed by ISN pursuant to the ECP and then failing to pay for such services; and (4) by recognizing, through the terminating contract officer ("TCO"), that ISN was entitled to costs, and then disavowing the authority of the TCO to make such a conclusion.

In order to demonstrate a duty of the breach of good faith and fair dealing, ISN must demonstrate that the Government acted in bad faith. See L.P. Consulting Group, Inc. v. United States, 66 Fed. Cl. 238, 243 (2005) (citing Torncello v. United States, 681 F.2d 756, 770-71 (Ct. Cl. 1982); Asco-Falcon II Shipping Co. v. United States, 32 Fed. Cl. 595, 604 (1994)). This Court generally presumes that Government acts in good faith in contracting, and this presumption may be overcome only by clear and convincing evidence that the Government acted in bad faith. Am-Pro Protective Services Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002); Torncello, 681 F.2d at 770 (quoting Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630, 631 (1954)) ("it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing"). See also Librach v. United States, 147 Ct.

Cl. 605, 612 (1959). More specifically, a contractor must provide evidence of a "specific intent to injure the plaintiff" by a Government official. L.P. Consulting, 66 Fed. Cl. at 243 (quoting Kalvar Corp. v. United States, 543 F.2d 1298, 1302 (Ct. Cl. 1976), cert denied, 434 U.S. 830 (1977)) (emphasis in original).

On October 3, 2001, this Court held that there was no settlement agreement upon which ISN could rely for damages, and dismissed that count of ISN' s complaint. On April 12, 2005, this Court determined that there was no evidence that an authorized agent of the Government directed, authorized, or approved a modification to the contract. ISN's allegations of bad faith are based upon a faulty premise that this Court has already rejected.

Further, ISN claim of bad faith arises for unapproved work outside of the scope of the original contract. However, pursuant to the covenant of good faith and fair dealing, "good faith cannot be construed to give rise to new obligations not otherwise contained in the contract's express terms." Craig-Buff Limited Partnership v. United States, 69 Fed. Cl. 382, 388 (2006).

Nor was it bad faith for the Government to not approve the ECP. The contracting officer, Roscoe Crawford, testified that he never received a revised schedule from ISN that predicated the approval of the ECP. Def. App. 137. See also id. at 130. Mr. Crawford testified that discussions he had with the contracting officer's technical representative ("COTR"), Jeff Bergdahl, indicated that the proposed cost for the ECP was "unreasonably priced." Id. at 136. The record demonstrates that the Government's failure to approve the ECP was not motivated by any animus on the part of the contracting officer toward ISN, but rather by ISN's own failure to provide the Government with additional information and pricing.

At most, ISN's allegations amount to the claim that the Government acted in bad faith by insisting upon compliance with the law and the procedures set forth in the contract. It is not a breach of the duty of good faith and fair dealing for the Government to require strict compliance with law and regulation. Indeed, the FAR expressly state that "[n]o contract shall be entered into unless the contracting officer ensures that all requirements of law, executive orders, regulations, and all other applicable procedures, including clearances and approvals, have been met." FAR § 1.602-1(b).

Accordingly, we respectfully request that the Court grant summary judgment in defendant favor with respect to Count II of the complaint.

**IV. ISN's Claim For Attorney Fees Should Be Dismissed As Moot.**

Count V of ISN's complaints seeks attorney fees for this litigation. However, to the extent that the Court grants the Government's motion with regard to Counts II through IV of the complaint, this issue is moot, ISN cannot recover any fees, and we respectfully request that the Court dismiss this Count of the complaint.

Pursuant to the "American rule," a successful litigant generally is not entitled to collect attorneys' fee from the losing party. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). See also J.L. Simmons Co., Inc. v. United States, 60 Fed. Cl. 388 (2004) (tracing the history of the "American rule"). Nevertheless, there are certain statutory exceptions to this rule when the United States is a party in a litigation, including the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA").

Specifically, EAJA authorizes the award of attorney fees to the "prevailing party" against the United States. 28 U.S.C. § 2412(d)(1)(A). In order to demonstrate that it is a "prevailing

party," a litigant must obtain an enforceable judgment on the merits or a court-ordered consent decree that materially alters the legal relationship between the parties. Rice Services, Ltd. v. United States, 405 F.3d 1017, 1025 (Fed. Cir. 2005) (citations omitted). A "prevailing party" must "receive at least some relief on the merits which . . . alter[s] the legal relationship of the parties." Buckhannon Board & Care Home, Inc. v.West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 603 (2001)

However, it is axiomatic that if ISN's claims are dismissed by this Court, it cannot be a "prevailing party," in any sense of this word.

More broadly, to the extent that the Court grants the Government's motion with regard to Counts II through IV of the complaint, Count V is made moot. The Supreme Court has held that "an interest in attorney fees is . . . insufficient to create an Article III case where none exists on the merits of the underlying claim." Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990). "[R]easonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs." Lewis, 494 U.S. at 480. Without its underlying claim, ISN may not proceed with its claim for attorney fees.

Accordingly, to the extent that the Court grants the defendant's motion with regard to Counts II through IV of the complaint, we respectfully request that the Court dismiss Count V of ISN's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification United
8th Floor
1100 L Street, NW
Washington, D.C.
Tel: (202) 616-2377
Fax: (202) 305-7643
Steven.mager@usdoj.gov

March 16, 2007

**CERTIFICATE OF FILING**

I hereby certify that on this 16th day of March 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice