Audit Report No. 6221-96G17500001
Information Systems & Networks Corporation

3. Item 13: We computed the loss ratio as shown above and applied the factor to the correct Item 11 amount. We multiplied the total by the authorized progress payment rate to determine the adjusted amount of $2,532,412 in Item 13.

4. Item 18: The total progress payments requested amount is the total amounts paid under progress payment nos. 1 and 2.

Progress Payment No. 5

SECTION I

| | | | Note |
|---|---|---|---|
| Item 5: | Contract Price | $4,416,645 | |

SECTION II

| | | | Note |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,629,713 | 1 |
| Item 12a: | Total Costs Incurred to Date | $3,629,713 | 1 |
| Item 12b: | Estimated Additional Costs to Complete (ETC) | +1,439,562 | 2 |
| | Total Estimated Cost at Completion (EAC) | $5,069,275 | 2 |
| | Loss Ratio Calculation: | | |
| | Contract Price / EAC = $4,416,645 / $5,069,275 = | 87.13% | 3 |

SECTION II (Continued)

| | | | Note |
|---|---|---|---|
| Item 11: | Total Costs Eligible for Progress Payments | $3,629,713 | 1 |
| | Loss Ratio Factor | X 87.13% | |
| Adjusted Item 11: | Costs Eligible for Progress Payments | $3,162,569 | |
| Item 6a: | Progress Payment Rate | 85.00% | |
| Adjusted Item 13: | Recognized Eligible Costs | $2,688,184 | 3 |
| Item 18: | Previous Progress Payments Requested | -2,532,412 | 4 |
| Item 19: | Maximum Eligible for Progress Payment | $ 155,772 | |

Explanatory Notes:

1. Item 11: The contractor used the actual indirect rates for the 2irst seven months of their fiscal year to compute total incurred costs. We computed the total incurred costs using the 1995 provisional billing rates.

2. Item 12b: We reviewed the contractor's August 1995 EAC and took exception to the amounts computed. The contractor computed the EAC using the actual indirect rates for the first seven months of their fiscal year. We recomputed the EAC using the 1995 provisional billing rates. We used the contractor's latest EAC, August 1995, to compute the EAC.

FOR OFFICIAL USE ONLY

3. Item 13: We computed the loss ratio as shown above and applied the factor to the correct Item 11 amount. We multiplied the total by the authorized progress payment rate to determine the adjusted amount of $2,688,184 in Item 13.

4. Item 18: The total progress payments requested amount is the total amounts paid under progress payment nos. 1 and 2 plus the amount eligible under progress payment no. 4.

We also determined the contractor's financial condition is adequate for the performance of the contract.

We discussed the results of audit with the contractor's representative, Mr. Allieu Shaw, Director of Finance, on 9 November 1995. The contractor disagrees with the results of audit in its entirety.

Audit Report No. 6221-96G17500001
Information Systems & Networks Corporation

DCAA PERSONNEL

| | Telephone No. |
|---|---|
| Primary contact regarding this audit: | |
| Jennifer L. Mosher, Senior Auditor | (301) 353-1506 |
| Other individuals having involvement with the audit report: | |
| Mark Moser, Branch Manager | (301) 353-1506 |
| Carol Bates, Supervisory Auditor | (301) 353-1506 |
| Class of persons having access to this report: | |
| Office Administrative Personnel | |
| DCAA Office FAX No. | (301) 353-1518 |

AUDIT REPORT AUTHORIZED BY:

Mark S. Moser
Branch Manager
DCAA Silver Spring Branch Office

FOR OFFICIAL USE ONLY

# UNITED STATES
# COURT OF FEDERAL CLAIMS

INFORMATION SYSTEMS & NETWORKS CORP.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Docket No. 98-178C

ORAL ARGUMENT AND STATUS CONFERENCE

Pages: 1 through 49

Place: Washington, D.C.

Date: October 3, 2001

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

THE COURT: All right, sir.

MR. SINGER: And finally, Your Honor, on the issue of what the TCO would have done or could have done or what the parties could have done, none of that is going to help with respect to, you know, resolving the summary judgment.

It doesn't matter what the parties could have done or would have done. What matters is what is the record before this Court. And I think, if the Court looks at this record and looks at the documents that both the government and ISN has given the Court, and applies the fair inferences from those documents I think should be applied, I think the Court will determine, (a) there was a binding settlement; (b) there was funds available to fund the settlement; (c) the government did not have any right to breach the settlement. Thank you, Your Honor.

