12/28 Brian — VISIT ROSCOE

SPAWAR vs ISN

Notes on Mtg. 12/6/95 with Roscoe and SPAWAR Re: ISN contract DEC 06 1995

Brian - I attached my handwritten notes. This contract was awarded in July '94 for FIP systems integration, delivery, installation, cutover and training. It is FFP services with numerous sites and lots. It is not IDIQ.

The contractor has had all kinds of performance problems from the beginning. We and SPAWAR have tried to work with them as much as possible but now realize that he will probably never perform satisfactorily. We are still in the first lot, made up of three sites. The contractor is at least five months late on delivery/installation completion on all three sites. 7 Mo.

Roscoe never modified the contract to re-establish the deliv. schedule on any of the sites because he could never get a good idea of what a realistic new deliv. schedule would be. Also the contractor would not agree to pay consideration to extend the schedule. So right now we are in limbo.

The first site (Hampton Rds.) is 30% complete. ISN is having trouble completing it. We have paid over $2 million so far in progress payments towards all three sites in Lot I, which covers the cost of the equipment. We haven't taken title to any of it yet. Progress Pay $2M

Roscoe wants to reestablish the deliv. schedule for all three sites in Lot I, knowing full well ISN won't meet the dates. If he can't negotiate consideration he will determine it unilaterally. When the contractor misses the dates, Roscoe wants to T for D them. The activity prefers to T for C them. This will have to be resolved and we discussed this at length. However, both Roscoe and the DCMAO ACO feel we have a good case for T for D ing them and it will be alot cheaper than T for C'ing. The downside is it will mean the contract will have to go on for about 6 more months (the soonest now realistic delivery date would be about 6 mo. from now). T for C

Whether we T for C or T for D, ISN will probably litigate.

Also, the ACO is researching possible fraudulent progress payment submissions by ISN. However, this does not affect our course of action on the contract, she will handle this.

**Roscoe's Action Items**

He needs to brief legal and get their input on his recommended course of action

(if activity agrees to T for D):

He needs to mod the contract and re-establish the delivery dates ASAP, for consideration if possible. If ISN will not agree to consideration, he should determine a reasonable amount unilaterally.

When contractor does not meet the delivery dates, Roscoe needs to T for D the contractor. If it turns out there is evidence of fraud by ISN re: the progress payments, this could also contribute to our basis for T for D'ing.

(if we T for C):

If we T for C, we will only re-establish a delivery date for Hampton Roads, since this is 80% done. Or the activity may decide to T for C Hampton Rds. and finish that site themselves or with a different contractor.

We will T for C the other two sites in Lot I. Then we will have to negotiate the equitable adjustment.

Lisa

Roscoe could also research with legal the feasibility of T for C ing Hampton Roads and T for D'ing the other two sites. Probably not legally viable.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORK CORPORATION, | ) | |
| Plaintiff, | ) | No.: 98-178C |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

Deposition of:

WILLIAM ROBERTSON

a witness of lawful age, taken on behalf of the Defendant, pursuant to notice, in the offices of the Department of Justice, Room 12011, 1100 L Street, N.W., Washington, D.C. 20530, on Monday, October 25, 1999, at 10:15 a.m., before Sharon Bellamy, Notary Public in and for the District of Columbia, when were present:

APPEARANCES:

On behalf of Plaintiff:

JOHN M. CRAIG, Esquire
Singer & Associates, P.C.
1730 K Street, N.W.
Suite 304
Washington, D.C. 20006
(301) 469-0400

meetings reflected what the program management office wanted to tell the contracting officer, and in many instances they removed information that I had put in there which would not reflect well on them, okay?

Q Would you --

A Specifically, to your question, there was a tacit agreement and understanding with all parties involved that there was no way, as I have just been telling you, to proceed with work on this contract without implementing the ECP; that all of that documentation -- all of the documentation that had been reviewed and approved reflected the ECP and the changes necessitated it.

Q Now, when you say " a tacit," meaning that?

A It's like, yes, we understand that that's the real situation, but you understand that you can't start work until you get a formal mod.

Q So you were told not to start work?

A I was also told they recognized the reality of the situation and we couldn't make progress without doing it. That's the reason I made the point about boiler plate on the paragraph you pointed out, that, yes, that's the last paragraph in every letter from every contracting officer, okay, however.

Q And with regards to the ECP, and this is going back, you had a meeting some time in December time frame

with Ron Zell, and Ron Zell told you, if I remember correctly, told you that if ISN could make progress, then he could get the funding?