THE COURT: All right, sir. Well, gentlemen, thank you. I believe that I am in a position to go ahead and rule on the motions at this time. Before I do that, I want to assure everybody that this isn't any rush to judgment as I was reminded I have had this for some time. But the matter has been well briefed, and as Plaintiff's counsel stated this morning, all the documents appear to be here and they are not so voluminous that they couldn't all be studied.

Without keeping anybody in suspense, let me go

ahead and say in my view there was no settlement agreement, and consequently I will in due course enter an order that denies the Plaintiff's motion for summary judgment on Count 5, and grant the government's motion on Count 5, at least to the extent that it says there was a settlement agreement.

Now, just for the sake of completeness, I think it's plain from the colloquies this morning that the government isn't taking the position that there has been a waiver with respect to the other counts in the complaint. And so once the motions have been ruled on with respect to Count 5, we will be in a position to determine how we will get on a resolution track for the entire case, but it's incumbent upon me to state my rationale for denying the Plaintiff's motions and granting the government's motion, and I will state it alternatively.

I simply agree with the government's position that there never was a binding agreement with respect to that November 13, 1997 offer from termination contracting officer Denise Jones. She plainly stated that the matter was contingent on funding from the Department of the Navy, and that's stated in there twice, along with the figure that was proposed for settlement, and says that if you accept it, sign it and return it.

Now, it was signed but only under a paragraph that says accepted as to the determination that ISN is due a

certain amount. Now, that can be argued lots of ways, and the Plaintiff has argued it well. But to me, I think the plain meaning of that is, and I am the one called upon to interpret this thing. We accept part of it. We accepted the figure you have come up with, but we don't accept the contingency, and it makes no sense in belaboring that.

But as an alternative to that, even if it had just been signed on the bottom, or even if I agreed with the Plaintiff's position that that was an unconditional acceptance of the offer, the offer was, and consequently any such settlement would have been contingent "upon funding from the Department of the Navy."

Now, it seems to me that the reasonable way to interpret that is not whether there was money available somewhere in the Department of the Navy, or if $891,000 was somewhere left in the budget of SPARWAR. It seems to me this termination contracting officer was saying to the Plaintiff, I agree, or at least for the use of that proposal, I would agree to the extent of $891,000, you are entitled to more money, but I'm not going to just agree to this on my own authority. I want somebody else, somebody else in the Navy to say it's all right to spend this money on it.

And so, with a little repetition, even assuming that it was a mutual firm unconditioned meeting of the

minds, the contingency with that interpretation just never occurred. There never was, in my view, a funding from the Department of the Navy in the manner I would assume that letter meant.

Well, gentlemen, I could go on and on, but it doesn't seem to me a close case, at least on that last alternative point. And so that's the ruling at this level. But let us spend some profitable time together -- incidently, in due course or probably today an order will be entered memorializing that.

But while we are all here, let's talk about two things, and one about discovery specifically, whether that is complete; and then second, whether there is some reasonable prospect this case might be settled; and talk about some good reasons for that. And then even if it looks like that might happen, let's talk about how we will get it on a trial track or some resolution track to get the case wound up.

Let me ask about discovery. I had assumed from the state of the file and the papers that discovery has been completed from the Plaintiff's point of view?

MR. SINGER: It has.

THE COURT: From the government's point of view?

MR. AUSTIN: Depends on how we move forward, Your Honor, in the sense that --

NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record. This disposition will appear in tables published periodically.

# *United States Court of Appeals for the Federal Circuit*

02-5041

INFORMATION SYSTEMS & NETWORKS CORPORATION,

Plaintiff- Appellant,

v.

UNITED STATES,

Defendant-Appellee.

FILED
U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT

OCT 16 2002

JAN HORBALY
CLERK

# *Judgment*

*ON APPEAL from the* UNITED STATES COURT OF FEDERAL CLAIMS

*in CASE NO(S).* 98-CV-178

*This CAUSE having been heard and considered, it is*

*ORDERED and ADJUDGED:*

Per Curiam (SCHALL, BRYSON, and LINN, Circuit Judges.)

AFFIRMED. See Fed. Cir. R. 36.

*ENTERED BY ORDER OF THE COURT*

*DATED* OCT 16 2002

Jan Horbaly

*Jan Horbaly, Clerk*