A He told me that consistently from the September time frame on, from the -- basically, when he -- I take that back. Yeah, September, September - October time frame when he was looking at next year's money. He originally thought he could get some end-of-year dollars to complete it, to complete the funding profile. He told me at the end of the fiscal year, within the last week or two of the fiscal year, that he wasn't going to be able to do that; that they had an emergency someplace else and that he wasn't going to be able to get end-of-year dollars, and that he was going to have to wait until the next fiscal year funding was allocated to him, and that he would complete funding at that point in time. So, as I said, it occurred over a series of meetings, a variety of meetings.

Q Now, January of '96 was also a busy month with this contract, if I understand --

A Mm-hmm.

Q -- in terms of meetings between the government and ISN. And those series of meetings culminated, if I understand correctly, with a request for a meeting with ISN to show progress to date and how they were going to meet the delivery schedule; is that correct?

ORIGINAL



IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---------------------------:

INFORMATION SYSTEMS & :
NETWORKS CORPORATION :
Plaintiff :
vs. : Case No. 98-178C
THE UNITED STATES :
Defendant :

---------------------------:

Monday, October 18, 1999
Washington, D.C.

Deposition of

ROSCOE W. CRAWFORD

a witness, was called for examination by counsel for the plaintiff, at the offices of United States Department of Justice, 1100 L Street, N.W., 12th Floor Conference Room, Washington, D.C. 20530, commencing at 10:00 a.m. before Doris L. Gude, Shorthand Court Reporter and Notary Public for the District of Columbia, and were present on behalf of the respective parties:

MGB REPORTING, INC.
9805 Korman Court
Potomac, Maryland 20854
(301) 983-9315

the Navy that spurred ISN on to give you the ECP?

A. Probably discussions with the tech people and ISN.

Q. You don't recall any documents though?

A. No documents.

Q. Do you recall when ISN provided the ECP to the Navy?

A. It would be in the latter part of '95.

Q. After receiving the ECP from ISN, then what happened?

A. It was reviewed by my technical people over at SPAWAR, and we never could come to an -- well, they viewed it as being unreasonable, unreasonably priced.

Q. So was that the basis of the unreasonableness, the pricing?

A. Basically.

Q. Who were the technical people at SPAWAR?

A. At the time, it was McCore (phonetic), Jeff Bergdahl, and his boss, Ron Zell.

formal acceptance of an ECP for implementation of all sites in Lot I and the revised delivery schedule for all sites in Lot I." What does that mean?

A. At the time, I guess, we had intention of issuing a modification, but that was predicated on ISN providing us with a revised installation and cutover schedule for the contract for Lot I which they never did.

Q. So ISN didn't provide a revised installation cutover schedule?

A. No, they never did.

Q. Did you keep a file on this ATCS project?

A. This case file folder that you looked through.

Q. Is that your file?

A. That's the file, yes.

Q. Do you recall whether Exhibits 3 and 4 were included in that file?

A. You're saying are they are still included in the file?

COPY

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFORMATION SYSTEMS AND NETWORKS CORPORATION, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant. | Case No. 98-178C JUDGE JAMES TURNER |

Deposition of JEFFREY BERGDAHL, at 4301 Pacific Highway, San Diego, California, commencing at 10:01 A.M., Friday, October 29, 1999, before Sandra D. Warren, CSR No. 10831.

APPEARANCES OF COUNSEL:

FOR THE PLAINTIFF:

SINGER & ASSOCIATES
BY: JOHN M. CRAIG, ESQ.
1730 K Street, N.W.
Suite 304
Washington, D.C. 20006
(301) 469-0400

FOR THE DEFENDANT:

UNITED STATES DEPARTMENT OF JUSTICE
BY: MICHAEL D. AUSTIN, ESQ.
1100 L Street, N.W.
Suite 12144
Washington, D.C. 20530
(202) 307-0277

JEFFREY BERGDAHL,
having been first duly sworn, testified as follows:

MGB REPORTING, INC.
9805 Korman Court
Potomac, Maryland 20854
(301) 983-9315

A. Nope.

Q. Did you tell them not to do anything pending formal approval of the ECP?

A. No.

Q. What did SPAWAR tell ISN to do pending approval of the ECP? Formal approval of the ECP?

A. I don't really recall what was told to them, if anything.

Q. Could ISN do any work pending formal approval of the ECP?

A. Yes.

Q. What work could ISN perform pending formal approval of the ECP?

A. Again, there was still -- there was substantial amount of equipment that was in the RFP that was still remaining at ANCC Hampton Roads. But prior to that equipment being cut over, we needed all the various contract deliverables submitted and approved before they would start doing the cutover.

Q. And the contract deliverables weren't modified really at all pursuant to the ECP; is that right?